BRUCE G. FAGEL, State Bar No. 103674
EDUARDO J. ASCENCIO, State Bar No. 182061
Law Offices of Bruce G. Fagel
and Associates
100 North Crescent Drive, Suite 360
Beverly Hills, California 90210
Telephone No. (310) 281-8700
Facsimile No. (310) 281-5656

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I.P., a MINOR, by and through her guardian ad litem, FACUNDO PALACIO DIAZ, MICAELA PALACIO,<br><br>  Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>  Defendant.<br><br>ISABELLA PALACIO, A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM, FAGUNDO PALACIO, MICAELA PALACIO, FACUNDO PALACIO DIAZ,<br><br>  Plaintiffs,<br><br>vs.<br><br>BANNER HEALTH, AN ARIZONA CORPORATION, DOING BUSINESS AS BANNER LASSEN MEDICAL CENTER, DOES 1-250, INCLUSIVE,<br><br>  Defendants. | Case No. 2:13-CV-02013 JAM-CKD (Consolidated with 2:13-CV-01012 JAM-CKD)<br><br>PLAINTIFFS' MOTION TO EXCLUDE DEFENDANT UNITED STATES' SUPPLEMENTAL EXPERT MICHAEL P. NAGEOTTE, M.D.<br><br>Hon. Carolyn K. Delaney<br>United States Magistrate Judge<br>Sacramento, California<br><br>Date: October 29, 2014<br>Time: 10:00 a.m.<br>Dept: 8th Floor, Courtroom #24<br><br>Trial Date: May 11, 2015<br>Pre-Trial: March 13, 2015<br><br>TELEPHONIC APPEARANCE IS REQUESTED BY COUNSEL FOR PLAINTIFF |

To Defendant UNITED STATES OF AMERICA and its Attorneys of Record:

PLEASE TAKE NOTICE that on Wednesday, October 29, 2014, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the above-

1

entitled Court, located at the Robert T. Matsui Courthouse, 501 I Street, Sacramento, California, in Courtroom #24, before United States Magistrate Judge Carolyn K. Delaney, Plaintiffs I.P., a MINOR, by and through her guardian ad litem, and MICAELA PALACIO ("Plaintiffs"), will move the Court, pursuant to the *Federal Rules of Civil Procedure § § 37(c)(1)*[1], and § 26(e) for an order excluding supplemental designated expert witness MICHAEL P. NAGEOTTE, M.D., on the following grounds:

1. Defendant United States named erroneously Dr. Nageotte as a retained expert in their Supplemental disclosure on September 5, 2014. He was not named in the United States initial disclosure of expert witnesses that occurred on July 9, 2014. According to the Supplemental Disclosure, Dr. Nageotte's area of expertise is Obstetrics and Gynecology and Maternal Fetal Medicine. A copy of Dr. Nagetotte's Report is attached as Exhibit "A".

Rule 26(e) which provides for supplementing disclosures states that a party who has made a disclosure must supplement or correct its disclosure: (A) "in a timely manner if the party learns that in some material respect the disclosure . . . is *incomplete or incorrect* . . ."

The purpose of supplementary disclosures is to supplement earlier disclosures regarding the designated experts. Designating a new expert

---

[1] FRCP 37© Failure to Disclose, to Supplement an Earlier Response, or to Admit.
(1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
(B) may inform the jury of the party's failure; and
© may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

1 | or new opinions after the disclosure deadline is <u>not</u> allowed as a
2 | 'supplemental,' disclosure and such a late expert is properly
3 | excluded. *Metro Ford Truck Sales, Inc. v. Ford Motor Co.* (5th Cir.
4 | 1998) 145 F.3d 320, 324.

    2. Dr. Nageotte's testimony is also cumulative to that of Dr. Druzin. Defendant United States in their initial disclosure named Dr. Maurice Druzin as a retained expert. The initial disclosure states that Dr. Druzin's area of expertise is "Gynecology and Obstetrics and Maternal Fetal Medicine", the same as Dr. Nageotte. A copy of Dr. Druzin's report is attached as Exhibit "B". A comparison of those reports will reveal they are strikingly similar.

