BENJAMIN B. WAGNER
United States Attorney
VICTORIA L. BOESCH
CHI SOO KIM
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA  95814
Telephone:  (916) 554-2700
Facsimile:   (916) 554-2900
victoria.boesch@usdoj.gov
chi.soo.kim@usdoj.gov

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I.P., A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM, FACUNDO PALACIO DIAZ; MICAELA PALACIO,<br><br>                    Plaintiffs,<br><br>     v.<br><br>UNITED STATES OF AMERICA,<br><br>                    Defendant. | CASE NO.   2:13-CV-01012 JAM-CKD<br><br>**UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO EXCLUDE PLAINTIFFS' LIFE EXPECTANCY EXPERT AND REPORTS**<br><br>Date:     October 29, 2014<br>Time:    10:00 a.m.<br>Judge:   Honorable Carolyn K. Delaney<br>Crtrm:   24, 8th Floor |
| I.P., A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM, FACUNDO PALACIO DIAZ; MICAELA PALACIO,<br><br>                    Plaintiffs,<br>vs.<br><br>BANNER HEALTH, AN ARIZONA CORPORATION, doing business as BANNER LASSEN MEDICAL CENTER; DOES 100-200,<br><br>                    Defendants. | |

Pursuant to Federal Rules of Civil Procedure 26 and 37, and Federal Rules of Evidence 702 and 403, Defendant United States respectfully moves to exclude Plaintiffs' life expectancy expert, Dr. Carl Nichols, and his reports.

US MEMO ISO ITS MOTION TO EXCLUDE PLS' LIFE EXPECTANCY EXPERT AND REPORTS

# I. INTRODUCTION

Plaintiffs' life expectancy expert disclosed a half-page, 149 word expert report. His opinion and the principles and methods for his opinion are provided in two conclusory and vague sentences:

> With my training and experience I have calculated the life expectancy of [I.P.] to be 36.9 years from now.
>
> These calculations are based upon data in the medical literature, especially from Dr. Shavelle and his group.

Plaintiffs' expert, Dr. Carl Nichols, failed to identify: the "data in the medical literature," what principle or methodology (if any) he used to calculate life expectancy, why that principle or methodology was used, and how that principle or methodology was applied to the facts of this case. Despite the extensive medical records spanning thousands of pages and extensive discovery documents available, Dr. Nichols <u>only reviewed **two** records</u>— one neurological exam from February 2013 by Dr. Donald Olson and one neurological exam from May 2014 by Dr. Ira Lott. Dr. Nichols failed to review the vast majority of I.P.'s medical records, including her gastroenterology, pulmonology, orthopedic, physical medicine and rehabilitation, ophthalmology, physical and occupational therapy, and other neurology records.

The Court should exclude the opinions and reports of Dr. Nichols because his reports fall far below Rule 26(a)(2)(B)'s requirement that retained expert reports be sufficiently detailed and complete. His reports are conclusory, vague, and fail to provide the "how and why" he reached his conclusion of 36.9 years. Dr. Nichols' inadequate expert reports trigger Rule 37(c)(1)'s "automatic" and "self-executing" sanction prohibiting Plaintiffs from using Dr. Nichols on a motion, at a hearing, or at trial. Plaintiffs, who are represented by experienced counsel, cannot meet their burden to prove that their failure was substantially justified or harmless. In addition, excluding Dr. Nichols does not leave Plaintiffs without a life expectancy opinion because Plaintiffs have disclosed two other life expectancy opinions.

The Court should also exclude Dr. Nichols because 1) his opinions are not "based on sufficient facts or data"; 2) his opinions are not "the product of reliable principles and methods"; 3) Dr. Nichols has not "reliably applied the principles and methods to the facts of th[is] case"; and 4) his testimony

will not assist the trier of fact because they are cumulative and incompatible with Plaintiffs' two other life expectancy opinions.  Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *see* Fed. R. Evid. 403.

## II. BACKGROUND

This is a medical malpractice case brought under the Federal Tort Claims Act ("FTCA") for alleged injuries sustained by Plaintiff I.P., a minor child, during labor and delivery at the Banner Lassen Medical Center.  Plaintiffs allege negligence by nurses employed by Defendant Banner Lassen Medical Center and by doctors Paul Davainis and Paul Holmes.  At all relevant times, doctors Davainis and Holmes were employees of Northeastern Rural Health Clinic, Inc., a federally deemed and supported health center and grantee of the United States Department of Health & Human Services.

