BRUCE G. FAGEL, State Bar No. 103674
EDUARDO J. ASCENCIO, State Bar No. 182061
Law Offices of Bruce G. Fagel
& Associates
100 North Crescent Drive, Suite 360
Beverly Hills, California 90210
Tel: (310) 281-8700
Fax: (310) 281-5656
brucefagel@fagellaw.com
eduardoascencio@fagellaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I.P., a MINOR, by and through her guardian ad litem, FACUNDO PALACIO DIAZ, MICAELA PALACIO,<br><br>    Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No. 2:13-CV-01012 JAM-CKD<br><br>[Consolidated with 2:13-CV-02013 JAM-CKD]<br><br>PLAINTIFFS' OPPOSITION TO MOTION OF UNITED STATES TO EXCLUDE PLAINTIFFS' LIFE EXPECTANCY EXPERT AND REPORTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>Date:  November 19, 2014<br>Time:  9:30 a.m<br>Judge: Hon. John A. Mendez<br>Crtrm: 6, 14th Floor |
| I.P, A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM, FAGUNDO PALACIO, MICAELA PALACIO, FACUNDO PALACIO DIAZ,<br><br>    Plaintiffs,<br><br>vs.<br><br>BANNER HEALTH, AN ARIZONA CORPORATION, DOING BUSINESS AS BANNER LASSEN MEDICAL CENTER, DOES 1-250, INCLUSIVE,<br><br>    Defendants. | |

Plaintiffs I.P., a MINOR, by and through her guardian ad litem and FACUNDO PALACIO DIAZ and MICAELA PALACIO ("Plaintiffs"), oppose the Motion of Defendant UNITED STATES OF AMERICA, and the Joinder in the

motion by Defendant and Cross-Defendant BANNER HEALTH dba BANNER LASSEN MEDICAL CENTER ("Defendants"), to exclude the Plaintiffs' Life Expectancy Expert CARL THOMAS NICHOLS, MD., FACP, and his life expectancy reports.

Defendant United States argues that Dr. Nichols' reports are not sufficiently detailed and complete (Rule 26(a)(2)(B), and do not meet the requirements of Federal Rules of Evidence 702 and 703, and *Daubert*. (Page 2 of Motion, lines 1-7).

Plaintiffs' Opposition will be based on this Notice of Opposition, the accompanying Memorandum of Points and Authorities, the Declaration of Bruce G. Fagel, attorney for Plaintiff, which includes the Report of Dr. Nichols dated June 25, 2014 (Exhibit "A"), and his Rebuttal Report dated August 26, 2014 (Exhibit "B"), the declaration of plaintiff's obstetric expert Richard H. Paul, M.D., (Exhibit "C"), and such other and further evidence, oral or documentary, as may be presented at the hearing of the Motion.

Dated: October 27, 2014.

    Respectfully submitted

    LAW OFFICES OF BRUCE G. FAGEL

    /s/ Bruce G. Fagel
    BRUCE G. FAGEL
    Attorneys for Plaintiffs

### A. Background of Injury and Removal of State Action

This is a Federal Tort Claim action by the minor I.P. born on April 30, 2012, at Banner Lassen Medical Center. Dr. Paul Devainis and Dr. Paul Holmes, who were involved in the delivery and initial resuscitation of the minor plaintiff, were employees of Northwest Rural Health Clinic in Susanville, California.

The clinic is a federally-funded grantee of the U.S. Dept. of Health and Human Services. As a result of a delay in recognition of fetal distress, the minor plaintiff suffered a severe hypoxic brain injury in the last 20-30 minutes before her delivery by emergency c-section. Defendant Banner Lassen Medical Center employed the nurses who were involved in providing care to the minor plaintiff's mother during the labor and delivery. A Complaint was initially filed in State court before defendants Dr. Davainis and Dr. Holmes were identified as Federal employees. Banner Hospital filed a Cross-Complaint for indemnity against Dr. Devainis prior to the complaint being removed to Federal Court.

