BRUCE G. FAGEL, State Bar No. 103674
EDUARDO J. ASCENCIO, State Bar No. 182061
Law Offices of Bruce G. Fagel
and Associates
100 North Crescent Drive, Suite 360
Beverly Hills, California 90210
Telephone No. (310) 281-8700
Facsimile No. (310) 281-5656

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I.P., a MINOR, by and through her guardian ad litem, FACUNDO PALACIO DIAZ, MICAELA PALACIO,<br><br>     Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>     Defendant.<br><hr>ISABELLA PALACIO, A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM, FAGUNDO PALACIO, MICAELA PALACIO, FACUNDO PALACIO DIAZ,<br><br>     Plaintiffs,<br><br>vs.<br><br>BANNER HEALTH, AN ARIZONA CORPORATION, DOING BUSINESS AS BANNER LASSEN MEDICAL CENTER, DOES 1-250, INCLUSIVE,<br><br>     Defendants. | Case No. 2:13-CV-010122 JAM-CKD<br><br>PLAINTIFFS' REPLY MEMORANDUM RE MOTION TO EXCLUDE DEFENDANT UNITED STATES' SUPPLEMENTAL EXPERT MICHAEL P. NAGEOTTE, M.D.<br><br>Date: November 19, 2014<br>Time: 9:30 a.m.<br>Ctrm.: 6, 14th Floor |

     Plaintiffs I.P., a minor through her guardian ad litem, FACUNDO PALACIO DIAZ, and MICAELA PALACIO, respectfully submit their Reply Memorandum to the Opposition of the United States with respect to their

1  Motion to exclude Dr. Nageotte as an expert in this case.

2  Plaintiffs moved the Court, pursuant to the *Federal Rules of Civil Procedure* §§ 37(c)(1), and § 26(e) for an order excluding supplementally designated expert witness MICHAEL P. NAGEOTTE, M.D., on the grounds that he was named impermissibly as a retained expert in the United States Supplemental disclosure on September 5, 2014. He was not named in the United States' initial disclosure of expert witnesses that occurred on July 9, 2014.

According to the Supplemental Disclosure filed by the United State4s, Dr. Nageotte's area of expertise is Obstetrics and Gynecology and Maternal Fetal Medicine. A copy of Dr. Nagetotte's Report is attached as Exhibit "A".

Rule 26(e) which provides for supplementing disclosures states that a party who has made a disclosure must supplement or correct its disclosure: (A) "in a timely manner if the party learns that in some material respect the disclosure . . . is *incomplete or incorrect* . . ."

The purpose of supplementary disclosures is to supplement earlier disclosures regarding the designated experts. Designating a new expert or <u>new opinions</u> after the disclosure deadline is <u>not</u> allowed as a 'supplemental,' disclosure and such a late expert is properly excluded. *Metro Ford Truck Sales, Inc. v. Ford Motor Co.* (5th Cir. 1998) 145 F.3d 320, 324.

Plaintiffs argued that Dr. Nageotte's testimony is cumulative to that of Dr. Druzin, who is of the same specialty.  Defendant United States, in their Opposition to Plaintiffs' Motion states:

"And, though Nageotte's rebuttal report is generally <u>consistent</u> with United States' OB/GYN expert Dr. Druzin's opinions, it differs from Druzin in its approach and analysis." (Pg.2/13-15).

Defendant United States then argues that the report is not cumulative because of "Dr. Nageotte's fetal heart rate monitoring publications . . . parallel[s] Plaintiffs' expert Dr. Paul."

This cannot be a "rebuttal" report as the United States argues, because Dr. Nageotte was not named as an expert in the initial disclosure of experts. Dr. Nageotte is simply a new expert with new opinions. The United States in its initial report fully identified its rebuttal experts. Dr. Nageotte was not one of them. Even if Dr. Nageotte was a rebuttal expert, he is an improper one:

If the expert evidence is intended <u>solely</u> to rebut evidence of another's expert, the disclosures are due within 30 days after the other party's disclosures. <u>FRCP</u> Rule 26(a)(2)(D)(ii); Cf. <u>Blake v. Securitas Secur. Services, Inc.</u> (D DC 2013) 292 F.R.D. 15, holding that purported rebuttal expert testimony offering <u>new arguments</u> beyond mere rebuttal deemed as <u>untimely</u> disclosed. (Emphasis added).

A review of the report of Dr. Nageotte ("A"), evidences that it goes far beyond just fetal heart tracing and opinions, which only appear on page 2 of his report. On page 1 of the report, Dr. Nageotte clearly states he has opinions concerning other than "fetal heart tracings." He starts out with the second full paragraph on page 1: "As we have discussed, in my opinion this case involves the term labor and delivery of a multiparous with:

(1) Normal prenatal care. (opinion)

(2) active labor (opinion)

(3) Dr. Davainis came to the hospital "expecting the patient to be delivered." (opinion)

(4) At 0400 the patient was still with a rim of cervix and her physician had her attempt to push past the cervix. (opinion)

(5) This was not successful. (opinion)

(6) Lack of further progress. (opinion)

(7) Concerns with fetal rate monitoring. (opinion)

(8) A decision was made to proceed with a c-section. (opinion)

(9) Because of these concerns and worsening of the fetal heart rate. (opinion)

