BENJAMIN B. WAGNER
United States Attorney
VICTORIA L. BOESCH
CHI SOO KIM
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900
victoria.boesch@usdoj.gov
chi.soo.kim@usdoj.gov

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I.P., A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM, FACUNDO PALACIO DIAZ; MICAELA PALACIO,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CASE NO. 2:13-CV-01012 JAM-CKD<br><br>**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE PLAINTIFFS' LIFE EXPECTANCY EXPERT AND REPORTS, AND MOTION TO STRIKE THE EXPERT REPORT OF PLAINTIFFS' OB-GYN AND MATERNAL-FETAL MEDICINE SUBMITTED IN SUPPORT OF PLAINTIFFS' OPPOSITION**<br><br>Date: November 19, 2014<br>Time: 9:30 a.m.<br>Judge: Honorable John A. Mendez<br>Crtrm: 6, 14th Floor |
| I.P., A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM, FACUNDO PALACIO DIAZ; MICAELA PALACIO,<br><br>Plaintiffs,<br><br>v.<br><br>BANNER HEALTH, AN ARIZONA CORPORATION, doing business as BANNER LASSEN MEDICAL CENTER; DOES 100-200,<br><br>Defendants. | |

Pursuant to Federal Rules of Civil Procedure 26 and 37, and Federal Rules of Evidence 702 and 403, Defendant United States respectfully submits its reply in support of its motion to exclude Plaintiffs' life expectancy expert, Dr. Carl Nichols, and his reports.

US REPLY ISO ITS MOTION TO EXCLUDE PLS' LIFE EXPECTANCY EXPERT AND REPORTS

## I.   ARGUMENT

The Court should grant the United States' motion to exclude Plaintiffs' life expectancy expert, Dr. Carl Nichols, on three independent grounds, which Plaintiffs fail to rebut in their opposition.[1] Pls. Opp. (Dkt 53).

### A.   Plaintiffs Offer No Reason Justifying Dr. Nichols' Violation Of Rule 26(a)(2)(B)'s Requirement For Detailed And Complete Expert Reports And Therefore Fail To Meet <u>Plaintiffs'</u> Burden Of Proof.

First, Dr. Nichols' insufficient and inadequate reports violate Rule 26(a)(2)(B)'s requirement, triggering Rule 37(c)(1)'s "**automatic**" and "**self-executing**" sanction. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (emphasis added); *see* Fed. R. Civ. P. 37 advisory committee's note (1993). Both of Dr. Nichols' half-page long expert reports do not come close to meeting Rule 26(a)(2)(B)'s requirement for sufficiently detailed and complete expert reports because his reports fail to identify: the "data in the medical literature," what principle or methodology (if any) he used to calculate life expectancy, why that principle or methodology was used, and how that principle or methodology was applied to the facts of this case. *See* Declaration of Chi Soo Kim, Exh. A at 1 (Dkt 41-3 at 2) & Exh. B (Dkt 41-3 at 9).

---

[1] The United States respectfully requests a prompt ruling on the parties' four pending expert-exclusion motions (Dkt. 34, 35, 41, 42) to allow the parties to comply with the December 15 discovery cut-off. Following the September 2014 disclosure of rebuttal reports, the parties worked together to schedule depositions of 32 disclosed experts. In late September, Plaintiffs filed motions to exclude five defense experts, scheduling a hearing before Judge Delaney on October 29, 2014. After those motions were filed, the parties made efforts to schedule the experts subject to those motions following that hearing but before the November 5, 2014 discovery cut-off. In early October, as expert scheduling became difficult, the parties agreed to request a modification of the scheduling order to extend expert discovery until December 15, 2014. Dkt. 39. The Court ordered such modification the next day. Dkt. 40. That same day, the United States filed motions seeking to exclude three of Plaintiffs' experts, setting those motions for hearing before Judge Delaney on October 29, the same date as Plaintiffs' motions. Dkt. 41, 42. On the following day, Judge Delaney vacated the October 29 hearing and ordered the parties to re-notice their expert-exclusion motions before Judge Mendez. Dkt. 43. The parties re-noticed their motions for the first available hearing date, November, 19, 2014. Dkt. 44-47.

