BENJAMIN B. WAGNER
United States Attorney
VICTORIA L. BOESCH
CHI SOO KIM
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA  95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900
victoria.boesch@usdoj.gov
chi.soo.kim@usdoj.gov

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I.P., A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM, FACUNDO PALACIO DIAZ; MICAELA PALACIO,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CASE NO.   2:13-CV-01012 JAM-CKD<br><br>**DECLARATION OF CHI SOO KIM SUPPORTING UNITED STATES' REPLY SUPPORTING MOTION TO EXCLUDE PLAINTIFFS' LIFE EXPECTANCY EXPERT AND REPORTS** |
| I.P., A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM, FACUNDO PALACIO DIAZ; MICAELA PALACIO,<br><br>Plaintiffs,<br><br>vs.<br><br>BANNER HEALTH, AN ARIZONA CORPORATION, doing business as BANNER LASSEN MEDICAL CENTER; DOES 100-200,<br><br>Defendants. | |

I, CHI SOO KIM, declare as follows:

1.   I am an Assistant United States Attorney for the Eastern District of California and have been assigned to represent the United States in *I.P. v. United States*, No. 2:13-CV-01012-JAM-CKD.

DECLARATION OF CHI SOO KIM                                      1

1   2.     Attached as **Exhibit J** is a true and correct copy of the August 22, 2014 Rebuttal
2   Report of Luis Montes, M.D.
3   3.     Attached as **Exhibit K** is a true and correct copy of an excerpt from the transcript
4   of the October 23, 2014 deposition of Ira T. Lott, M.D.
5   4.     Attached as **Exhibit L** is a true and correct copy of an excerpt from the transcript
6   of the October 27, 2014 deposition of Donald Olson, M.D.

Executed at Sacramento, California, on November 12, 2014.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*/s/ Chi Soo Kim*
Chi Soo Kim

DECLARATION OF CHI SOO KIM           2

# EXHIBIT J

# Luis Montes, MD

August 22, 2014

To:   Fagel Law Office
      Ed Ascencio, Esq

Re:   Rebuttal letter to the Life Care Plan presented by Defense expert witnesses on the Isabella Palacio Case

Dear Mr. Ascencio,

I had the opportunity of reviewing following reports regarding the life care needs for Isabella Palacio written by the defense expert witnesses:
  Dr. Kimberly Bedell – July 2, 2014
  Dr Joseph T. Capell – July 8, 2014

I concur with both Dr Bedell's and Dr Capell's description of Isabella's medical problems and their assessment of Isabella's overall disability. Dr. Capell's report outlines Isabella's future medical care on a limited basis, and he states in his report that he will be working with the defense Life Care Planner on the "specifications of equipment, supplies, medications, laboratory studies, attendant care, therapy care and physician visits". Neither report outlines the type or extent of nursing care Isabella will need throughout her life.

In my opinion, Isabella requires LVN level care due to the following justification as mentioned in my Life Care Plan:

> "Isabella is at risk for choking due to severe drooling and chest congestion. She also is at risk for aspiration of oral secretions which can progress to a cardiopulmonary arrest. In addition, she requires G tube feedings day and night and administration of multiple medications and respiratory treatments throughout the day. She is dependent for all mobility, grooming and hygiene and requires total care 24 hours per day".

Both Dr. Bedell and Dr. Capell mention details of the problems outlined in my justification statement and I concur with their assessment (they are merely stating her current medical problems and needs). In Dr. Bedell's report, she describes Isabella as a "medically fragile child who is dependent for all her care".

Both Dr. Bedell and Dr. Capell state that Isabella will have a reduced life expectancy. Dr. Bedell quantifies it by stating "significantly reduced life expectancy". Dr. Capell is more specific and gives Isabella 15 to 20 more years to live. I concur that Isabella will have a shortened lifespan due to her medical complications, however, I do not concur with their lifespan predictions. With proper medical care, it is highly probable for Isabella to live until she is approximately 50 years old.

I have not been provided with a Defense Life Care Plan to evaluate.

Sincerely,

Luis Montes, MD
Chief Pediatric Department
Rancho Los Amigos National Rehabilitation Center

# **EXHIBIT K**

```
                     UNITED STATES DISTRICT COURT

                   EASTERN DISTRICT OF CALIFORNIA



I.P., a minor, by and through her     )
guardian ad litem, FACUNDO PALACIO    )
DIAZ, MICAELA PALACIO, FACUNDO        )
PALACIO DIAZ,                         )
                                      )
                    Plaintiffs,       )
                                      )
    vs.                               ) No. 2:13-CV-01012
                                      )     JAM-CKD c/w
UNITED STATES OF AMERICA,             )     2:13-CV-02013
                                      )     JAM-CKD
                    Defendants.       )
_____)
```

         DEPOSITION OF IRA T. LOTT, M.D., a witness herein,

         noticed by U.S. Department of Justice, taken at

         333 City Boulevard West, Orange, California, at

         10:20 a.m., on Thursday, October 23, 2014, before

         Diane M. Lytle, CSR 8606.


