IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

---oOo---

BEFORE THE HONORABLE JOHN A. MENDEZ, JUDGE

---oOo---

I.P., a minor, by and
through her guardian ad
litem FACUNDO PALACIO
DIAZ; MICAELA PALACIO,
                                    No. 2:13-cv-01012

          Plaintiffs,

vs.

UNITED STATES OF AMERICA,

          Defendant.


AND RELATED ACTIONS

_____/



---oOo---

REPORTER'S TRANSCRIPT

MOTIONS HEARING

WEDNESDAY, NOVEMBER 19, 2014

---oOo---




Reported by:  DIANE J. SHEPARD, CSR 6331, RPR


DIANE J. SHEPARD, OFFICIAL COURT REPORTER, USDC -- (916) 554-7460

```
 1                            APPEARANCES

 2

 3

 4            For the Plaintiff:

 5
                  LAW OFFICES OF BRUCE G. FAGEL & ASSOCIATES
 6                BY:  BRUCE G. FAGEL
                  100 North Crescent Drive, Suite 360
 7                Beverly Hills, California 90210

 8
          For the Defendant, United States of America:
 9
                  OFFICE OF THE UNITED STATES ATTORNEY
10                501 I Street, Suite 10-100
                  Sacramento, California 95814
11                BY:  VICTORIA L. BOESCH
                       CHI SOO KIM
12                     Assistant U.S. Attorneys

13
          For the Defendant, Banner Health:
14
                  SCHUERING ZIMMERMAN & DOYLE, LLP
15                BY:  CHAD COUCHOT
                  400 University Avenue
16                Sacramento, California 95825

17

18

19

20

21

22

23

24

25
```

1                       SACRAMENTO, CALIFORNIA

2                   WEDNESDAY, NOVEMBER 19, 2014

3                            ---oOo---

4            THE CLERK:  Calling civil 13-1012, Palacio versus

5     United States.

6            THE COURT:  Good morning.  Appearances, please.

7            MR. FAGEL:  Bruce Fagel appearing on behalf of the

8     plaintiff.

9            THE COURT:  Mr. Fagel, welcome.

10           MS. BOESCH:  Victoria Boesch on behalf of the United

11    States.

12           MS. KIM:  Chi Soo Kim for the United States.

13           MR. COUCHOT:  Chad Couchot for Banner Health.

14           THE COURT:  I have four motions in front of me.  They

15    are really motions in limine disguised as discovery motions,

16    but I understand why you want decisions now so you can sort of

17    plan out your discovery.  I also understand why Magistrate

18    Delaney sent them up to me because they may affect the

19    scheduling order.

20           The briefs are extensive.  I'll ask a few questions

21    and let you know where this case is going to go with respect to

22    these depositions.

23           My understanding is you have not taken depositions of

24    any of the experts that are involved in these motions, is that

25    correct?

1          MR. FAGEL:  That's correct, Your Honor.  There have

2   been ten depositions of plaintiff's experts taken, and -- one

3   two, three, four, five, six, seven, eight -- nine depositions

4   of the defendants' expert.  So there are currently four

5   plaintiff's experts waiting to be deposed, and I think seven of

6   the defendants' experts.

7          All the depositions have been scheduled and are set

8   within the extended discovery cut-off of December 15th.

9          THE COURT:  Tim Sells, Mark Cohen, Erik Volk, Linda

10   Olzack and Constantine Boukidis have not been deposed, right?

11          MR. FAGEL:  Correct.  Those four have not yet been

12   deposed, but they are scheduled.  I think Boukidis' deposition

13   is scheduled for tomorrow, and the others are for next week.

14          THE COURT:  I don't know how you pronounce his name.

15   It's spelled N-a-g-e-o-t-t-e.

16          MR. FAGEL:  Nageotte.  Dr. Nageotte's deposition is

17   scheduled for December 10th.

18          THE COURT:  Dr. Nichols?

19          MR. FAGEL:  Yes.  Dr. Nichols is scheduled for next

20   week, I believe, or the week after.

21          THE COURT:  And then the last two I think it's

22   Manning and Phillips.

23          MR. FAGEL:  Correct.  And those are also scheduled.

24          THE COURT:  And you started to take the deposition of

25   Dr. Paul, but you didn't --

1              MR. FAGEL:  There is a second volume of his

2      deposition also scheduled.

3              THE COURT:  Let me finish my question.  Because my

4      court reporter is going to cut you off, and it was really

5      directed at Ms. Boesch.  Go ahead.