> Dr, Druzin states on page 4 of his report of May 27, 2014 (Exhibit "B"):
>
> *"The obstetrical management of this patient by the healthcare team under the direction of Dr. Davainis was within the accepted standards of obstetrical care. That patient was in active labor with Category II tracing, and the standard of care did not require the patient to be delivered approximately one hour earlier (as alleged in the complaint."*

Dr. Nageotte states on page 2 of his report of September 2, 2014 (Exhibit "A"):

> *"This was a 'near death' experience with unfortunate profound consequences for this child. However, the standard of care was may by the physician and nurses providing care to this patient in that they responded rapidly to the appearance of a Category III tracing. While the labor progress was somewhat prolonged, it is not unusual for a patient to decelerate her rate of cervical dilation in advanced labor. The management of this woman's labor was appropriate and within the standard of care. There was no ability to predict the rapid deterioration of this fetal heart rate to a Category III tracing."*

3

Plaintiffs' Motion to Exclude Testimony of Michael P. Nageotte, M.D.

Rule 26(e) supplements are 'only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report.' *Sancom, Inc. v. Qwest Communications Corp.* (D SD 2010) 683 F.Supp.2d 1043, 1062-1063; Cf. *In re Asbestos Products Liab. Litig.* (No. VI) (ED PA 2013) 289 F.R.D. 424, 425-426 which states that 'Rule 26(e) is <u>not</u> an avenue to correct 'failures of omission because the expert did an inadequate or incomplete preparation,' ... <u>add new opinions ... or 'deepen' or 'strengthen' existing opinions</u>. (Emphasis added).

The supplemental designation of Dr. Nageotte is cumulative and improper under Rule 26(e). Defendant may not add a new expert under the guise of a supplemental disclosure, especially as here, where they already have an expert in the same field of expertise and both experts hold essentially the same opinion on the same issue.

Wherefore, Plaintiffs respectfully move the Court to exclude the supplementally designated expert, Dr. Nageotte.

Dated: September 19, 2014

                                                   Respectfully submitted,

                                                   <u>/s/ Eduardo J. Ascencio</u>

                                                   EDUARDO J. ASCENCIO
                                                   LAW OFFICES OF BRUCE G. FAGEL
                                                   & ASSOCIATES
                                                   Attorneys for Plaintiffs

4

Plaintiffs' Motion to Exclude Testimony of Michael P. Nageotte, M.D.

## DECLARATION OF EDUARDO J. ASCENCIO IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE EXPERT REPORTS AND TESTIMONY

I, Eduardo J. Ascencio, hereby declare as follows:

1. All of the information set forth in this Declaration is based upon my personal knowledge, except as to those matters stated on information and belief. If called as a witness, I could, and would, testify competently to the following.

2. I am an attorney at law licensed to practice in all of the courts of the State of California and in the United States District Court for the Eastern District of California. I am associated with the Law Offices of Bruce G. Fagel and Associates, attorneys of record for Plaintiffs.

3. This is a Federal Tort Claims Action by the minor Plaintiff, I.P., born x/xx/2012, at Banner Lassen Medical Center against the Defendant, United States of America, for alleged negligence and medical malpractice for injuries sustained during her mother's labor and delivery process by nurses and employees at Banner Lassen Medical Center, and by federal employees, Paul Davanis MD, and Paul W. Holmes, MD, resulting in severe neurological injuries and brain damage. Plaintiff I.P.'s parents, Facundo and Micaela Palacio, each have their separate claims.

The United States of America removed the State Action from the Lassen Superior Court and this action included Defendant Banner Health, an Arizona Corporation d/b/a Banner Lassen Medical Center. The two actions were consolidated as related cases in Federal Court. discovery would be completed by June 4, 2014.