The parties have disclosed a total of 32 experts.  Pursuant to the Court's Pretrial Scheduling Order, Rule 26(a)(2) expert disclosures were due by July 9, 2014, and supplemental disclosures and rebuttal expert disclosures were due by September 5, 2014.  [Dkt 14]  Plaintiffs disclosed Dr. Nichols as a life expectancy expert with a half-page long expert report.  Declaration of Chi Soo Kim, Exh. A (June 25, 2014 Report of Carl Nichols, MD).  Based on his review of the life expectancy expert reports of the United States (Steven Day, PhD) and Defendant Banner (Scott Kush, MD), Dr. Nichols also disclosed a half-page long rebuttal expert report.  Kim Decl., Exh. B (August 26, 2014 Rebuttal Report of Carl Nichols, MD).

Four motions to exclude experts are scheduled to be heard by this Court on October 29, 2014.  Plaintiffs moved to exclude 1) the damages experts (life care planning and economists) of Defendant Banner and Defendant United States; and 2) Dr. Michael Nageotte, Defendant United States' obstetrics and gynecology and maternal fetal medicine expert.  [Dkt 34, 35]  Plaintiffs' motion is currently pending and scheduled to be heard by this Court on October 29, 2014.  [Dkt 34, 35]

The United States moves to exclude Plaintiffs' life expectancy expert Dr. Nichols because his expert report violates Rule 26(a)(2)(B)'s requirements, triggering Rule 37(c)(1)'s automatic and self-executing sanction because his deficient report was not substantially justified and was not harmless.

Dr. Nichols' testimony should also be excluded because his testimony does not meet the requirements of Federal Rules of Evidence 702 and 403, and *Daubert*.

Plaintiffs have disclosed three obstetrics and gynecology experts with cumulative and duplicative opinions: Dr. Frank Manning, Dr. Albert Phillips, and Dr. Richard Paul. By separate motion, the United States moves to strike the expert reports of Plaintiffs' experts Dr. Manning and Dr. Phillips and to exclude any testimony by these experts. The United States has noticed its motions to be heard simultaneously with Plaintiffs' motion to exclude experts to promote efficiency and conserve the resources of the Court, the parties, and the experts.

### III.   STANDARDS

#### A.   Rule 26(a)(2)(B) Expert Disclosures Standards

Rule 26 of the Federal Rules of Civil Procedure requires a party to disclose the identity of all expert witnesses who may be used at trial. Fed. R. Civ. P. 26(a)(2); *see Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 824 (9th Cir 2011). For a retained expert, Rule 26(a)(2)(B) requires that the expert's "report <u>must</u> contain" all the following:

> (i) a <u>complete</u> statement of all opinions the witness will express and the <u>basis and reasons</u> for them;
>
> (ii) the <u>facts or data considered</u> by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B) (emphasis added).[1] "The report must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report

---

[1] At this time, the United States does not challenge Dr. Nichols' expert report based on Rule 26(a)(2)(B)(iv)-(vi), but reserves the right to do so. Dr. Nichols' statement regarding his prior testimony in court may not satisfy Rule 26(a)(2)(B)(v). Dr. Nichols attached the following statement to his expert report: "I do not keep records that reflect prior testimony. However, in the past 4 years I do not believe I have testified in court." Kim Decl., Exh. A at 6 (identifying two depositions).

must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir. 1998); *see Elgas v. Colorado Belle Corp.*, 179 F.R.D. 296, 299 (D. Nev. 1998) ("The test of a report is whether it was sufficiently complete, detailed, and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced.") (quoting *Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996)). Among other things, the expert disclosure "is intended to allow the opposing party to have a reasonable opportunity to prepare for effective cross-examination and arrange for expert testimony from other witnesses." *DeGuzman v. United States*, 2013 WL 3149323, at *2 (E.D. Cal. June 19, 2013) (citing Fed. R. Civ. P. 26(a)(2)(B), advisory committee notes, 1993 amendments).