### B. Dr. Nichols is Disclosed as Plaintiffs' Life Expectancy Expert Together with His Report.

On July 9, 2014, Plaintiffs served their disclosure of expert witnesses (Exhibit "D"). The expert disclosure named Dr. Nichols as a life expectancy expert and included his report of June 25, 2014. The expert disclosure stated:

> "N. The Curriculum Vitae of Thomas Nichols, MD, is attached hereto and incorporated herein by this reference. Dr. Nichols is Board Certified in Internal Medicine and Endocrinology and will testify regarding the life expectancy of Plaintiff Isabella Palacio, and related topics. Dr. Nichols will also testify regarding any opinions that he forms regarding the opinions of defendant's

experts'. His fee for consultation, deposition and trial testimony is $450 per hour. Dr. Nichols has prepared a written report, delineating his opinions and the bases therefor, which is attached hereto and incorporated herein by this reference. It is anticipated that the materials upon which Dr. Nichols bases his opinions are in the care, custody and possession of counsel for the defense since those materials comprise the medical records of the Plaintiffs in this case. If such materials are not in the possession of defense counsel, such materials will be furnished immediately upon notice from defense counsel. Information pertaining to cases in which this retained expert has rendered testimony in the last 4 years is either appended hereto and/or shall be furnished upon receipt and conveyed to opposing counsel."

<u>C: Dr. Nichols' Life Expectancy Report Fully States His Opinion As to the Minor Plaintiff's Life Expectancy and the Bases For His Opinion. The Bases Include Estimating Life Expectancies for Insurance Companies for Over 30 Years, His Review of the Two Neurological Reports of Drs. Lott and Olson and Calculations from Data from the Medical Literature, Especially from Dr. Schavelle and His Group - The Life Expectancy Project</u>

Dr. Nichols' Report of June 25, 2014 (Exhibit "A"), states in relevant part:

"I am fully trained and board certified in Internal Medicine and Endocrinology. I practiced these disciplines for more than 30 years. <u>I have estimated life expectancies for American General Life Insurance Company for more than 30 years</u>. Please refer to my C.V. for details.

I have reviewed the neurological examination by Donald M. Olson, MD dated 6Feb2013 and the neurological examination of Ira T. Lott, MD dated 19May2014.

These medical records show that Isabella Palacio suffers neurological deficits stemming from a neonatal episode of hypoxic ischemic encephalopathy. These deficits include inability to self

4

feed, no meaningful upper extremity use and unable to be mobile. Her head is small, indicating poor brain growth.

With my training and experience, I have calculated the life expectancy of Isabella Palacio to be 36.9 years from now.

These calculations are based upon data in the medical literature, especially from Dr. Shavelle and his group." Fn.[1]
Sincerely, Carl Thomas Nichols MD FACP (Emphasis added).

### D. Dr. Nichols Also Disclosed in His Rebuttal Report His Disagreement with the Defendants' Experts Life Expectancy Opinions and the Reasons and Basis for His Disagreement

Dr. Nichols' Rebuttal Report of August 26, 2014 (Exhibit "B") states in relevant part:

"I have reviewed the letters from Dr. Kush and Dr. Day regarding their estimates life expectancies of Isabella Palacio, DOB 30Apr2012.

I respectfully disagree for the following reasons:

1.  I believe she should be classified as in a mobile minimally conscious state because of her ability to roll side to side, lift her head when prone, have some use of her hand, and have some arm extension.
2.  There was no consideration given for improvement in her

---

[1] Dr. Shavelle's Group is the "Life Expectancy Project." See generally http://www.lifeexpectancy.com/rms.shtml. This Group is well known to medical malpractice attorneys, liability insurance companies and their medical experts. Their data is readily available and widely published and relied upon.
The Shavelle Group specializes in life expectancy calculations based on standard actuarial and biostatistical procedures. Their web-site, shown below states: "We apply these scientific methods to data on children born with cerebral palsy (CP), persons in the vegetative state (VS), and to those who have suffered spinal cord (SCI) or traumatic brain (TBI) injuries. We have published extensively on life expectancy, and have consulted on life expectancy in Canada, England, Australia and the United States. http://www.bioportfolio.com/corporate/company/27231/Life-Expectancy-Project

5

neurological status in spite of her parents stating there has been incremental improvement at approximately six month intervals and the literature suggesting that improvement may occur in children who are in the mobile minimally conscious state at age three years and then retested at age six years. Improvement occurred in approximately 38% of these patients.