10. An emergency c-section was "rapidly" performed. (opinion)

11. A very depressed newborn was encountered ((opinion) and beyond his expertise as an obstetrician.

12. Required emergency aggressive resuscitative efforts. (opinion)

13. Reflected worsening the metabolic status consistent with worsening metabolic acidosis. (opinion)

14. Aggressive ongoing resuscitation. (opinion)

***

The naming of Dr. Nageotte as a supplemental or rebuttal expert violates Rule 26(3). Defendant Unites States concedes that Dr. Nageotte is cumulative to their other OB/Gyn Dr. Druzin and artfully attempts to turn Nageotte into a rebuttal witness to counter Plaintiffs' expert Dr. Paul, with the claim that Dr. Nageotte has fetal monitoring expertise similar to Dr. Paul's. Dr. Nageotte is a *new* expert with *new* opinions and should be excluded as a cumulative expert. There are at least 14 "opinions" of Dr. Nageotte detailed above, that confirm that he is a cumulative expert. These are new arguments and new evidence, not rebuttal evidence.

//

Wherefore, Plaintiffs respectfully move the Court to exclude the supplementally designated expert, Dr. Nageotte.

Dated: November 12, 2014

Respectfully submitted,

/s/ Eduardo J. Ascencio

EDUARDO J. ASCENCIO
LAW OFFICES OF BRUCE G. FAGEL & ASSOCIATES
Attorneys for Plaintiffs

Exhibit "A"

Michael P. Nageotte, M.D., Inc.
2801 Atlantic Avenue
Long Beach, California 90806

September 2, 2014

Victoria L. Boesch
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, California 9581
Re: Palacio v. United States

Dear Ms. Boesch:

Thank you for the opportunity to review the provided medical records in the case of Palacio v. United States. I have had received and reviewed the records in this case which include the medical records from Banner Health, the medical records of Micaela Palacio, the medical records of Isabella Palacio, the plaintiff and defense expert reports from Drs. Manning, Paul, Phillips, Rhine Druzin and Rai. Additionally, the deposition transcripts and exhibits provided include those of Micaela Palacio, Drs. Paul Davainis and Paul Holmes, Facundo Palacio, Joel Paoner, CRNA, Drondee Perez, Linda Ross, Arlene Anderson, Dawn Amick and Kelley DelCarlo.

As we have discussed, in my opinion this case involves the term labor and delivery of a multiparous woman with normal prenatal care presenting in active labor late on the night of April 29, 2012. The estimated date of confinement had been established as May the 5th and she was 39 1/7 weeks' gestation. Subsequent to admission, she received an epidural for pain relief and had spontaneous rupture of membranes at 0147 on 4/30/12 and was 8-9 cm dilated at zero station. Her physician was Dr. Paul Davainis and he was contacted by the nursing staff and came to the hospital at 0215 expecting the patient to be delivering. Repeat cervical examination at 0313 revealed labor progress with dilation of 9 cm with a vertex at +1 station. At approximately 0400, the patient was still with a rim of cervix and her physician had her attempt to push past the cervix. This was not successful and the patient was allowed to continue to labor. A fetal weight estimate at 0455 was 3700 gms. by her physician. Because of the lack of further progress and concerns with the fetal heart rate monitoring, a decision to proceed with a C-section was made and the patient consented for surgery at 0501. Patient was moved to the OR urgently because of these concerns as well as worsening of the fetal heart rate. In the OR, attempts to obtain the fetal heart rate were unsuccessful and an emergency C-section was rapidly performed with general anesthesia. At delivery, a very depressed newborn female was encountered who required emergency aggressive resuscitative efforts. Initial cord gases were noted to have a pH of 7.10 with a

pCO2 of 57, a pO2 of 30 and base excess of -11.1. Subsequent arterial blood gases from the neonate reflected a further worsening of the metabolic status consistent with a worsening metabolic acidosis despite aggressive ongoing resuscitation. The newborn was subsequently transferred to UC Davis for further neonatal care.

In reviewing the fetal heart rate, the tracing began at 2306 on 4/29/12. The tracing was reactive with occasional variable decelerations. While there were short episodes of moderate variable decelerations and a short time of late decelerations from 0131 to 0142, the tracing essentially remained Category II. At approximately 0443, there appeared more severe variable decelerations and at 0451 the tracing became a Category III. At this time, preparations were being considered for delivery of the patient surgically. The tracing ends at 0502 and no fetal heart tones could be found in the OR. Prior to this point, adequate electronic fetal heart rate information was being obtained with the external fetal heart rate monitor and at no time did the standard of care require replacement with the fetal electrode.

I believe this tragic case demonstrates a sudden, profound sentinel event of fetal compromise and asphyxia. This was a "near death" experience with unfortunate profound consequences for this child. However, the standard of care was met by the physician and nurses providing care to this patient in that they responded rapidly to the appearance of a Category III tracing. While the labor progress was somewhat prolonged, it is not unusual for a patient to decelerate her rate of cervical dilation in advanced labor. The management of this woman's labor was appropriate and within the standard of care. There was no ability to predict the rapid deterioration of this fetal heart rate to a Category III tracing.

Thank you again for this opportunity.

Sincerely yours,

Michael P. Nageotte, MD
Perinatologist