Since that time, the parties have worked together to schedule depositions for the eight experts subject to pending motions after the November 19 hearing date but by the December 15 discovery cut-off (Phillips and Manning depositions on December 4 and 12, Dr. Nichols on December 9, and defense damages-expert depositions on November 20, and December 2, 5, and 15). These efforts will allow the parties to complete depositions for any experts that the Court declines to exclude within the time currently allowed for discovery.

Plaintiffs fail to meet their burden to prove that this failure was substantially justified and harmless. *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir 2011). In their opposition, Plaintiffs offer <u>no</u> reason justifying Dr. Nichols' inadequate reports, let alone reasons that could meet their burden to prove that their failure was substantially justified. *See* Pls. Opp.

In addition, Plaintiffs fail to meet their burden to prove that their failure was harmless. *See* Pls. Opp. at 7-8.[2] Here, the United States does not know the planned scope of Dr. Nichols' testimony because his expert reports do not disclose what principle or methodology (if any) he used to calculate life expectancy, why that principle or methodology was used, and how that principle or methodology was applied here. Dr. Nichols' reports also do not sufficiently disclose the data upon which his "calculations" are made. Kim Decl., Exh. A at 1. The deadline for supplemental and rebuttal expert reports has passed, and Defendants have been prejudiced because they were unable to properly evaluate and rebut Dr. Nichols' expert report. Kim Decl., Exh. E at 2-3 (September 1, 2014 report of Steven Day, PhD, United States' life expectancy expert) ("Dr. Nichols provides no further details on how he arrived at this figure of 36.9 years. … Without further details on such possible calculations, my ability to comment further is limited."); Kim Decl., Exh. G (October 6, 2014 Deposition of Steven Day, PhD at 36:9-14) (testifying that Dr. Nichols' rebuttal report "still gives no indication of how he came to his opinion of 36.9 remaining years for [I.P.'s] life expectancy").

Due to these failures, the passed deadline for supplemental and rebuttal expert reports, and the already completed deposition of the United States' life-expectancy expert Dr. Day, the United States does not "have a reasonable opportunity to prepare for effective cross-examination and arrange for

---

[2] Also, the cases upon which Plaintiffs rely do not support Plaintiffs' argument that their failure was harmless and/or are not relevant to this motion. For example, Plaintiffs rely upon *Hawkins v. Graceland*, 210 F.R.D. 210, 211 (W.D. Tenn. 2002) to presumably argue that their error was harmless because it was of "minor importance." Pls. Opp. at 8 (stating that courts examine "whether the undisclosed information was of major or only minor importance" and citing *Hawkins*). *Hawkins*, however, does not support Plaintiffs' argument and is not applicable here because the defendant in *Hawkins* challenging the non-disclosure "has not so much as suggested that plaintiff's failure to identify the physician as an expert has resulted in prejudice." *Hawkins*, 210 F.R.D. at 211. In addition, *Hawkins* primarily addresses whether a written expert report is required for a treating physician and was issued before the 2010 amendments to add Rule 26(a)(2)(C), an issue not relevant to this motion.

expert testimony from other witnesses," one of Rule 26's principal purposes behind requiring detailed, written expert reports. *DeGuzman v. United States*, 2013 WL 3149323, at *2 (E.D. Cal. June 19, 2013); *see* Fed. R. Civ. P. 26(a)(2)(B), advisory committee notes to Rule 26(a)(2), 1993 amendments ("This paragraph imposes an additional duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.").