         Hutchings Number 536114

```
 1    11:50      A.  Well, I was asked to come up with a life
 2               expectancy.  So based upon my training, experience, the
 3               literature, I thought that that would be a reasonable,
 4               general figure that could be supported.
 5    11:51      For example, I don't think it would be probable
 6               that she will live another 30 years after age 13, but I
 7               do think it's reasonable that she will live another 15.
 8               Q.  Do you think it's reasonable that she'll live
 9               another 20 years after age 13?
10    11:51      A.  I think it's possible, particularly if in the
11               interim that she has shown further neurological
12               competence; in other words, if her ability to control
13               her motor system has improved.  But since I don't have
14               that information, I'm sticking with the original
15    11:52     prediction.
16               Q.  Okay.
17               So in terms of medical probability, you do not
18               believe that it's more probable than not that she would
19               live an additional 20 years after the age 13?
20    11:52      MR. ASCENCIO:  Objection.  It's vague.  It's
21               ambiguous.  It's overbroad.  It's lacking in foundation.
22               THE WITNESS:  I think --
23               MR. ASCENCIO:  But you can respond.
24               THE WITNESS:  I think the probability is what I've
25    11:52     stated.  When you push it out to 20 years, it's possible
```

```
 1     11:52   but may not be as probable.
 2                     MS. KIM:
 3                Q.   So your opinion remains that what we stated
 4             before on life expectancy, that it is an additional
 5     11:52   26 years to the age 28; is that correct?
 6                A.   Yes.
 7                Q.   Okay.
 8             From her current age?
 9             Right, from her current age?
10     11:52      A.   Yes.
11                Q.   Turning back to your report, on page 1 in the
12             section for Dr. Day.
13                A.   Yes.
14                Q.   Do you plan to testify at trial that
15     11:53   statistical epidemiologists cannot provide a life
16             expectancy opinion?
17                     MR. ASCENCIO:  Objection.  Vague.  It's vague,
18             ambiguous.  It's overbroad --
19                     THE WITNESS:  I think anyone --
20     11:53         MR. ASCENCIO:  -- and it's irrelevant.
21             Go ahead.
22                     THE WITNESS:  I think anyone can provide an
23             opinion.  The question is, what is the grounds for that
24             opinion?
25     11:53   And I think the strongest grounds for an opinion is
```

# EXHIBIT L

```
 1                IN THE UNITED STATES DISTRICT COURT
 2                   EASTERN DISTRICT OF CALIFORNIA
 3     - - - - - - - - - - - - - - - - - - )
 4     I.P., a minor, by and through her   )
 5     guardian ad litem, Facundo Palacio  )
 6     Diaz; Micaela Palacio,              )
 7               Plaintiffs,               )
 8                                         )  CASE NO.
 9     v.                                  )  2:13-CV-01012-JAM-CKD
10                                         )
11     UNITED STATES OF AMERICA,           )
12               Defendant.                )
13     - - - - - - - - - - - - - - - - - - )
14     and related cross action.           )
15     - - - - - - - - - - - - - - - - - - )
16
17           DEPOSITION OF DONALD M. OLSON, M.D.
18                MONDAY, OCTOBER 27, 2014
19
20
21         BEHMKE REPORTING AND VIDEO SERVICES, INC.
22         BY:  JOAN MARIE COLUMBINI, CSR NO. 5435, RPR
23                      160 SPEAR STREET, SUITE 300
24                   SAN FRANCISCO, CALIFORNIA 94105
25                                 (415) 597-5600
```

```
 1
 2
 3
 4
 5
 6
 7
 8
 9         Deposition of DONALD M. OLSON, M.D., taken on
10    behalf of DEFENDANTS, at 160 Spear Street, Suite 160,
11    San Francisco, California, commencing at 1:56 p.m.,
12    MONDAY, OCTOBER 27, 2014, before Joan Marie Columbini,
13    Certified Shorthand Reporter No. 5435, pursuant to
14    NOTICE.
15
16
17
18
19
20
21
22
23
24
25
```

1  you knew of Dr. Lott's involvement in this case.  Do
2  you remember that line of questioning?
3       A.   Yes.
4       Q.   I want you to assume that Dr. Lott has
5  offered a specific opinion on life expectancy.
6  Would you be critical of Dr. Lott or any physician
7  for offering a specific opinion on life expectancy
8  in terms of a specific number of years provided that
9  there are appropriate bases for that opinion?
10      A.   No.  As I think we talked about, I'm much
11 more comfortable citing a range, but I understand
12 that people find it necessary to cite a specific
13 number.  I understand that.
14      MR. ASCENCIO:  Okay.  That's it.
15      MS. KIM:  Nothing further.
16      MR. ASCENCIO:  Do you have anything?
17                FURTHER EXAMINATION
18 BY MR. COUCHOT
19      Q.   Assuming that Dr. Nichols offers an opinion
20 that's different than yours on life expectancy,
21 specifically that she could live 36.9 years, would
22 you be critical of that?
23      MR. ASCENCIO:  That's been asked and answered
24 numerous times, and he's already offered that
25 response to you.

```
 1          THE WITNESS:  I disagree with that.  I don't
 2   know if that's the same as being critical of it.
 3          MR. COUCHOT:  No further questions.  Thank you.
 4          MR. ASCENCIO:  Are we proposing a stipulation
 5   relative --
 6          MS. KIM:  Yes.
 7          MR. ASCENCIO:  -- to this, because we've done it
 8   inconsistently throughout, right?  I think we should
 9   mention that we have been inconsistent as to who
10   gets the original.  Some of the depositions we have
11   stipulated on; others we haven't.  Do you want me to
12   keep the original since this is our retained expert,
13   or do you want the original?
14          MS. KIM:  No, you can have it.  I don't really
15   care.
16          MR. ASCENCIO:  Do you want me to offer a
17   stipulation?
18          MS. KIM:  Yes.
19          MR. ASCENCIO:  Why don't we stipulate to relieve
20   the court reporter of her duties under the code, and
21   relative to the custody of the original deposition
22   transcript and to the signatory requirements that
23   the original be sent to me.  I will then provide a
24   copy to Dr. Olson for his review, and I will be
25   notified of any changes within 60 days of my receipt
```