6              MS. BOESCH:  Thank you, Your Honor.  We noticed and

7      appeared for the deposition of Dr. Paul, and plaintiff's

8      counsel explained that in light of our stated intent to file

9      the motion to exclude Phillips and Manning, they would not

10     allow him to be deposed on issues relating to the standard of

11     care of our doctor.  That further deposition is scheduled, Your

12     Honor.

13             THE COURT:  All right.  The first motion I want to

14     take up is the plaintiff's motion to exclude a number of

15     experts, specifically Ms. Olzack's life care plan, the majority

16     of Mr. Sells' life care plan, Boukidis' economic report, and

17     the Cohen Volk economic report.  It's the motion that's filed

18     at Document 34.

19             In reviewing all of the papers submitted in support,

20     in opposition, declarations, the reports themselves, I don't

21     have any questions.  It's clear to me that these experts are,

22     in fact, rebuttal experts.

23             It's also clear, Mr. Fagel -- and so we are clear --

24     my orders trump these federal discovery rules, and I allowed

25     rebuttal experts to be disclosed.  They were timely disclosed

1    according to my order.  And in reviewing the reports, they

2    clearly are rebuttal reports.  So I'm not going to exclude them

3    on the basis of alleged discovery violations.

4            As to whether they are cumulative, there's seven or

5    two arguments throughout these motions.  We're not taking those

6    up today, folks.  Those are motions down the line.  This is

7    really all about how much discovery you're going to have to do.

8    And we'll have a discussion at the end of my decisions today as

9    to what I expect from the lawyers if this is going to proceed

10   to trial and getting ready for a pretrial conference.

11           But in terms of the motion itself to exclude these

12   experts and/or their reports, the motion is denied in its

13   entirety.

14           The second motion is the plaintiff's motion to

15   exclude Nageotte.  Is that how you pronounce his name?

16           MR. FAGEL:  Nageotte.

17           MS. BOESCH:  Dr. Nageotte.

18           THE COURT:  Again, when I look at this motion, he is

19   rebuttal.  There is an argument that his testimony is

20   cumulative.  At this stage, I'm not going to, again, take up

21   the cumulative arguments.  Those are better saved for motions

22   in limine at the time of the pretrial -- not pretrial

23   conference -- but at the time of trial, or we'll take it up

24   during the pretrial conference.

25           But, again, I don't find the designation of this

1    expert to be improper.  And under the discovery rules, I don't

2    see any basis to, at this point, exclude this witness for

3    discovery purposes.  We may be revisiting this at the time of

4    the pretrial conference, but this is all about discovery at

5    this point.  And so I'm going to deny that motion as well.

6    Save your cumulative argument for a later time.

7            MR. FAGEL:  Our real question, Your Honor, as to

8    Dr. Nageotte, was more of a question as to why he was not

9    designated initially when the initial designations went out.

10           And, similarly, I understand your ruling on the

11   motions as to the two life care plans, but they also had a life

12   care plan that they individually prepared that clearly was not

13   in rebuttal.  Although they had a second report that was in

14   rebuttal, and I understand we're not contesting those reports.

15           So I think the confusion had to do with what were we

16   supposed to exchange at the outset in terms of both the

17   designation of experts and the reports of those experts.

18           And with regard to Dr. Nageotte, since the U.S. had

19   designated Dr. Druzin, who is also a maternal fetal medicine

20   expert, we just didn't understand where the designation, or the

21   need, or purpose, or role of Dr. Nageotte would come beyond the

22   issue of cumulative, which I agree and had spoken to Ms. Boesch

23   about the fact that after we looked at all these motions and

24   were preparing our oppositions, it would appear that these

25   motions were all four better to be in limine motions.  And

8

1       since we had the depositions of all the experts scheduled, we

2       should take these motions off calendar, complete the

3       depositions of all these experts, and then revisit whatever

4       issues we needed to.  She respectfully declined my offer and

5       said, no, the U.S. wants to still go ahead with the motions.

6                   The only concern we have -- and I've taken

7       Dr. Nageotte's deposition many times before.  I know what he's

8       going to say.  I'm not concerned in any way about that.  It's

9       more of a question why wasn't he designated when Dr. Druzin was

10      designated?

11                  THE COURT:  Because he's a rebuttal witness.

12                  MR. FAGEL:  All the defendants' experts are rebuttal.

13                  THE COURT:  In theory they are.  That's true.  But

14      they wanted to see what Dr. Paul said first and then determine

15      if they needed someone to directly -- as I understand it --

16      directly testify as to what Dr. Paul said.