- On July 9, 2014, the Plaintiffs and United States exchanged expert designations. Defendant United States designated Dr. Druzin as

5

Plaintiffs' Motion to Exclude Testimony of Michael P. Nageotte, M.D.

1 their obstetrical expert and provided his report. On September 5, 2014
2 defendant United States erroneously designated another obstetrician
3 Dr. Nageotte as a retained expert with cumulative testimony and
4 provided a similar report to that of Dr. Druzin - that the defendants
5 were not negligent in with respect to obstetrical care.
6     I declare under penalty of perjury under the laws of the State of
7 CA that the foregoing is true and correct. Executed this 19th day of
8 September, 2014, at Beverly Hills, CA.

                                      /S/ Eduardo J. Ascencio

Exhibit "A"

Michael P. Nageotte, M.D., Inc.
2801 Atlantic Avenue
Long Beach, California 90806

September 2, 2014

Victoria L. Boesch
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, California 9581
Re: Palacio v. United States

Dear Ms. Boesch:

Thank you for the opportunity to review the provided medical records in the case of Palacio v. United States. I have had received and reviewed the records in this case which include the medical records from Banner Health, the medical records of Micaela Palacio, the medical records of Isabella Palacio, the plaintiff and defense expert reports from Drs. Manning, Paul, Phillips, Rhine Druzin and Rai. Additionally, the deposition transcripts and exhibits provided include those of Micaela Palacio, Drs, Paul Davainis and Paul Holmes, Facundo Palacio, Joel Paoner, CRNA, Drondee Perez, Linda Ross, Arlene Anderson, Dawn Amick and Kelley DelCarlo.

As we have discussed, in my opinion this case involves the term labor and delivery of a multiparous woman with normal prenatal care presenting in active labor late on the night of April 29, 2012. The estimated date of confinement had been established as May the 5th and she was 39 1/7 weeks' gestation. Subsequent to admission, she received an epidural for pain relief and had spontaneous rupture of membranes at 0147 on 4/30/12 and was 8-9 cm dilated at zero station. Her physician was Dr. Paul Davainis and he was contacted by the nursing staff and came to the hospital at 0215 expecting the patient to be delivering. Repeat cervical examination at 0313 revealed labor progress with dilation of 9 cm with a vertex at +1 station. At approximately 0400, the patient was still with a rim of cervix and her physician had her attempt to push past the cervix. This was not successful and the patient was allowed to continue to labor. A fetal weight estimate at 0455 was 3700 gms. by her physician. Because of the lack of further progress and concerns with the fetal heart rate monitoring, a decision to proceed with a C-section was made and the patient consented for surgery at 0501. Patient was moved to the OR urgently because of these concerns as well as worsening of the fetal heart rate. In the OR, attempts to obtain the fetal heart rate were unsuccessful and an emergency C-section was rapidly performed with general anesthesia. At delivery, a very depressed newborn female was encountered who required emergency aggressive resuscitative efforts. Initial cord gases were noted to have a pH of 7.10 with a

pCO2 of 57, a pO2 of 30 and base excess of -11.1. Subsequent arterial blood gases from the neonate reflected a further worsening of the metabolic status consistent with a worsening metabolic acidosis despite aggressive ongoing resuscitation. The newborn was subsequently transferred to UC Davis for further neonatal care.

In reviewing the fetal heart rate, the tracing began at 2306 on 4/29/12. The tracing was reactive with occasional variable decelerations. While there were short episodes of moderate variable decelerations and a short time of late decelerations from 0131 to 0142, the tracing essentially remained Category II. At approximately 0443, there appeared more severe variable decelerations and at 0451 the tracing became a Category III. At this time, preparations were being considered for delivery of the patient surgically. The tracing ends at 0502 and no fetal heart tones could be found in the OR. Prior to this point, adequate electronic fetal heart rate information was being obtained with the external fetal heart rate monitor and at no time did the standard of care require replacement with the fetal electrode.