Pursuant to Rule 37(c)(1), a party who fails to provide the expert disclosure required by Rule 26(a)(2)(B) "is <u>not allowed</u> to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). As the party facing the sanction, Plaintiffs have the burden of proving that their failure was substantially justified or is harmless. *Goodman.* 644 F.3d at 827; *Torres v. City of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008).

**Rule 37(c)(1) is "a self-executing, automatic sanction** to provide a strong inducement for disclosure of material." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (emphasis added); *see* Fed. R. Civ. P. 37 advisory committee's note (1993) ("The revision provides a self-executing sanction for failure to make a disclosure required by Rule 26(a), without need for a motion . . ."; the "automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion"). Thus, Rule 37(c)(1) "gives teeth to these requirements [under Rule 26(a)] by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Hoffman v. Constr. Protective Svcs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (quoting *Yeti*, 259 F.3d at 1106). In the Ninth Circuit, "even absent a showing in the record of bad faith or willfulness, exclusion is an appropriate remedy for failing to fulfill the required disclosure

requirements of Rule 26(a)."[2] *Yeti*, 259 F.3d at 1106. Because Dr. Nichols' expert reports do not fulfill Rule 26's mandatory requirements, Rule 37(c)'s self-executing sanction applies.

### B. Federal Rule of Evidence 702 and *Daubert* Standards

A witness may testify as an expert and provide opinion testimony only if he meets the requirements of Rule 702 of the Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will <u>help the trier of fact</u> to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on <u>sufficient facts or data</u>;
>
> (c) the testimony is the product of <u>reliable principles and methods</u>; and
>
> (d) the expert has <u>reliably applied the principles and methods to the facts</u> of the case.

Fed. R. Evid. 702 (emphasis added).[3] The admissibility of expert testimony is a question for the Court. Fed. R. Evid. 104(a). "The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted." Fed. R. Evid. 702, advisory committee's note (2000). It is error to admit opinion evidence that fails to satisfy Rule 702's reliability requirements. *United States v. Hermanek*, 289 F.3d 1076, 1096 (9th Cir. 2002).

The Court acts as a gatekeeper to prevent unreliable expert testimony from reaching the trier of fact. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). In carrying out this responsibility, the Court has discretion and flexibility in determining what evidence is relevant, reliable, and helpful to the trier of fact. *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1420 (9th Cir. 1998); *United States v. Cordoba*, 104 F.3d 225, 228 (9th Cir. 1997) ("District Courts must strike the appropriate balance

---

[2] Here, excluding Dr. Nichols does not preclude a cause of action or amount to a dismissal of a claim. Plaintiffs have disclosed multiple damages experts including two other experts who opine on life expectancy, Drs. Olson and Lott; a life care plan by Nurse Consultant Karen Preston; and economist Peter Formuzis, PhD.

[3] At this time, the United States does not challenge Dr. Nichols' qualifications, but reserves the right to do so.

between admitting reliable, helpful expert testimony and excluding misleading or confusing testimony to achieve the flexible approach outlined in *Daubert*") (quoting *United States v. Rincon*, 28 F.3d 921, 926 (9th Cir. 1994)).

When an expert's opinions are not based on sound principles or data, they are unreliable and properly excluded. *See Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 153-54 (1999) (holding trial court did not abuse its discretion to exclude expert testimony on grounds that expert's methodology in analyzing relevant data was unreliable, even though the expert was qualified); *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir.2014) (en banc) (erroneous admission of expert testimony required new trial); *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) (holding that expert testimony was inadmissible based on its unreliable methodology notwithstanding "the impressive qualifications of plaintiffs' experts") ("*Daubert II*"); *Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1153-54 (E.D. Wash. 2009) (opinion based on speculation or erroneous data renders methodology unreliable and misleading and opinions inadmissible).

### IV.    ARGUMENT

The United States moves to exclude the testimony of life expectancy expert Dr. Nichols in its entirety.