For these reasons I believe the estimate of the life expectancy of Isabella Palacio is 36.9 years from now. This estimate is based on review of medical reports, my education, training and experience."
/s/ Carl Thomas Nichols MD FACP

### E. Defendants Have Not Moved the Court for A More Complete Report of Dr. Nichols. Defendants Filed This Motion at the Latest Possible Date and Then Only After Plaintiffs Filed Their Motions to Exclude Evidence. Dr. Nichols' Deposition Is Scheduled for December 9, 2014

On September 19, 2014, Plaintiffs filed motions to Exclude the Life Care Plan report (39 pages), and (2) the Cost Comparison report authored by the Defendant Hospital's Retained Expert Nurse LINDA OLZACK as they were served as an attachment in the Hospital's Supplemental Disclosure of Expert Witnesses on September 4, 2014, for the first time, rather than in the Hospital's initial Disclosure of Expert Witnesses as required by *F.R.C.P* § 26(a)(2)(B).

The motion also requested exclusion of the 28 page Life Care Plan of the United States' Retained Expert, Tim Sells, on the same grounds as stated above; and, to exclude the Economic Report of Cohen /Volk which is in excess of 96 pages, on the same grounds, as served upon the plaintiffs as an attachment in the United States' Supplemental Disclosure of Expert Witnesses on September 4, 2014, for the <u>first</u> time, rather than in their initial Disclosure of Expert Witnesses as

required by F.R.C.P § 26(a)(2).

The opposition to these motions before the Magistrate Judge which was set for hearing on October 29, 2014, was to be no later than October 15, 2014. Defendant United States' present Motion was filed on October 8, 2014, the minimum 21 days permitted for discovery motions (Rule 251). These matters were then transferred to the District Court for hearing on November 19, 2014, and the previous dates before the Magistrate Judge were vacated.

A party dissatisfied with the content of an opposing expert's report may move for an order directing the expert to provide the information required by the Rule. If the information is still not forthcoming, the expert's testimony may be excluded at trial on a motion hearing. FRCP Rule 37(c)(1), 26(a)(2); cf. Harvey v. Mohammed (D DC 2013) 941 F.Supp.2d 93, 99. Defendants have filed no such motion.

Similarly, courts are not likely to exclude an expert's testimony because of an insufficient report unless the attorney promptly moved for more adequate disclosures. Cf. Harvey v. District of Columbia (D DC 1996) 949 F.Supp. 874, 877, where the party waited until day before discovery cut-off to challenge inadequate report.

In addition, courts realize that any deficiencies in the report may be remedied when the expert's deposition is taken, mitigating any harm resulting from the deficient report. Iacangelo v. Georgetown University (D DC 2011) 272 F.R.D. 233, 234.

In this case, the District Court approved the stipulation between the parties to extend expert depositions to December 15, 2014.

Also, there is no prejudice to the defendants in this case. In determining whether the nondisclosure was 'harmless' to the opposing party, courts should evaluate: (1) whether the opposing party was

1  otherwise aware of the undisclosed information. <u>Wilson v. Superclub
2  Ibiza, LLC</u> (D DC 2013) 931 F.Supp.2d 61, 63);whether the undisclosed
3  information was of major or only minor importance. Cf. <u>Hawkins v.
4  Graceland</u> (WD TN 2002) 210 F.R.D. 210, 211); and whether the opposing
5  party would be able to depose the expert within the existing case
6  management deadlines. Cf. <u>Hewitt v. Liberty Mut. Group, Inc.</u> (MD FL
7  2010) 268 F.R.D. 681, 684.