Further, as described in more detail below, the opportunity to depose Dr. Nichols does not cure or make harmless Plaintiffs' failure and Plaintiffs' argument to the contrary directly conflicts with an express purpose of Rule 26's expert report requirements. Fed. R. Civ. P. 26, advisory committee note, 1993 Amendments.

### B. Dr. Nichols' Testimony Is Not Based On Sufficient Facts or Data And His Reports Offer No Indication Of Whether He Used Reliable Principles Or Methods And Reliably Applied Them To This Case.

Second, the Court should also exclude Dr. Nichols under Rule 702 and *Daubert* because his opinions are not "based on sufficient facts or data"; there is no way to tell if his opinions are "the product of reliable principles and methods"; and there is no way to tell if Dr. Nichols "reliably applied the principles and methods to the facts of th[is] case." Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); US Mot. at 10-12.

Plaintiffs contend that "[t]he argument that Dr. Nichols should have reviewed other medical records, … goes to the weight, if anything, not admissibility of the records [sic][3] themselves." Pls. Opp. at 9. This is incorrect. Rule 702 expressly requires that the expert's "testimony is based on sufficient facts or data." Fed. R. Evid. 702(b). Moreover, Plaintiffs do not attempt to explain their inconsistent positions. On the one hand, they argue that their neurologists' findings "determine the life expectancy," but on the other hand, these very neurologists offer life expectancy opinions that are incompatible with Dr. Nichols' life expectancy opinion. Pls. Opp. at 8; *see* Section II.C below.

In addition, Plaintiffs argue that the single sentence reference in Dr. Nichols' report to "Dr. Shavelle and his group" sufficiently identifies the data upon which Dr. Nichols' opinion is based. Pls.

---

[3] Plaintiffs presumably meant their statement to address the admissibility of Dr. Nichols' expert reports, not the medical records to which this sentence also refers. *See* Pls. Opp. at 9.

US MEMO ISO ITS MOTION TO EXCLUDE PLS' LIFE EXPECTANCY EXPERT AND REPORTS          3

Opp. at 8-9.  The single sentence from Dr. Nichols' report states:  "These calculations are based upon data in the medical literature, especially from Dr. Shavelle and his group."  Kim Decl., Exh. A at 1.  This does not sufficiently identify the data upon which Dr. Nichols' life expectancy opinion is based because 1) "the medical literature" is overly broad and encompasses potentially thousands of possible sources; and 2) there are well over a hundred publications from the Life Expectancy Project of David Strauss, Robert Shavelle, and Jordan Brooks.  *See* Declaration of Steven Day, ¶¶ 3-4.[4]  Plaintiffs also assert, without any support, that data from "the Shavelle Group and the Life Expectancy Project" "is widely available."  Pls. Opp. at 9, 5 (no authority cited for Plaintiffs' assertions).[5]  This is not accurate.  *See* Day Decl.  While publications from the Life Expectancy Project of David Strauss, Robert Shavelle, and Jordan Brooks may be available, the underlying data used by the Life Expectancy Project is not "widely available," let alone public.  Day Decl., ¶ 5.  For example, some of the underlying data used by the Life Expectancy Project is from data collected and maintained by the State of California Department of Developmental Services, for which permission is required to use and access.  *Id*.  The Life Expectancy Project also has various proprietary products, including products that calculate life expectancy, that are also not "widely available" or public.  *Id*.

Plaintiffs concede that Dr. Nichols' report must disclose his methodology, Pls. Opp. at 10 ("which includes disclosure of expert's testing methodology"), but their opposition, like Dr. Nichols' reports, do not actually identify Dr. Nichols' methodology.  Plaintiffs merely state in passing that Dr. Nichols' report "includes reference to the Shavelle methodology."  Pls. Opp. at 10.  This is not accurate.  Nowhere in either of Dr. Nichols' reports does he explain what methodology, if any, that he used to make his calculations—that is, his reports fail to explain <u>how</u> he did his "calculations."  Kim Decl., Exh. A at 1 & Exh. B (Dkt 41-3 at 2, 9).  At most, Dr. Nichols makes indeterminate references

---

[4] The United States' life expectancy expert, Steven Day, PhD, worked as a Consultant and Researcher for the Life Expectancy Project for approximately 15 years from 1996-2011.  Day Decl., ¶ 1.