17                  It's only discovery at this point.  Whether he's

18      going to testify or whether his testimony -- at least as I view

19      it, once I'm more up to speed on the specific issues and the

20      proposed witnesses, whether I think it's cumulative or not is a

21      different issue.  But that's not a basis for me to exclude him

22      at this point.

23                  MR. FAGEL:  But Dr. Nageotte would not be rebuttal to

24      Dr. Paul.  He would be rebuttal to Dr. Manning.

25                  And on the morning of Dr. Paul's deposition, the U.S.

1    took off Dr. Manning's deposition.  So that's where this

2    confusion began is why are we trying to nitpick here rather

3    than get the depositions completed, and then we'll know exactly

4    who is saying what, and who is rebuttal to whom, and what's

5    cumulative.

6            THE COURT:  I understand your argument.  I'm still

7    going to deny the motion.

8            Did the United States designate Nageotte?

9            MS. BOESCH:  Yes, Your Honor.

10           THE COURT:  And then Banner Health, do you have a

11   separate rebuttal witness?

12           One of the issues that's going to come up, again

13   probably more at pretrial, is there are obviously -- I don't

14   know if you have different interests or this is a joint

15   defense, but am I going to face a situation where Banner Health

16   is going to have one expert, the United States is going to have

17   a separate expert who basically would say the same thing, or

18   are you guys working together?

19           MS. BOESCH:  Well, Your Honor, Dr. Nageotte was

20   designated on the issue of Dr. Davainis' care.  He's the deemed

21   federal employee here at issue.

22           Banner Health's maternal fetal medicine expert only

23   addresses the care of Banner's nurses.  So their testimony is

24   not cumulative or the same.

25           THE COURT:  All right.  Turning to the defendant's

1      motions -- which Banner Health joined in, correct?

2              MR. COUCHOT:  Yes, Your Honor.

3              THE COURT:  The first motion deals with the

4      plaintiff's expert, Dr. Nichols, who wrote a report on

5      June 25th 2014, which is five paragraphs long, the entire

6      report, and then a rebuttal report dated August 26, 2014.

7      You're seeking to exclude him entirely is my understanding.

8              MS. KIM:  Yes, Your Honor.  That's correct.

9              THE COURT:  Both the initial report and the rebuttal

10     report?

11             MS. KIM:  Right.  And his testimony as well.

12             THE COURT:  Okay.  Mr. Fagel, you argue and try to

13     convince me that this report -- and I use that term in

14     quotes -- that this expert report actually meets the criteria

15     of what's required.

16             And then you raise an interesting argument about,

17     well, the defendants also should have, in effect, been

18     proactive.  They should have moved sooner to bring this issue

19     up.  They can find out more about what his real opinion is by

20     deposing him.

21             In other words -- it's an interesting response.  It's

22     what I call the best defense is a good offense.  None of it,

23     which, frankly, was very persuasive.

24             This report, under any stretch of the imagination,

25     isn't what is expected in this court from experts.  It fails in

1    every way to meet what you or your client is required to

2    provide to the other side.  No amount of trying to

3    re-characterize this report is convincing at all.

4            It's a half-page long expert report that says that

5    his report is based on -- basically he reads two neurologist

6    reports.  He then says this is what I believe life expectancy

7    to be.  And then he has this general statement at the end.

8            But as the Government points out, this report fails

9    to identify -- this is from the reply brief -- it fails to

10   identify, one, the data in the medical literature, what

11   principle or methodology, if any, he used to calculate life

12   expectancy, why that principle or methodology was used, and how

13   that principle or methodology was applied to the facts of the

14   case.

15           It's a conclusory opinion.  I mean, we know what his

16   opinion is, but there is no information as to how he got there.

17   His reference to this Shavelle Group and life expectancy

18   project is not helpful at all, as pointed out by the

19   declaration submitted by the United States in support of the

20   motion and the reply.

21           And, again, it's not the Government or the

22   defendant's responsibility, as a matter of law, to just accept

23   a report like this and then either object to it initially, or

24   sooner, or conduct discovery to find out more.  It's your

25   obligation to get it right in the first place.

1                    Having said all that, if you really believe that this

2       guy is necessary -- and, again, I'm not going to take up the

3       issue of is this simply cumulative testimony as well, but I

4       would have that concern about this expert as well.

5                    I would give you an opportunity to supplement this

6       report.  If you really think you need this guy, then I'm going

7       to give you a chance to do it right.  And so while I'm granting

8       the motion, I'm granting it but not imposing the ultimate

9       sanction, which the United States has asked for.  I'm going to

10      give you an opportunity to see if you can get it right and

11      prepare a proper report.  So you have got 20 days to submit

12      what should be a more detailed.  I'll have to extend discovery

13      deadlines.  I understand that.