I believe this tragic case demonstrates a sudden, profound sentinel event of fetal compromise and asphyxia. This was a "near death" experience with unfortunate profound consequences for this child. However, the standard of care was met by the physician and nurses providing care to this patient in that they responded rapidly to the appearance of a Category III tracing. While the labor progress was somewhat prolonged, it is not unusual for a patient to decelerate her rate of cervical dilation in advanced labor. The management of this woman's labor was appropriate and within the standard of care. There was no ability to predict the rapid deterioration of this fetal heart rate to a Category III tracing.

Thank you again for this opportunity.

Sincerely yours,

Michael P. Nageotte, MD
Perinatologist

Exhibit "B"

*Maurice L. Druzin, MD*
*1408 Pitman Avenue*
*Palo Alto, CA 94301*

May 27, 2014

Ms. Victoria Boesch
Assistant United States Attorney | Eastern District of California
Robert T. Matsui United States Courthouse
501 I Street, Suite 10-100
Sacramento, CA 95814

**Re: *Palacio v United States***
***Civil Action No. 2:13 –CV-01012-JAM-CKD***
***United States District Court for the Eastern District of California***

I have reviewed the case of Ms. Isabella Palacio versus the United States. The following records were reviewed:

1). Plaintiffs' Complaint
2). Micaela Palacio's medical records (P_ADMIN_00001-179)
3). Isabella Palacio's medical records (P_ADMIN_00180-909)
4). United States Responses to a). Plaintiffs' Requests for Production of Documents (Set One) and (b) Plaintiffs" Interrogatories (Set One)
5). Documents produced in response to Plaintiffs" Requests for Production of Documents (Set One) (US_0001-US_0200).
6). Banner Health's Responses to United States' Requests for Production of Documents (Set One)
7). Documents produced by Banner Health in response to United States' Requests for Production of Documents (Set One) (BANNER_0001-222).
8). Banner Health's Responses to a). Plaintiffs" Requests for Production of Documents (Set Four) and (b) Plaintiffs' Interrogatories (Set Three)
9). Documents produced by Banner Health in response to Plaintiffs' Requests for Production of Documents (Set Four) (BANNER_0223-224).
10). Initial Disclosures by all parties (Plaintiffs, United States, Defendant Banner Health)
11). Fetal monitoring strip (hard copy)12). Plaintiffs" Responses to the United States' Requests for Production of Documents (Set One) and Interrogatories (Set One).
13). Deposition transcripts (with exhibits) of (a) Micaela Palacio (March 4, 2014), (b) Dr. Paul Davainis (March 6, 2014) and (c) Dr. Paul Holmes ( March 12, 2014
14). A more legible copy of BANNER_0187-0188.
15). Isabella Palacio's medical records from Dr. Mark Wood, Eye-Q Vision Care (Wood_001-002).
16). Isabella Palacio's medical records from Children's Retina Institute (CRI_0001-0010).

1

17). Isabella Palacio's medical records from Eye and Vision Central California (EVCCA_0001-0006)
18). Documents received from the Central Valley Regional Center (CVRC_001-054).
19). Documents received from Anthem Blue Cross (Anthem_BC_001-032).
20). Documents received from the Department of Health Care Services (MEDI-CAL_001-004)
21). Billing records received from UC Davis (UCD_02529-02571).
22). Plaintiffs" responses to the United States' Requests for Production of Documents (Set Two).
23). Deposition transcripts (with exhibits) of:

    a. Facundo Palacio ( March 20, 2014)
    b. Joel Paoner, CRNA (March 28, 2014)
    c. Drondee Perez, RT (April 14, 2014)
    d. Linda Ross, RN (April 15, 2014)
    e. Arlene Anderson, RN (April 15, 2014)
    f. Dawn Amick, RN (April 15, 2014)