**A.    Rule 37(c)(1)'s Automatic and Self-Executing Sanction Requires Excluding Dr. Nichols Because His Half-Page Long Expert Report Does Not Describe What, If Any, Methodology Was Used and How that Methodology was Applied, If At All, to This Case.**

Dr. Nichols' expert report[4] must be sufficiently detailed and complete, and "must include the 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Salgado*, 150 F.3d at 742 n.6; *see* Fed. R. Civ. P. 26, advisory committee note, 1993 Amendments, Paragraph 2 (the expert "must prepare a detailed and complete written report"); *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010); *Silong v. United States*, 2007 WL 2712100, at *4 (E.D. Cal. Sept. 7, 2007); *Finwall v. City of Chicago*, 239 F.R.D. 494, 501 (N.D. Ill. 2006) ("A complete report must include the substance of the testimony which an expert is expected to give on direct examination together with the reasons therefore.").

---

[4] A rebuttal report must also meet the requirements of Rule 26. *See* Rule 26(a)(2)(D).

Dr. Nichols' expert report does not come close to satisfying Rule 26(a)(2)(B)'s requirement for a "<u>complete</u> statement of all opinions the witness will express and the <u>basis and reasons</u> for them." Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added).  His entire expert report of 149 words is provided here:

> I am fully trained and board certified in Internal Medicine and Endocrinology.  I practiced these disciplines for more than 30 years.  I have estimated life expectancies for American General Life Insurance Company for more than 30 years.  Please refer to my C.V. for details.
>
> I have reviewed the neurological examination by Donald M. Olson, MD dated 6Feb2013 and the neurological examination by Ira T. Lott, MD dated 19May2014.
>
> These medical records show that [I.P.] suffers neurologic deficits stemming from a neonatal episode of hypoxic ischemic encephalopathy.  These deficits include inability to self feed, no meaningful upper extremity use and unable to be mobile.  Her head is small, indicating poor brain growth.
>
> With my training and experience I have calculated the life expectancy of [I.P.] to be 36.9 years from now.
>
> These calculations are based upon data in the medical literature, especially from Dr. Shavelle and his group.

Kim Decl., Exh. A.[5]

Courts uniformly strike or exclude experts whose reports are conclusory and fail to provide the "how and why" the expert reached his conclusion.  *See R.C. Olmstead*, 606 F.3d at 271; *Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1323-24 (11th Cir. 2008) (affirming exclusion of experts because "[n]either [expert's] report stated the expert's anticipated opinion with sufficient specificity to allow [the defendant] to prepare for rebuttal or cross-examination."); *Salgado*, 150 F.3d at 742; *In re Central European Indus. Development Co.*, 427 B.R. 149, 156, 158 (N.D. Cal. 2009); *Finwall*, 239 F.R.D. at 501; *Gregory v. Oliver*, 2002 WL 31972165, *1 (N.D. Ill. Dec. 27, 2002); *Elgas,* 179 F.R.D. at 299; *Reed*, 165 F.R.D. at 429; *see also Estate of Bojcic v. City of San Jose*, 358 F. App'x 906, at *1 (9th Cir. 2009) (under Rule 37(c)(1), affirming preclusion of expert testimony at trial on issues not included in the expert's Rule 26(a)(2)(B) written report).

---

[5] Dr. Lott states that his neurological exam was conducted on May 14, 2014.  Kim Decl., Exh. C (July 7, 2014 Report of Ira Lott, MD).

US MEMO ISO ITS MOTION TO EXCLUDE PLS' LIFE EXPECTANCY EXPERT AND REPORTS            7

Here, Dr. Nichols' one-sentence explanation of the methodology and data upon which his calculation was made is far from the detailed and complete statement required by Rule 26. His report states: "These calculations are based upon data in the medical literature, especially from Dr. Shavelle and his group." Kim Decl., Exh. A. Dr. Nichols fails to provide what principle or methodology (if any) he used to calculate life expectancy, why that principle or methodology was used, how that principle or methodology was applied to the facts of this case, and what "data in the medical literature" besides Dr. Shavelle upon which Dr. Nichols' calculation was based. Dr. Nichols' rebuttal expert report fails for the same reason.[6] Kim Decl., Exh. B ("This estimate is based on review of medical reports, my education, training, and experience."). This violates Rule 26's requirement that the report contain both "the facts or data considered by the expert" and "the basis and reasons" for the expert's opinions. Fed. R. Civ. P. 26(a)(2)(B); *see Hoss v. United Parcel Service, Inc.*, 2010 WL 672743, *3 (D. Idaho Feb. 20, 2010) (expert reports that fail to "adequately set forth the information on which [the experts] relied in their reports" do not satisfy Rule 26(a)(2)(B)(ii)'s requirement).