     Here, the defendants have not requested a more definitive statement. The deposition of Dr. Nichols is confirmed for December 9, 2014; and, defendants, in fact, have all the information they require regarding Dr. Nichols' opinions regarding life expectancy. The Assistant United States' Attorney will have more than ample opportunity to examine Dr. Nichols at deposition and fully explore all his opinions.

### F. Dr. Nichols' Reports and His Testimony Should Not Be Excluded As They Comply with Rule 26(a)(2)(B). They Are Not Conclusory or Vague.

     Defendant, United States, argues that Dr. Nichols' reports are conclusory or vague. A review of his initial report is anything but vague or conclusory. It may be short, but it is neither vague, nor conclusory. Dr. Nichols, with 30 years of experience rating individuals' life expectancies for insurance companies, together with the data contained in the medical literature, constitute substantial foundation for his opinions. Dr. Nichols states he has reviewed two neurological reports. Such reports of neurologists are the matter and basis for determining life expectancy. In a neurological case, such as this one, it is the neurologists' findings which determine the life expectancy. Additionally, Dr. Nichols based his life expectancy

1 opinions not only on his own experience, but that of the Shavelle Group
2 and the Life Expectancy Project. This group and their date are well
3 known to life care planners, medical experts, malpractice attorneys,
4 both plaintiff and defense, as well as insurance companies with an
5 extensive data base. This data is widely available.

6     The argument that Dr. Nichols should have reviewed other medical
7 records, such as the gastroenterology report, is argument and
8 commentary and goes to weight, if anything, not admissibility of the
9 records themselves. Similarly, Defendants' <u>Daubert</u> argument is
10 unavailing. Dr. Nichols has stated unequivocally that he used the data
11 from the Shavelle group concerning life expectancy. That statement is
12 neither vague nor conclusory.

13     Defendant compares and contrasts Dr. Nichols life expectancy
14 (36.9 years) with that of Dr. Olson (18-28 years), and Dr. Lott (26
15 years). Yet, it is Dr. Nichols whose medical position for 30 years in
16 determining life expectancy for annuity companies was required to
17 review such reports and make a real life determination of expectancies.

18     As a practical matter, as stated in <u>Schneider v. Kaiser Found.</u>
19 <u>Hospitals</u> (1989) 215 Cal.App.3d 1311 at 1319, the present value of
20 periodic payments 'is normally best represented by <u>the cost of the</u>
21 <u>annuity</u> purchased to fund the payments. It is individuals like Dr.
22 Nichols, who determine the cost of such annuities based on life
23 expectancy.

24     Such a report must contain the following:
25     (1) A 'complete statement' of all opinions to be expressed at
26 trial and the bases for each opinion; Cf. <u>Jenkins v. Bartlett</u> (7th Cir.
27 2007) 487 F.3d 482, 487. The report includes his exact opinion, and the
28 bases for that opinion. (2) The facts or data considered in forming the

1  opinion <u>Rembrandt Vision Technologies, L.P. v. Johnson & Johnson</u>
2  <u>Vision Care, Inc</u>. (Fed. Cir. 2013) 725 F.3d 1377, 1381, which includes
3  disclosure of expert's testing methodology. Dr. Nichols' report does
4  this as well, and includes reference to the Shavelle methodology, as
5  well as the neurology reports her considered and his statements about
6  the child's present condition. Thus each of the bases for his opinions
7  is shown.
8      Additionally, Dr. Nichols qualifications are shown, his fee for
9  appearance and the publications authored by the expert within the
10 preceding 10 years are all shown. His CV is attached to the report
11     WHEREFORE, by reason of the foregoing, Plaintiffs urge the Court
12 to deny the motion.
13 Dated: November 5, 2014

Respectfully submitted,

/s/ Bruce G. Fagel
BRUCE G. FAGEL
Attorneys for Plaintiffs