[5] Plaintiffs also state that "the Shavelle Group and the Life Expectancy Project" is "well known" to "insurance companies with an extensive data base."  Pls. Opp. at 9.  To the extent that Plaintiffs suggest that Dr. Nichols' life expectancy opinion is also based on data retained by insurance companies, such as Dr. Nichols' former employer, American General Life Insurance Company, this data also has not been identified in his expert reports and is not "widely available."

to some of the data upon which his "calculations are based," but he does not identify or describe the methodology he used. Kim Decl., Exh. A at 1. Dr. Nichols' report conclusively states: "These calculations are based upon data in the medical literature, especially from Dr. Shavelle and his group." *Id.* (emphasis added). Dkt 41-3 at 2. The word "methodology" does not even appear in Dr. Nichols' reports. Kim Decl., Exh. A at 1, Exh. B.

Dr. Nichols' failure to explain in his reports what methodology was used and "whether or how he applied" the methodology by itself warrants exclusion. *See Morin v. United States*, 244 F. App'x 142, 143-44 (9th Cir. 2007) (at summary judgment, affirming exclusion under Rule 702 and *Daubert* of plaintiff's causation expert whose "report did not show whether or how he applied" the methodology); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("*Daubert II*") (an expert's failure to "explain the methodology the experts followed to reach their conclusions" does not satisfy *Daubert*); *see id*. at 1316 ("The [Supreme] Court held, however, that federal judges perform a "gatekeeping role," *Daubert*, 509 U.S. at ——, 113 S.Ct. at 2798; to do so they must satisfy themselves that scientific evidence meets a certain standard of reliability before it is admitted. This means that the expert's bald assurance of validity is not enough. Rather, the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology.") (emphasis added).

### C. Dr. Nichols' Testimony Will Not Assist The Trier Of Fact Because It Is Cumulative And Incompatible With Plaintiffs' Other Life Expectancy Opinions.

Third, Plaintiffs do not dispute that Dr. Nichols' life expectancy opinion (36.9 additional years) conflicts with the life expectancy opinions of Plaintiffs' neurological experts Dr. Donald Olson (18-28 additional years) and Dr. Ira Lott (26 additional years). Plaintiffs offer no opposition to the United States' argument that Dr. Nichols's cumulative and contradictory testimony[6] will not help the trier of

---

[6] In its motion, the United States incorrectly stated that Plaintiffs disclosed three (3) life expectancy opinions. *See* US Mot. at 12, 2. Plaintiffs actually disclosed a **fourth** life expectancy opinion that also conflicts with Dr. Nichols' life expectancy opinion. Declaration of Chi Soo Kim, Exh. J (8/22/2014 Rebuttal Report of Luis Montes, MD). To rebut the life expectancy opinions of defense experts, Plaintiffs' pediatric physical medicine and rehabilitation expert, Dr. Luis Montes, opined that "[w]ith proper medical care, it is highly probable for [I.P.] to live until she is approximately 50 years old." Plaintiffs' opposition does not refer to or disclose their fourth life expectancy opinion.

US MEMO ISO ITS MOTION TO EXCLUDE PLS' LIFE EXPECTANCY EXPERT AND REPORTS            5

fact under Federal Rule of Evidence 702 and will confuse the issues, waste time, and needlessly present cumulative evidence under Federal Rule of Evidence 403.  *See* US Mot. at 12-13; Pls. Opp.[7] Plaintiffs offer no reason why they should be permitted to present multiple, inconsistent life expectancy opinions.[8]  *See* Pls. Opp.