14                   MR. FAGEL:  We can do that before his deposition is

15      scheduled.

16                   If I can just give you a brief two-minute context of

17      where Dr. Nichols comes from.  One of the issues in these types

18      of cases involving significant long-term permanent disability

19      injuries to children is life expectancy.

20                   There is a whole lot of studies and data in the

21      literature and so forth regarding life expectancy going back

22      20, 30 years in terms of where -- investigations and tracking

23      individuals, and it's just a lot of data.

24                   Dr. Nichols is in a rather unique position because

25      he's the only one of the life expectancy experts who actually

1        worked in a field where his job was on the line to make these

2        kinds of prognostic predictions in a very real sense.  He

3        worked for 30 years for AIG, one of the largest annuity life

4        insurance companies in the United States.

5                And his job was to provide the predictions for his

6        employer insurance company to basically take the risk,

7        financially, as to how long these children were going to live.

8                So he comes from a much different perspective.  He's

9        not an academic in that sense, but he's in the real world.

10               I will certainly be able to have him supplement his

11       report and show his math, which is really what it comes down

12       to.  He uses a very intricate formula, taking into account

13       these various studies that have been done and prorating them

14       and showing where they come from.

15               But he can show, to the extent that he can, the

16       documentation that is not protected.  Because AIG doesn't

17       release this information to the public.  It's all proprietary

18       information because they put their money on the line.

19               So I can have him supplement his report to show his

20       math, and that's essentially what it's going to do is how he

21       uses these various studies, weights them, and then integrates

22       them to come up with a number, which is basically what he did

23       for 30 years.  And I can certainly do that before his

24       deposition is taken.

25               MS. KIM:  Your Honor, may I have a chance to respond?

1          THE COURT:  No.  You don't need to.

2          I appreciate all that.  We're going to do it the way

3     I want it to be done, which is, if you don't need 20 days, then

4     within the next 10 days submit a report that you believe

5     complies with the discovery rules.

6          Submit it to the Court.  Submit it to the defendants.

7     I will then give the defendants an opportunity to either tell

8     me it seems ok and we'll go forward with the deposition, or,

9     there is still significant problems.  You'll submit that within

10    three days after you get that report.

11         And then I'll issue an order saying either he can't

12    testify, I'll exclude him, the plaintiffs still haven't

13    complied, or I'll tell you go depose him.  That's how this is

14    going to work.

15         MR. FAGEL:  We'll do this by paper.

16         THE COURT:  You submit to me.

17         MR. FAGEL:  That's fine.

18         MS. KIM:  Your Honor, one of the harms that we

19    identified is that the report deadlines have passed, including

20    rebuttal reports.  Because Dr. Nichols, both of his reports

21    provided no information on how he did his methodology, we did

22    not have the opportunity to respond with our life expectancy

23    expert, neither did Banner as well.  So will we get a chance to

24    respond with a rebuttal report, Your Honor?

25         THE COURT:  Well, you already have two life

1    expectancy experts, right, from what I've read?  You've already

2    identified two experts who address the issue of life

3    expectancy.

4             MS. KIM:  Yes, Your Honor.

5             THE COURT:  If you think you need a third expert

6    specifically for purposes of rebutting Dr. Nichols, then let me

7    know that.

8             MS. KIM:  I apologize.  Let me clarify.  I mean a

9    rebuttal report from our already disclosed experts.  So a

10   report from Dr. Day responding to Dr. Nichols' report.

11            THE COURT:  That's fine.  But then Mr. Fagel will

12   have an opportunity to depose -- if he hasn't already -- depose

13   that witness on that issue.

14            MS. KIM:  Your Honor, I realize you're ruling, but

15   just a note here.  It's not just that the report is deficient,

16   but that it also conflicts with their other life expectancy

17   opinion, which plaintiffs have provided three other opinions as

18   well, Your Honor.  And so that does not meet Rule 702s

19   requirements to assist the trier of fact.  It's actually

20   conflicting.

21            THE COURT:  Great issue to take up at the pretrial

22   conference.

23            We're still in the discovery phase.  So let's see

24   what happens at the depositions, and then what you all decide

25   in terms of who you're actually going to use at trial.

1              I understand that.  I'm not precluding you from

2        raising that again at a later point.  It's just not appropriate

3        at this point.