24). Deposition transcript (with exhibits) of Kelley DelCarlo, RN (April 16, 2014)
25). Documents received from United Cerebral Palsy (UCP_0001-0158)
26). United States' Response to Plaintiffs' Request for Production of Documents (Set Two) (more legible copy of US_0128-0128)
27). Documents produced by Plaintiffs in response to the United States' Requests for Production of Documents (Sets One & Two) (P_001-002)
28). Amended Initial Disclosures by all parties (Plaintiffs, United States, and Banner Health)

**Discharge Summary:**

Ms. Isabella Palacio was a 34 year-old with no antenatal complications, who presented to Banner Health, Banner Lassen Medical Center in Susanville, CA on April 29, 2012 at 22:50 hours at 39 weeks +2 days. Her chief complaint was contractions and bloody show. She denied bleeding, rupture of membranes and reported fetal movements present on April 29, 2012 at 23:23 hours. There was no fever, no visual disturbances, no epigastric pain, no nausea or vomiting. She was admitted for active labor. A cesarean section was warranted due to fetal intolerance to labor and became emergent. The patient was given general anesthesia immediately and a uterine incision-low segment transverse was performed without complication. Ms. Palacio's postpartum course was uneventful.

**Review of labor course:**

The patient was admitted and placed on an external electronic fetal monitoring system.

2

Electronic fetal monitoring started at 23:23 on April 29, 2012. Initial classification was Category 1, with moderate variability and no decelerations with accelerations. Category 1 tracings may be managed in a routine manner because they are not associated with fetal acidemia. At that time her cervical dilatation was 4 cm., effacement 70%, soft consistency and mid-position. Fetal presentation was cephalic at -1 station. Membranes status was intact and there was bloody show without vaginal bleeding.

The patient was in active labor and progressed to 8-9 cm. by 0200 on April 30, 2012. The patient developed a Category II tracing at approximately 0130, determined by variable decelerations with moderate variability. Category II tracings require evaluation, continued surveillance, initiation of corrective measures when indicated, and reevaluation. The presence of accelerations or moderate variability or both are highly predictive of normal fetal acid base status and thus may help guide clinical management. At 0215, the Category II tracing was reported to Dr. Davainis. Category II tracing continued until 0313, at which point the patient was examined and found to be 9 cm. dilated, 90% effaced and experienced spontaneous rupture of membranes. There were variable declarations as the predominant pattern with return to baseline and moderate variability (Category II) until 0400. Dr. Davainis reviewed the tracing at 0400 and appropriately concluded that it remained as a Category II tracing. From 0400 forward, although there was some loss of information, the predominant pattern continued to be variable decelerations with return to baseline and moderate variability. At approximately 0450, the variability was decreased compared to the prior tracing, but was moderate to decreased, and **not absent**. At approximately 0500, with persistent variable decelerations, and delivery not imminent, the decision was made to proceed with cesarean delivery. The baseline was 170 bpm with moderate variability at 0505 to 0506, and the patient was taken to the operating room at 0510.

Delivery was accomplished at 0528 on April 30, 2012, with delivery of a 3688 gram neonate, with APGARS 0,2,3, (1 minute, 5 minutes and 10 minute APGARS). The umbilical artery pH was 7.10 with a base excess of -11.

3

In my opinion, the obstetrical management of this patient by the healthcare team under the direction of Dr. Davainis was within the accepted standards of obstetrical care. The patient was in active labor with a Category II tracing, and the standard of care **did not** require the patient to be delivered approximately one hour earlier (as alleged in the complaint). Appropriate clinical judgment was exercised in making the decision to deliver Ms. Palacio by cesarean section at 0500, and the **decision to incision** time of twenty-two minutes (decision: 0500; incision: 0522) was within the standard of care in these circumstances).

The neonatal resuscitation and subsequent care of the neonate are not part of my review and outside my area of expertise.

The above statement represents my expert opinion in this case. I reserve the right to alter these opinions should any new documentation arise.

Sincerely,

Maurice L. Druzin, MD

4