> 1. Defendants Should Not Be Forced To Depose Dr. Nichols To Discover His Analysis and Methodology for His Life Expectancy Opinion And Imposing This Burden Directly Conflicts with Rule 26's Requirements.

As the opposing party, Defendants are not required to, and should not be forced to, depose an expert to discover how and why the expert reached the conclusions that he did. *See Schneider v. Strote*, 51 F. App'x 239, 240 (9th Cir. 2002); *R.C. Olmstead*, 606 F.3d at 271; *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 35 (1st Cir. 2001) ("The purpose of a 'detailed and complete' expert report as contemplated by Rule 26(a), Fed. R. Civ. P. 26 advisory Committee's note, is, in part, to minimize the expense of deposing experts, and to shorten direct examination and prevent an ambush at trial."); *In re Central European Indus. Development Co.*, 427 B.R. at 156, 158 (opposing party is not required to "depose the expert in order to develop what her opinion is or the reasons for it"); Fed. R. Civ. P. 26, advisory committee note, 1993 Amendments. In addition, the opportunity to depose an expert does not cure or excuse an inadequate expert report.

---

[6] Dr. Nichols does not modify his life expectancy opinion in his rebuttal report, and like his initial report, does not explain what methodology (if any) was used to calculate his opinion of 36.9 additional years.

*Gregory.* 2002 WL 31972165, at *1 ("one principal purpose of the detailed content that is prescribed by Rule 26(a)(2)(B) is to make [deposing the expert] an option for the party receiving the report, not for the party proffering it").

"The advisory committee comments to Rule 26 make it clear, however, that the Rule's reporting requirements, coupled with the enforcement provisions of Rule 37(c)(1), were designed in part to make it *unnecessary to depose experts at all*. Fed. R. Civ. P. 26(a)(2)(B) advisory committee comment (1993) ('[I]n many cases the [Rule 26 expert] report may eliminate the need for a deposition.')." *Schneider v. Strote*, 51 F. App'x 239, 240 (9th Cir. 2002). Therefore, the Court should reject any arguments by Plaintiffs that Defendants should be required to depose Dr. Nichols to discover what Rule 26(a)(2) required Dr. Nichols to include in his report.

### 2. Plaintiffs' Deficient Expert Reports Are Not Harmless and Were Not Substantially Justified.

Though Plaintiffs have the burden to prove that Dr. Nichols' deficient expert reports were substantially justified and not harmless, and Defendants are not required to show prejudice from Plaintiffs' deficient expert report, *see Torres*, 548 F.3d at 1213, Defendants have been prejudiced. The deadline for supplemental and rebuttal expert reports has passed, and Defendants have been prejudiced because they were unable to properly evaluate and rebut Dr. Nichols' expert report. Kim Decl., Exh. E at 2-3 (September 1, 2014 report of Steven Day, PhD, United States' life expectancy expert) ("Dr. Nichols provides no further details on how he arrived at this figure of 36.9 years. … Without further details on such possible calculations, my ability to comment further is limited."); Kim Decl., Exh. G (October 6, 2014 Deposition of Steven Day, PhD at 36:9-14) (testifying that Dr. Nichols' rebuttal report "still gives no indication of how he came to his opinion of 36.9 remaining years for [I.P.'s] life expectancy").

Further, Defendants should not be forced to travel to Texas and pay Dr. Nichols $450 per hour to take his deposition to discover what Dr. Nichols was required by Rule 26 to provide in his expert report, but failed to provide, including the methodology (if any) that he used for concluding a life expectancy of 36.9 year additional years, the life tables (if any) that he used, how this methodology was applied to this case, and what "data in the medical literature" he based his calculations upon. *See*

Fed. R. Civ. P. 26, advisory committee note, 1993 Amendments, Paragraph 2; *Schneider*, 51 F. App'x at 240; *Salgado*, 150 F.3d at 742 n.6; *Elgas*, 179 F.R.D. at 299; *Reed*, 165 F.R.D. at 429; Fed. R. Civ. P. 26(b)(4)(E) (the party deposing expert under Rule 26(b)(4)(A) must pay the expert a reasonable fee for time spent); Kim Decl., ¶ 4 (Plaintiffs disclosed Dr. Nichols' hourly rate as $450 per hour for deposition testimony). Imposing that burden on Defendants directly conflicts with the purpose of Rule 26's expert disclosure requirements to eliminate surprise, minimize the need for depositions, and lower expenses. Fed. R. Civ. P. 26, advisory committee note, 1993 Amendments, Paragraph 2.