### D. Instead Of Meeting Rule 26(a)(2)'s Requirement To Provide A Detailed and Complete Written Report, Plaintiffs Improperly Attempt To Impose Burdens On The United States Not Required Under Rule 37(c)(1) Or Ninth Circuit Law.

Plaintiffs' opposition improperly attempts to shift Plaintiffs' burden, as the party who retained Dr. Nichols, to Defendants by arguing that Defendants must "promptly move[] for more adequate [expert] disclosures" and Defendants can "mitigate[e] any harm resulting from the deficient [expert] report" by taking their expert's deposition.  Pls. Opp. at 7-8; *see also* Pls. Opp. at 8 ("the defendants have not requested a more definitive statement").[9]  This conflicts with the Federal Rules and Ninth Circuit law.

Under Rule 26(a)(2), "a party <u>must</u> disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  Fed. R. Civ. P. 26(a)(2)(A) (emphasis added).  "[T]his disclosure <u>must</u> be accompanied by a written report—prepared and signed by the witness—" and "[t]he report <u>must</u> contain:  (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; …"  Fed. R. Civ. P. 26(a)(2)(B) (emphasis added).  Therefore, as the party

---

[7] Plaintiffs' confusing argument regarding annuities appears to attempt to establish Dr. Nichols' qualification to provide a life expectancy opinion based on his life insurance experience, while also suggesting that Dr. Lott and Dr. Olson may not be qualified to provide life expectancy opinions.  *See* Pls. Opp. at 9.  At this time, the United States does not challenge Dr. Nichols' qualifications, but reserves the right to do so.

[8] Plaintiffs' experts Dr. Lott and Dr. Olson recently confirmed their respective life expectancy opinions in their depositions, and would not agree with longer life expectancy opinions.  *See* Kim Decl., Exh. K (10/23/2014 Deposition of Dr. Ira Lott, p.62-63) (confirming life expectancy opinion of 26 additional years and not agreeing to a degree of medical probability of life expectancy to age 33); Kim Decl., Exh. L (10/27/2014 Deposition of Dr. Donald Olson, p. 113-114) (not agreeing to Dr. Nichols' life expectancy opinion of 36.9 additional years).

[9] Plaintiffs cite to cases that do not support their position and/or are not relevant to the issues at hand.  *See, e.g.,* Pls. Opp. at 7 (citing *Harvey v. Mohammed*, 941 F. Supp. 2d 93, 99-100 (D.D.C. 2013) (excluding treating physician who was not disclosed under Rule 26(a)(2)(C) and where the district court already denied a motion for reconsideration on this issue)).

US MEMO ISO ITS MOTION TO EXCLUDE PLS' LIFE EXPECTANCY EXPERT AND REPORTS        6

who retained Dr. Nichols, Plaintiffs, not Defendants, are <u>required</u> to provide a written report for Dr. Nichols that fulfills the requirements under Rule 26(a)(2).

Under Rule 37(c)(1) and Ninth Circuit law, **Rule 37(c)(1) is "a self-executing, automatic sanction** to provide a strong inducement for disclosure of material." *Yeti by Molly*, 259 F.3d at 1106 (emphasis added); *see* Fed. R. Civ. P. 37 advisory committee's note (1993) ("The revision provides a self-executing sanction for failure to make a disclosure required by Rule 26(a), **without need for a motion** . . ."; the "automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion") (emphasis added). Defendants are expressly <u>not</u> required to bring a motion to enforce Rule 26's expert disclosure requirements because Rule 37(c)(1) is "a self-executing, automatic sanction." *Yeti by Molly*, 259 F.3d at 1106; Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is <u>not allowed</u> to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.") (emphasis added); Fed. R. Civ. P. 37 advisory committee's note (1993) (motion is not required to enforce because Rule 37(c)(1) is "a self-executing sanction").