4              MS. KIM:  Thank you, Your Honor.

5              THE COURT:  And then the final motion deals with

6        Manning and Phillips.

7              Again, Mr. Fagel, I just shake my head.  Everything

8        the United States argues with respect to these reports is

9        spot-on accurate.  And you don't even dispute the fact -- and I

10       don't think you can -- that either you or another lawyer

11       prepared these and just had the experts sign them.  I know you

12       tried to distinguish them, but, again, it just didn't pass the

13       smell test.

14             So on Phillips and Manning -- and you also have

15       Dr. Paul as well.  You choose.  You choose which one you're

16       going to use, but I am going to grant the motion to the extent

17       that you can't use both of them.  They are identical.

18             So you need to either tell me today or let the

19       defendants know which one of these two you anticipate using at

20       trial, but both of them aren't going to testify.

21             MR. FAGEL:  It will be Dr. Manning.

22             THE COURT:  So the motion to exclude Dr. Phillips is

23       granted.  The motion will be denied in all other respects.

24             When is the trial date?

25             MS. BOESCH:  May 11th, Your Honor.

1              THE COURT:  When is the pretrial?

2              THE CLERK:  March 13th.

3              THE COURT:  If you do not get the depositions done --

4      again, part of this, too, is I don't know if I should

5      anticipate a motion for summary judgment or not.  You don't

6      have to tell me today.

7              But if you need to move that scheduling order a

8      little, just stipulate or let me know, and I'll adjust it so

9      you can finish your discovery.

10             When are dispositive motions due, Mr. Vine?

11             MR. FAGEL:  We'll be finished with discovery by

12     December 15th, Your Honor.  There are no other depositions

13     scheduled other than the experts.  We have a schedule for all

14     of the experts, including Dr. Manning and Dr. Nichols, set

15     before December 15th.

16             We'll comply with the Court's order regarding a

17     subsequent report for Dr. Nichols, and we will do it as quickly

18     as possible so the U.S. will have an opportunity to respond,

19     and Your Honor can make a decision before Dr. Nichols'

20     deposition is taken since it is out of state.

21             THE COURT:  As quick as possible means within the

22     next 10 days.

23             MR. FAGEL:  Okay.

24             THE COURT:  I don't use words like "as quickly as

25     possible."  It's within the next ten days.

1              MR. FAGEL:  Once those depositions are all completed,

2    based on my discussions with at least the U.S. attorney, I will

3    tell you that we initially had a private mediation scheduled in

4    this case --

5              THE COURT:  That was my next question.

6              MR. FAGEL:  -- to take place.  It was scheduled,

7    actually, right after we did the supplemental designation of

8    experts.  We had all the reports.  The U.S. had all of our

9    information, all our damages reports and everything.

10             It was scheduled for a Tuesday.  I believe on the

11   Friday before the Tuesday I got a call from the U.S. attorney

12   or a letter saying they weren't prepared, and so the mediation

13   was cancelled.  It has been reset for February.  I don't have

14   the exact date.

15             MS. BOESCH:  February 17th.

16             MR. FAGEL:  February 17th.  So that is before any

17   further hearings or settings in this court, so I think we'll

18   know by February 17th if we're going to need your services or

19   not.

20             THE COURT:  Okay.  You won't have my services, but

21   we'll send you to a magistrate judge.  If you want a settlement

22   conference, we'll get one for you.  Anything further?

23             MR. FAGEL:  Are you saying you won't be the judge?

24             THE COURT:  I won't be the settlement judge.

25             MR. FAGEL:  No, no.  I'm talking about trial, though.

1                    THE COURT:  If you want a settlement conference in

2       front of a judge --

3                    MR. FAGEL:  If we can't resolve the case at a private

4       mediation, I don't think -- that's been my experience.  Private

5       mediations have a high probability of settlement for these

6       types of medical malpractice cases.  We're all dealing with the

7       same experts.  We know what the issues are.  Banner Health is

8       familiar with the situation.  I've not dealt with the U.S. on

9       this kind of issue before in this district.  I have in other

10      districts.  So I'm familiar with the process.

11                   THE COURT:  Anything further?

12                   MS. BOESCH:  No, Your Honor.

13                   THE COURT:  Thank you.  We'll hear from you soon, I'm

14      sure.

15                   MS. BOESCH:  Thank you.

16                   MR. FAGEL:  Thank you, Your Honor.

17                   (End of transcript.)

18                              CERTIFICATION

19           I, Diane J. Shepard, certify that the foregoing is a

20      correct transcript from the record of proceedings in the

21      above-entitled matter.

22

23

24                              /s/ DIANE J. SHEPARD
                                DIANE J. SHEPARD, CSR #6331, RPR
25                              Official Court Reporter
                                United States District Court