### B.  The Court Should Exclude Dr. Nichols' Testimony Because It Is Not Based On Sufficient Facts or Data, There Is No Way To Determine If Reliable Principles or Methods Were Reliably Applied, and It Is Not Helpful to the Court Because His Testimony Is Cumulative and Incompatible With Plaintiffs' Two Other Life Expectancy Opinions.

The Court should also exclude Dr. Nichols because 1) his opinions are not "based on sufficient facts or data"; 2) there is no way to tell if his opinions are "the product of reliable principles and methods"; 3) there is no way to tell if Dr. Nichols "reliably applied the principles and methods to the facts of th[is] case"; and 4) his testimony will not assist the trier of fact because they are cumulative and incompatible with Plaintiffs' two other life expectancy opinions. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *see* Fed. R. Evid. 403.

#### 1.  Dr. Nichols Only Reviewed Two Neurological Exams.

This medical malpractice case involves complex medical issues and the parties have disclosed a total of 32 experts. While the experts have differing opinions on various issues, the parties and their experts agree that I.P.'s medical condition is complex. Despite the extensive medical records and discovery documents available, Dr. Nichols only reviewed **two** records- two neurological exams from February 2013 (Dr. Donald Olson) and May 2014 (Dr. Ira Lott). Kim Decl., Exh. A at 1. Dr. Nichols failed to review the vast majority of I.P.'s medical records, including her gastroenterology, pulmonology, orthopedic, physical medicine and rehabilitation, ophthalmology, physical and occupational therapy records, and other neurology records. Dr. Nichols also did not review any expert reports[7] or other discovery documents, including the deposition testimony of I.P.'s mother, her

---

[7] Dr. Nichols states in his June 25, 2014 report that he reviewed two "neurological examination[s]," not the expert reports summarizing those examinations. Kim Decl., Exh. A at 1.

primary caregiver. As discussed in more detail below, the two neurologists whose records Dr. Nichols reviewed have provided life expectancy opinions that are substantially different, and incompatible with, Dr. Nichols' life expectancy opinion.

### 2. Dr. Nichols Fails to Explain What Methodology (If Any) That He Used, Why He Used This Methodology, and How He Applied The Methodology.

Dr. Nichols' expert report provides one conclusory, vague sentence regarding his life expectancy calculation: "These calculations are based upon data in the medical literature, especially from Dr. Shavelle and his group." Kim Decl., Exh. A. Dr. Nichols' rebuttal expert report provides another conclusory, vague sentence regarding his life expectancy calculation: "This estimate is based on review of medical reports, my education, training, and experience." Kim Decl., Exh. B. Dr. Nichols' reports fail to explain what methodology, if any, was used, why it was used, and how it was used. Kim Decl., Exh. F at 3 (September 9, 2014 Supplemental Report of Steven Day, PhD) ("Dr. Nichols provides no further details as to how he arrived at this figure of 36.9 years. Dr. Nichols' background (e.g., having 'estimated life expectancies for American General Life Insurance Company for more than 30 years') and the precision of the figure reported suggest that one or more life table calculations may have been involved. Without further details on such possible calculations, my ability to comment further is limited."); Kim Decl., Exh. G (October 6, 2014 Deposition of Steven Day, PhD at 36:9-14) (testifying that Dr. Nichols' rebuttal report "still gives no indication of how he came to his opinion of 36.9 remaining years for [I.P.'s] life expectancy").