In addition, the Ninth Circuit and other courts make clear that the opposing party is not required to depose experts and that one purpose of Rule 26's expert report requirements is "to make it *unnecessary to depose experts at all.*" *Schneider v. Strote*, 51 F. App'x 239, 240 (9th Cir. 2002) (emphasis in original); *see also* Fed. R. Civ. P. 26, advisory committee note, 1993 Amendments*; R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010); *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 35 (1st Cir. 2001) ("The purpose of a 'detailed and complete' expert report as contemplated by Rule 26(a), Fed. R. Civ. P. 26 advisory Committee's note, is, in part, to minimize the expense of deposing experts, and to shorten direct examination and prevent an ambush at trial."); *In re Central European Indus. Development Co.*, 427 B.R. 149, 156, 158 (N.D. Cal. 2009) (opposing party is not required to "depose the expert in order to develop what her opinion is or the reasons for it"); *Gregory v. Oliver*, 2002 WL 31972165, *1 (N.D. Ill. Dec. 27, 2002) ("one principal purpose of the detailed content that is prescribed by Rule

US MEMO ISO ITS MOTION TO EXCLUDE PLS' LIFE EXPECTANCY EXPERT AND REPORTS        7

26(a)(2)(B) is to make [deposing the expert] an option for the party receiving the report, not for the party proffering it").

In *Schneider*, the Ninth Circuit was "troubled by the [district] court's suggestion that Schneider's failure to depose [defense expert] Feldman justified denying Schneider's motion to strike" the expert. *Id*. The Ninth Circuit explained that:

> The advisory committee comments to Rule 26 make it clear, however, that the Rule's reporting requirements, coupled with the enforcement provisions of Rule 37(c)(1), were designed in part to make it *unnecessary to depose experts at all*. Fed. R. Civ. P. 26(a)(2)(B) advisory committee comment (1993) ("[I]n many cases the [Rule 26 expert] report may eliminate the need for a deposition.").

*Id.* (emphasis in original).

Even the cases cited by Plaintiffs make clear that Plaintiffs are incorrect. For example, Plaintiffs rely upon *Iacangelo v. Georgetown University*, 272 F.R.D. 233, 234 (D.D.C. 2011) for the proposition that "courts realize that any deficiencies in the report may be remedied when the expert's deposition is taken, mitigating any harm resulting from the deficient report." *See* Pls. Opp. at 7. *Iacangelo*, however, does not support Plaintiffs' proposition. 272 F.R.D. at 234 (excluding supplemental expert report served two years after the deadline). The court actually concluded that "it is not the responsibility of opposing counsel to elicit the disclosures required from experts" through deposition, but the burden of the party who retained the expert to adequately make its expert disclosures. 272 F.R.D. at 234 ("Although the deposition of the expert is usually conducted by opposing counsel, **it is not the responsibility of opposing counsel to elicit the disclosures required from experts; Rule 26 clearly places that burden squarely on the party who has retained the expert**.") (emphasis added).

Further, the United States' motion was timely. Regardless, no federal rule or law requires defendants to move to exclude experts under Rule 37(c)(1) or under Rule 702/ *Daubert* at a set time. Unlike the case cited by Plaintiffs, where the motion was filed one day before the discovery cut-off,[10]

---

[10] Pls. Opp. at 7 (citing *Harvey v. District of Columbia*, 949 F. Supp. 874 (D.D.C. 1996)).

the United States timely filed its motion on October 8th— four weeks before the November 5th expert discovery deadline.

Here, Plaintiffs incorrectly suggest that the United States was required to file its motion to exclude Dr. Nichols before or at the same time Plaintiffs filed their motions to exclude defense experts. *See* Pls. Opp. at 6-7. But no motion is required for Rule 37(c)(1) sanctions and motions to exclude under Rule 702/ *Daubert* are routinely granted at summary judgment and later. *See Morin v. United States*, 244 F. App'x 142, 143-44 (9th Cir. 2007) (at summary judgment, affirming exclusion under Rule 702 and *Daubert* of plaintiff's causation expert whose "report did not show whether or how he applied" the methodology); *Daubert II*, 43 F.3d at 1319 (9th Cir. 1995) (affirming summary judgment and holding that expert testimony was inadmissible based on its unreliable methodology notwithstanding "the impressive qualifications of plaintiffs' experts") ("*Daubert II*").