Dr. Nichols' failure to explain in his reports what methodology was used and "whether or how he applied" the methodology warrants exclusion. *See Morin v. United States*, 244 F. App'x 142, 143-44 (9th Cir. 2007) (affirming exclusion under Rule 702 and *Daubert* of plaintiff's causation expert whose "report did not show whether or how he applied" the methodology); *Daubert II*, 43 F.3d at

---

Dr. Nichols' report states: "I have reviewed the neurological examination by Donald M. Olson, MD dated 6Feb2013 and the neurological examination by Ira T. Lott, MD dated 19May2014." *Id.* Dr. Olson's opening expert report is dated October 2, 2013 and his supplemental expert report is dated August 27, 2014. Kim Decl., Exhs. H & I. Dr. Lott's opening expert report is dated July 7, 2014 and his supplemental expert report is dated August 27, 2014. Kim Decl., Exhs. C & D. Dr. Nichols' expert report of June 25, 2014 pre-dates Dr. Olson's supplemental expert report, Dr. Lott's opening expert report, and Dr. Lott's supplemental expert report. Therefore, Dr. Nichols could not have based his June 2014 opinion on any of these three expert reports.

1319 (an expert's failure to "explain the methodology the experts followed to reach their conclusions" does not satisfy *Daubert*). An expert's "conclusions and their assurances of reliability" of the expert's methodology do not satisfy *Daubert* and Rule 702. *Daubert II*, 43 F.3d at 1319. There is no way to tell if Dr. Nichols' life expectancy opinions are "the product of reliable principles and methods" or if he "reliably applied the principles and methods to the facts of th[is] case" as required under Rule 702.

        3.  <u>Dr. Nichols' Life Expectancy Testimony Will Not Assist The Trier Of Fact Because They Are Cumulative And Incompatible With Plaintiffs' Two Other Life Expectancy Opinions.</u>

Plaintiffs have disclosed three life expectancy opinions and Dr. Nichols' opinion is incompatible with Plaintiffs' two other life expectancy opinions from pediatric neurologists Drs. Olson and Lott. It is important to note that the only two records from this case upon which Dr. Nichols' opinion is based are the neurological exams by Drs. Olson and Lott, but the life expectancy opinions of both Drs. Olson and Lott are incompatible with and substantially different from Dr. Nichols' life expectancy opinion.

<u>Plaintiffs' Three Life Expectancy Opinions:</u>

- Dr. Nichols opines a life expectancy of 36.9 additional years.
- Dr. Olson opines a life expectancy of 18-28 additional years (to "approximately 20-30 years of age").
- Dr. Lott opines a life expectancy of 26 additional years.

Kim Decl., Exhs. A, C, & H. Dr. Nichols' opinion is anywhere from <u>double</u> the length of Dr. Olson's opinion at the low end of 18 additional years, or almost 9 years longer than Dr. Olson's opinion at the high end—approximately 32% longer. Dr. Nichols' opinion is almost 11 years longer than Dr. Lott's opinion—approximately 42% longer.

While the life expectancy opinions of Drs. Olson and Lott at least overlap, the life expectancy opinion of Dr. Nichols is incompatible with and far outside the opinions of Drs. Olson and Lott. Therefore, Dr. Nichols' testimony should be excluded because it will not help the trier of fact under Rule 702 and because it will confuse the issues, waste time, and needlessly present cumulative evidence under Rule 403. *See* Fed. R. Evid. 702, 403; *In re Air Crash Disaster*, 86 F.3d 498, 527 (6th Cir. 1996) ("a court is free to exclude *any* expert testimony, including the testimony of an announced

expert, if the testimony is cumulative or redundant under Fed. R. Evid. 403"); *Davis v. Mason County*, 927 F.2d 1473, 1484 (9th Cir. 1991) (affirming exclusion of expert as cumulative where expert would testify on the "same topic" as another expert), *overruled on other grounds by Davis v. City & County of San Francisco*, 976 F.2d 1536 (9th Cir. 1992); *Upsher-Smith Labs, Inc. v. Mylan Labs, Inc.*, 944 F. Supp. 1411, 1440 (D. Minn. 1996).

Further, excluding Dr. Nichols and his reports does not leave Plaintiffs without a life expectancy opinion because Plaintiffs have disclosed two other life expectancy opinions by doctors Olson and Lott.

## V. CONCLUSION

For the foregoing reasons, the Court should exclude the testimony and reports of Plaintiffs' life expectancy expert Dr. Carl Nichols.

Respectfully submitted,

Dated:  October 8, 2014

BENJAMIN B. WAGNER
United States Attorney

*/s/ Chi Soo Kim*
CHI SOO KIM
Assistant United States Attorney

Attorneys for Defendant United States