Finally, Plaintiffs' statement that Dr. Nichols' deposition is "confirmed" for December 9, 2014 is misleading. Pls. Opp. at 8, 6 (emphasis added). Defendants have not agreed to take the deposition of Dr. Nichols, or in any way conceded that a deposition of Dr. Nichols would cure or mitigate Plaintiffs' violation of Rule 26(a)(2)(B) and failure to meet the requirements of Rule of Evidence 702. To meet the December 15 expert discovery cut-off, and due to the logistical and practical difficulty of securing dates and coordinating schedules,[11] the parties agreed to tentatively schedule the depositions of all eight experts subject to Plaintiffs' and the United States' motions to exclude on dates after the November 19 hearing on the parties' motions to exclude, but within the discovery period (up to the December 15). Declaration of Victoria Boesch, ¶ 3 & Exh. 1. The deposition of any expert subject to a motion to exclude will only go forward if the Court denies the motion to exclude as to that expert. Boesch Decl., ¶ 5. Plaintiffs are well aware of these issues given the parties' communications, joint stipulation to extend the expert discovery deadline, and Plaintiffs' initial refusal to schedule the depositions of defense experts subject to Plaintiffs' motions to exclude. *See* Boesch Decl., ¶ 3 & Exh.

---

[11] The scheduling of each of the 32 expert depositions in this case has required coordinating the schedules of four parties: the expert (located in and outside of California), counsel for Plaintiffs (located in Los Angeles), counsel for the United States (located in Sacramento), and counsel for Defendant Banner Hospital (located in Sacramento). Boesch Decl., ¶ 4.

US MEMO ISO ITS MOTION TO EXCLUDE PLS' LIFE EXPECTANCY EXPERT AND REPORTS            9

1; *see* Stipulation and Order Modifying Scheduling Order To Extend Time For Expert Discovery (Dkt 40).

### E. The Court Should Strike The Expert Report Of Plaintiffs' OB-GYN And Maternal-Fetal Medicine Expert Submitted In Support Of Plaintiffs' Opposition Because This Report Is Not Relevant To This Motion And Plaintiffs Do Not Even Refer to This Expert In Their Opposition.

The United States moves to strike the expert report of Plaintiffs' Obstetrics and Gynecology and Maternal-Fetal Medicine expert, Dr. Richard H. Paul, submitted in support of Plaintiffs' opposition to the motion to exclude Dr. Nichols. *See* Declaration of Bruce G. Fagel, ¶ 4 & Exh. C (Dkt 53-1 at 12-20). Dr. Paul's opinions and expert report are not relevant to the United States' motion to exclude Plaintiffs' life expectancy expert, nor do Plaintiffs attempt to establish why the Court should consider Dr. Paul's expert report to decide this underlying motion. *See* US Mot.; Pls. Opp. Plaintiffs' opposition does not even refer to Dr. Paul or cite to Dr. Paul's expert report. *See* Pls. Opp. It is unclear why Plaintiffs submitted Dr. Paul's expert report in support of their opposition. The Court should strike Dr. Paul's report and should not consider it in deciding this motion.

## II.     CONCLUSION

For the foregoing reasons and those presented in the United States' motion, the Court should exclude the testimony and reports of Plaintiffs' life expectancy expert Dr. Carl Nichols.

Respectfully submitted,

Dated:  November 12, 2014

BENJAMIN B. WAGNER
United States Attorney

*/s/ Chi Soo Kim*
CHI SOO KIM
Assistant United States Attorney

Attorneys for Defendant United States