Bruce G. Fagel, (103674)
Eduardo J. Ascencio (182061)
Law Offices of Bruce G. Fagel And Associates
100 North Crescent Drive, Suite 360
Beverly Hills, California 90210
Tel: (310) 281-8700
Fax: (310) 281-5656

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I.P., A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM, FACUNDO PALACIO DIAZ, MICAELA PALACIO,<br><br>   Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>   Defendant. | Case No. 2:13-CV-01012 JAM-CKD<br><br>PLAINTIFFS' MOTION IN LIMINE No. 2 TO EXCLUDE EVIDENCE OF COLLATERAL SOURCE PAYMENTS FROM MEDI-CAL, ACA, AND OTHER GOVERNMENTAL ASSISTANCE PROGRAMS<br><br>Courtroom 6, 14th floor<br>Judge: Hon. John A. Mendez<br><br>Trial: May 26, 2015 |
| I.P, A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM, FAGUNDO PALACIO DIAZ, MICAELA PALACIO, FACUNDO PALACIO DIAZ,<br><br>   Plaintiffs,<br><br>v.<br><br>BANNER HEALTH, AN ARIZONA CORPORATION, DOING BUSINESS AS BANNER LASSEN MEDICAL CENTER, DOES 1-250, INCLUSIVE,<br><br>   Defendants. | |

Plaintiffs I.P, a Minor, Facundo Palacio Diaz and Micaela Palacio ("Plaintiffs"), respectfully move the Court, in their in limine motion No. 2, for an order excluding from evidence:

A. Collateral Sources of medical benefits or payments to medical providers for the minor Plaintiff, or other Plaintiffs, which are not included in the *Civil Code* §3333.1 exceptions, including Medi-Cal payments, California Children's Services ("CCS"), the Regional Center and In-Home Support Services ("IHSS") and The Patient Protection and Affordable Care Act ("Act") "the ACA" or "ObamaCare"), or that any of these collateral sources may be an available collateral source to pay for any of Plaintiff's future medical damage.

The motion will be made on the following grounds:

## I. INTRODUCTION

Plaintiff anticipate that Defendants will attempt to inject Medi-Cal, the ACA or other collateral sources of care of into this trial and suggest that, under Medi-Cal or the ACA, Plaintiff will have "insurance" coverage that will cover all or most of Plaintiff's future medical needs. Any such reference should be excluded on numerous grounds, including the following:

•The language in *Civil Code* §3333.1(a) only applies to benefits received up to the time of trial. The section does not permit the introduction of future medical benefits to be provided ("where the defendant elects to introduce <u>such</u> evidence"), as it would contradict the plaintiff's right to then "introduce evidence of any amount which the plaintiff <u>has paid or contributed</u> to secure his right to any insurance benefits concerning which the defendant has introduced evidence."

The Legislature's use of the past tense ("has paid or contributed") indicates that what the Defendant may introduce ("amount payable as a benefit to plaintiff") refers only to amounts already paid to Plaintiff as of the time of trial. The symmetry of the statute is wholly destroyed if Defendants can submit a lifetime of potential collateral benefits, offset only by past contributions by Plaintiff.

• Civil Code §3333.1(a) is a rule of evidence only. It does <u>not</u> mandate that the plaintiff's damages be reduced by the collateral source benefits. It is up to the jury to decide what to do with the collateral source. *Barme vs. Wood* (1984) 37 Cal.3d

174,179. *Hernandez vs. California Hospital Medical Center* (2000) 78 Cal.App.4th 498,506.

- It is reversible error (in a jury trial) to allow the mention of any collateral source. The only exceptions to this rule are the limited collateral sources specifically allowed under *Civil Code* §3333.1(a), and not precluded under §3333.1(b).
- Medi-Cal is not a collateral source contemplated by *Civil Code* §3333.1. Accordingly, the common law collateral source rule applies and Medi-Cal's priority lien is thus preserved even in medical negligence cases.

Thus, a plaintiff may claim damages items covered by Medi-Cal benefits, and the health care provider defendant cannot introduce evidence of Medi-Cal payments received. *Brown v. Stewart* (1982) 129 Cal.App.3d 331.

- Medical Benefits provided by California Childrens' Services, IHSS and the Regional Center require repayment from any recovery by a plaintiff and they have a lien on any recovery and are likewise excluded as a covered benefit under *Civil Code* §3333.1 by *Brown*, supra.
- Defendant will not be able to satisfy its burden of proving that the ACA falls within the limited abrogation of the collateral source rule.
- All future care sources are beyond MICRA's limited abrogation of the collateral source rule, including any possible future coverage under an ACA policy.
- Any attempt to use the ACA or Medi-Cal as a collateral source constitutes a request for the court to engage in speculation in numerous areas, including:
  - Whether or not insurance actually will be available to *this* Plaintiff;
  - Assuming insurance is available, whether it would be funded by a MICRA-qualifying collateral source;
  - Assuming insurance is available from a MICRA-qualifying collateral source, whether the specific care needed by Plaintiff will be covered by that insurance; and
  - The amount of Plaintiff's statutorily-allowed offset against the collateral

Law Offices
of
Bruce G. Fagel
&
Associates

source.

• Allowing mention or evidence of the ACA would be unfair to Plaintiff for numerous reasons, including:

> • Requiring ACA insurance would preclude choice and availability of benefits to the point of sacrificing higher quality or necessary care;
>
> • There is absolutely no control of insurance costs under the statute, and those costs could change dramatically upwards while Plaintiff's recovery remains the same, yet Plaintiff would be required to continue to purchase the coverage under the ACA to receive any of the needed care;
>
> • Any required purchase of an ACA policy could result in Plaintiff needing to spend all her money on inadequate coverage, but being without even those funds because the policy source would be placing a lien on Plaintiff's already artificially-limited award;
>
> • No one would rationally buy insurance to cover only some items through coverage that likely is of lesser quality, more sporadic, and with less choice instead of having a wrongdoer pay the costs necessary to actually make them whole. Placing a plaintiff in this position by allowing the ACA to be presented cannot reasonably be considered mitigation of damages.

## II. MICRA PROVIDES ONLY A LIMITED EXCEPTION TO THE COLLATERAL SOURCE RULE; IT IS REVERSIBLE ERROR TO MENTION COLLATERAL SOURCES OUTSIDE THAT LIMITED EXCEPTION

A.  MICRA's Exception to the Collateral Source Rule Is Limited.

MICRA does not make all collateral sources admissible in medical malpractice actions. *Civil Code* §3333.1, the relevant provision of MICRA, provides a limited exception to the collateral source rule, abrogating the rule only for certain types of payments in the context of certain actions against certain health care providers. "[I]n enacting the statute, the Legislature did not totally abrogate the collateral source rule. The Legislature was precise in delineating the collateral sources included in this

exception to the collateral source rule." (*Adams v. Murakami*, 228 Cal. App. 3d 885, (1990), rev'd on other grounds 54 Cal.3d 105 (1991).)

Section 3333.1 provides:

(a) [I]n an action for personal injuries against a health care provider based upon professional evidence he may introduce evidence of any amount payable as a benefit to the plaintiff as a result of the personal injury pursuant to . . . any health, sickness or income disability insurance . . . that provides health benefits, or income-disability coverage, and any contract or agreement of any group, organization, partnership, or corporation to provide, pay for or reimburse the costs of medical, hospital, dental or other medical services . . . Where the defendant elects to introduce such evidence, the plaintiff may introduce evidence of any amount which the plaintiff has paid or contributed to secure his right to any insurance benefits concerning which the defendant has introduced evidence.

(b) No source of collateral benefits introduced pursuant to subdivision (a) shall recover any amount against the plaintiff nor shall it be subrogated to the rights of the plaintiff against the defendant.

### B. It Is Reversible Error to Offer Evidence of Collateral Sources Not Within the Statutory Exception Provided in *Civil Code* §3333.1.

It is reversible error in a jury trial to admit evidence of collateral sources that are not within this limited exception. This error is not applicable to this trial by the Court. It is mentioned only to show the importance of the collateral source exclusionary rule as placed on it by the California courts.

This reversible error cannot be avoided by an instruction limiting the use of the evidence. *Hrnjak v. Graymar, Inc.* (1971) 4 Cal.3d 725, 729, 734. As explained herein, the ACA is not a collateral source within MICRA's limited exception to the collateral source rule. Therefore, to allow evidence or reference of the ACA or MEDI-CAL would constitute reversible error.

//

## III. THE BURDEN OF PROOF IS ON DEFENDANTS TO SHOW THAT THE ACA IS A COLLATERAL SOURCE WITHIN MICRA'S LIMITED ABROGATION OF THE COLLATERAL SOURCE RULE; DEFENDANT WILL NOT BE ABLE TO MEET THIS BURDEN

### A. MICRA Is an Affirmative Defense.

California law is clear that MICRA is an affirmative defense. The Court and defendants in *Pressler v. Irvine Drugs Inc.* (1985) 169 Cal.App.3d 1244, recognized this to be true. [And Defendant herein raised MICRA for the first time in its Answer as Affirmative Defense No. 16.]

"Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief *or defense* that he is asserting." (Evidence Code §500.) [Emphasis added.] As Witkin explains, "[Evidence Code section 500] is an expanded version of the basic rule that the burden of proof follows the burden of pleading." (Witkin, California Evidence, Burden of Proof (4th ed. 2000) §6.) Similarly, in a Federal action, the defendant has the burden to establish the essential elements of the affirmative defenses raised in defendant's pleadings. *FTC v. National Business Consultants, Inc.* (5th Cir. 2004) 376 F.3d 317 322.

Defendant, therefore, bears the burden of proving that any collateral source is within MICRA's limited abrogation before it mentions that collateral source. This statement holds true for any mention of the ACA or Medi-Cal or any of the collateral sources of care or benefits from State or Federal programs.

### B. Defendant Will Be Unable To Meet Its Burden of Showing That the ACA Is a MICRA-Qualifying Collateral Source.

To qualify as an exception to the collateral source rule, the funding source has to be within *Civil Code* §3333.1(a). Here, it is highly likely that the minor Plaintiff, who is irreversibly brain-injured, will not be supplied insurance under the ACA through any prospective employer simply because she will not be able to work. If the Court follows

the ACA's dictates, therefore, the source of funds for the purchase of any ACA policy is highly likely to be government funds including general funds, Medicare funds, or Medi Cal funds.

Thus, the ACA falls beyond the ambit of MICRA (and therefore its mention and admissibility is precluded) for numerous reasons, including lien repayment. These are set forth in *Brown v. Stewart* (1982) 129 Cal.App.3d 331, which has been the uncontroverted law controlling MICRA-qualifying collateral sources nearly since MICRA's inception.

If the funding source for the ACA is Medi-Cal, Medicare, or sources that draw from them, *Brown* excludes them from MICRA for all the following reasons: (1) the payments would be made to the provider rather than to the Plaintiff, which is beyond the MICRA exception; (2) ACA coverage would amount to an entitlement program, which the *Brown* Court found that the Legislature intended to exclude from MICRA; (3) absent a direct public benefit, allowing evidence of such public sources would constitute an impermissible gift of public funds, as "bail[ing] out doctors and other health care providers . . . in the absence of a direct public benefit, could be viewed as an impressible gift of public funds" in violation of the California Constitution; (4) treating Medi-Cal payments or any payments that permit some recovery by a federal source as admissible collateral sources under §3333.1 would violate principles of federal supremacy, and "[w]e cannot presume the Legislature intended to enact a provision in violation of federal supremacy principles;" and (5) the legislative history of §3333.1 reveals an intent to exclude such sources. (*Brown,* supra, 129 Cal.App.3d at 337-38, 341-42). Any other government-funded source is likely excluded under reasons (3)-(5), above.

There is a second reason for the preclusion of ACA policies that are government-funded. *Civil Code* §3333.1(b) bars collateral sources from seeking reimbursement of funds from either the patient or the tortfeasor. Section 3333.1(b) states that "no source of collateral benefits [from the limited abrogation under]

Law Offices of Bruce G. Fagel & Associates

subdivision (a) shall recovery any amount against the plaintiff." The Legislature is presumed to know sources to which it granted recovery rights and thereby excluded them from MICRA's limited collateral source exceptions.

Both the Medi-Cal and Medicare statutes specifically require states to seek reimbursement from payments by third-party tortfeasors, such as Defendant, as do most other government sources. If funding from any of these government sources with reimbursement rights are used to purchase insurance for Plaintiff under the ACA, and if those payments were treated as admissible collateral sources under Civil Code §3333.1, then §3333.1(a) would conflict with §3333.1(b). (See *Hernandez v. California Hospital Med. Ctr.*, 78 Cal.App.4th 498 (treating Medi-Cal payments as a collateral source "would create a direct conflict with statutory recoupment sections").)

Moreover, it is likely that the private ACA policies themselves also have subrogation and/or lien rights, excluding them under §3333.1(b). Medi-Cal and Medicare require reimbursement from the plaintiff for any sums expended for medical care where there is a third party tortfeasor involved, such as in this case. The ACA plan would likely have similar reimbursement provisions. If a federal right of reimbursement exists with respect to collateral sources, then under federal supremacy principles, MICRA provisions as to admissibility, as to such collateral sources will have to yield. *Barme vs. Wood* (1984) 37 Cal.3d 174, holding subdivision (b) of Civil Code § 3333.1 is preempted.

The plaintiff would suffer a double reduction if the court reduced its award because of the collateral source benefits, yet the collateral source was allowed to obtain reimbursement of those benefits from the plaintiff's's tort recovery. See *Fein vs. Permanente Medical Group* (1985) 38 Cal.3d 137, 165, stating stated that one purpose of subdivision (b) of Civil Code §3333.1 is to prevent such a double reduction.

In Home Support Services ("IHSS") are not admissible in a medical malpractice action, nor are they even included in *Civil Code* section 3333.1.

//

### C. IHSS is Not Included in Section 3333.1

In Home Support Services (IHSS) enable disabled people to stay at home and avoid institutionalization with proper supportive services (*Marshall vs. McMahon* (1993) 17 Cal.App 4th 1841, 1844). IHSS falls under the Social Security Act. *County of Sacramento vs. State of Calif* (1982) 134 Cal.App. 3d 428, 430-431

*Brown vs. Stewart*, supra, held that *Civil Code* §3333.1 applies <u>only</u> to those Social Security programs that pay money directly to the plaintiff. Because the federal money for IHSS benefits is paid to the State of California (*County of Sacramento*, supra at p. 431), Section 3333.1 does not apply to IHSS benefits and must be excluded.

IHSS is a federal program that funds the State of California for its In Home Support Service program, just like federal monies under Medic-Aid are paid to the State of California for medical services and are termed "Medi-Cal". These federal funding bills all contain provisions that require recoupment by the State of California from a plaintiff who recovers any such sums from 3rd party tortfeasors, such as the defendants in this case.

Moreover, IHSS benefits are not sums "payable" to the plaintiff, as required by Brown v. Stewart (1982), 129 Cal.App.3d 331, in order to be admissible under Civil Code §3333.1 in a medical malpractice case.

### D: CCS and Regional Center and In-Home Support Services Are Collateral Sources Not Directly Payable to The Plaintiff And These Entities Have A Right of Reimbursement

As *Brown, supra,* stated, Medi-Cal Payments are not sums payable directly to the Plaintiff. Likewise, CCS services are not sums payable directly to the plaintiff. Also, Regional Center services are not sums payable directly to the plaintiff and they are all excluded from Civil Code Section 3333.1 by the decision in *Brown vs. Stewart* (1982) 129 Cal.App.3d 331, 336-338.

Also, a state department or county agency that furnished treatment services under the <u>California Children's Services Program</u> *(Health & Safety Code* § 123800 et

Law Offices of Bruce G. Fagel & Associates

seq.), has a subrogation right against any judgment, award or settlement relating to the medical condition for which the services were furnished. The subrogation right also extends to services to be furnished. *H & S Code* § 123982; Cf. *Tapia v. Pohlmann* (1998) 68 Cal.App.4th 1126, 1130-1134, holding that the Court's general power under Probate Code § 3601 to determine reasonable expenses to be paid out of minor's settlement does not empower court to reduce a *Health & Safety Code* §123982 lien amount. CCS also requires repayment and has a lien on the judgment. *See Health & Safety Code* §123982. Under the *Brown* analysis, it too is not an exception to the collateral source rule under *Civil Code section* 3333.1.

### IV. THE TERMS OF §3333.1(a) AND ITS LEGISLATIVE HISTORY PROVE THAT FUTURE BENEFITS WERE INTENDED TO BE BEYOND MICRA'S ABROGATION OF THE COLLATERAL SOURCE RULE

The legislative intent was to exclude future collateral source payments from the limited exception to the collateral source rule it carved out in medical malpractice cases. This can be seen in: (1) the rejected bills that would have made admissible evidence of future collateral source payments, (2) the specific discussion of the provision that would have allowed offsets based on the possibility that the injured party's insurer may in the future pay for the medical expenses, and (3) the enacted statute that does not include language "or will be provided by a collateral source" and only allows defendants to introduce evidence of amounts a plaintiff "has paid or contributed" to secure benefits (Civil Code §3333.1(a)).

 A. MICRA's Limited Exception to the Collateral Source Rule is Restricted, By Its Terms, to Benefits Received as of the Time of Trial.

As explained above, *Civil Code* §3333.1 does not make all collateral sources admissible in medical malpractice actions. The plain language of *Civil Code* §3333.1 strongly suggests that future collateral sources are beyond MICRA's limited exception to the collateral source rule.

Section 3333.1(a) states, in relevant part: "[T]he defendant may introduce

evidence of any amount payable as a benefit to the plaintiff . . . . [T]he plaintiff may introduce evidence of any amount which the plaintiff <u>has paid or contributed</u> to secure his right to any insurance benefits." (Emphasis added.)

The question is whether the term "amount payable" refers to any amounts that will ever be payable or only to amounts *already paid* at the time of trial.

The Legislature's use of the past tense ("has paid or contributed") indicates that what the Defendant may introduce ("amount payable as a benefit to plaintiff") refers only to amounts *already paid* to Plaintiff as of the time of trial. The language suggests a "tit-for-tat" notion—defendants can offer this, and plaintiffs can offer that. This symmetry is wholly destroyed if Defendants can submit a lifetime of collateral benefits offset only by past Plaintiff contributions.

That this is the proper interpretation is dictated by the basic principles of statutory construction. If the limited exception to the collateral source rule was interpreted to include evidence of future collateral source payments, the plaintiff's contribution would be rendered meaningless as to future damages. Plaintiffs, of course, never could introduce evidence of amounts they "have paid or contributed" in the future because those plaintiffs will not have secured those future benefits as of the time of trial. "Well-established canons of statutory construction preclude a construction which renders a part of a statute meaningless or inoperative." (*Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, 274) And courts are to adopt a statutory interpretation that harmonizes provisions rather than reducing portions of statutory language to mere surplusage. (*People v Knight* (2004) 121 Cal.App.4th 1568, 1575-56.)

    B.  The Legislative History Proves That the Legislature Intended to Restrict MICRA's Collateral Source Abrogation to Past Collateral Source Benefits.

The legislative history of *Civil Code* §3333.1 demonstrates that the above interpretation of MICRA's language is correct. The Legislature rejected all bills that

would have allowed evidence of future collateral sources to be admitted. Bill Digests prove that future collateral source benefits were specifically considered, but knowingly and intentionally excluded from MICRA's limited exception to the collateral source rule.

       1.    All Bills Allowing the Introduction of Evidence of Future Collateral Source Benefits Were Rejected.

Prior to the enactment of MICRA on September 23, 1975, the Assembly Committee on Judiciary addressed numerous times the limited abrogation. Notably, the Committee addressed whether a defendant or his insurer could claim a future collateral source on the mere possibility that the source might in the future pay his medical expenses.

The Legislature considered <u>seven</u> bills addressing this subject. The first six bills all failed. They had one thing in common that was not present in AB 1, the bill that ultimately passed–a provision that would have allowed healthcare provider defendants to introduce evidence of possible future collateral sources.

The identical language in each of the failed bills was as follows:

> The purpose of this section is to eliminate duplicate payment or recovery for the cost of medical care in actions for personal injuries against health care providers or health care institutions when such care has already been *or will be provided by a collateral source*. (Emphasis added.)
>
> The "or will be" was removed from the final version, and the more restrictive language was what the Legislature enacted.

       2.    Bill Digests Further Clarify That the Legislature Knowingly and Intentionally Rejected Future Collateral Sources.

Additional evidence that the Legislature did not intend to allow evidence of future private collateral sources is contained in two Bill Digests. In both the May 15, 1975, and June 10, 1975, Bill Digests, a question was raised whether the collateral source rule should extend to evidence of future collateral sources to pay for the plaintiff's medical care:

The bill provides that its purpose is to prevent double recovery for the cost of medical care against health care providers "when such care has already been <u>or will be</u> provided by a collateral source." Does this language mean that the defendant or his insurer could claim an offset on the mere possibility that the injured party's own insurer will in the future pay his medical expenses. [sic] This provision of the bill should be clarified. Wouldn't it be preferable to permit an offset <u>only when the plaintiff has actually received payment from his own insurer</u>? (First emphasis in original; second emphasis added.)

## V. WHETHER THE NECESSARY COVERAGE WILL BE AVAILABLE UNDER THE ACA IS SHEER SPECULATION INSUFFICIENT TO SUPPORT DEFENDANT'S AFFIRMATIVE DEFENSE

### A. Speculation and Conjecture Cannot Support an Affirmative Defense.

It is axiomatic that "factors which are speculative, remote or conjectural . . . ha[ve] no evidentiary value . . . ." (*Pacific Gas & Elec. Co. v. Zuckerman* (1987) 189 Cal.App.3d 1113, 1134.) Specifically, the jury "must not speculate or guess in awarding damages." (*CACI* 3900; see also, e.g., *Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 989.) Thus, speculation or conjecture cannot meet the burden of proof necessary to support Defendants' affirmative defense limiting damages.

Defendants' anticipated statement that the ACA definitely will provide insurance for the minor Plaintiff's injuries is nothing more than speculation. It must be precluded.

### B. It Is Speculation Whether Plaintiff Will Have Insurance At All.

Under the ACA, there is no guarantee, or even high likelihood, that Plaintiff will have insurance coverage at all. Given Plaintiff's condition, it is unlikely she will be able to work at all, much less do so consistently enough to reliably be covered by insurance at all times.

There also is strong doubt as to whether "ObamaCare" will continue to exist at all, much less in a form that would provide insurance to Plaintiff. Anyone who follows today's politics is aware that there are strong forces that have the ACA's demise as a high-ranking priority. (See, e.g., CBS News, "Obamacare Reform Tops House GOP's Post-Holiday Agenda," (Jan. 3, 2014). Also, as above, assuming any ACA insurance is

available to this Plaintiff, it is total speculation as to the source of those funds and whether those funds come from a source excluded under MICRA.

### C. Assuming That Plaintiff Obtained ACA Insurance Funded by a Covered Collateral Source, It Is Total Speculation as to Whether the Needed Care Will Be Covered.

Even today, ACA policies are generally severely limited, and it is unlikely that the policies under the ACA will continue to cover the items they presently cover. ACA policies are required only to include "ten essential health benefits." There are many restrictions, limitations, and exclusions on these ten essential health benefits. And those "essential benefits" often do not include much of the care that Plaintiff requires from this injury, and rarely include the "big ticket" items such as skilled nursing care. To the extent the minor Plaintiff's needs are covered, there is little reason to believe these items will continue to be covered. Additionally, which actual providers will be available under the ACA also is complete conjecture. We do know that the networks available under ACA policies already are limited, and that the better places and providers are opting out. Several of the leading hospitals in California and across the United States already have refused to participate in Obamacare plans. (See, e.g., U.S. News & World Report, "Top Hospitals Opt Out of Obamacare," (Oct. 30, 2013). Similarly, numerous doctors and providers already refuse to accept patients with Obamacare plans. (See, e.g., Los Angeles Times, "Obamacare Enrollees Hit Snags at Doctor's Offices," (Feb. 4, 2014).

Particularly problematic, as these articles point out, and adding to the conjecture, is that these limitations were entirely unknown when consumers were enrolling in these plans.

Because the possibility of coverage of each future item is speculative, the Court would need to conduct a trial on a line-by-line basis as to whether each potential item would be covered at all, and if so, to what extent. This would lead to undue consumption of judicial time and resources. Because debating each item would be so

Law Offices
of
Bruce G. Fagel
&
Associates

burdensome and mostly conjectural, all such evidence should be excluded under FRE 403.

Finally, allowing ACA evidence would turn major legal doctrines on their heads. First, the entire underlying premise of the collateral source rule is that, if there is to be a windfall, that should go to the wronged victim and not to the tortfeasor. See *Helfend v. Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 11.

As shown above, allowing Defendant to introduce the ACA will result in a direct windfall to Defendant and do so at an improper cost to Plaintiff. This improper cost directly contravenes what was intended by the mitigation of damages doctrine (which Plaintiff anticipates Defendant will raise as justification for bringing up the ACA). "The rule of mitigation of damages has no application where its effect would be to require the innocent party to sacrifice and surrender important and valuable rights." (*Valle de Oro Bank v. Gamboa* (1994) 44 Cal.App.2d 332, 346 (internal citations omitted).) If a plaintiff is presented with more than one care option after an injury, the rule of mitigation only requires him to make a reasonable choice, and not merely the one that saves a defendant the most money. (See *Green v. Smith* (1968) 261 Cal.App.392, 396-97.)

Forcing an ACA policy on Plaintiff, would limit Plaintiff's care to second-level providers and the limited benefits under the particular policy. This evidence would assume that Plaintiff would not choose a higher level, or more suitable, and specialized care which are choices that would be completely unreasonable. A reduction in plaintiff's recovery would effectively shift the benefit to defendant and might discourage third persons from helping injured plaintiffs. *Arambula v. Wells* (1999) 72 Cal.App.4th 1006, 1011-1014.

### VII. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court exclude evidence concerning Medi-Cal payments, California Children's Services ("CCS"), the Regional Center and In-Home Support Services ("IHSS") and The Patient Protection

Law Offices of Bruce G. Fagel & Associates

and Affordable Care Act "the ACA" or "ObamaCare, or other sources of government benefits that may be an available collateral source to pay for any of the minor Plaintiff's future medical damages outside the ambit of *Civil Code* §3333.1.

Respectfully submitted,

DATED: March 20, 2015    Law Offices of Bruce G. Fagel and Associates

By: _____
Bruce G. Fagel
Attorneys for Plaintiffs

CERTIFICATE OF SERVICE BY U.S. MAIL

The undersigned hereby certifies that she is an employee of the Law Offices of Bruce G. Fagel and Associates and is a person of such age and discretion to be competent to serve papers;

That on March 27, 2015 she served a copy of: PLAINTIFFS' MOTION IN LIMINE No. 2 TO EXCLUDE EVIDENCE OF COLLATERAL SOURCE PAYMENTS FROM MEDI-CAL, ACA, AND OTHER GOVERNMENTAL ASSISTANCE PROGRAMS by placing said copy in a postpaid envelope addressed to the person(s) hereinafter named at the place(s) and address(s) stated below, which is/are the last known address (es), and by depositing said envelope and its contents in the United States Mail at Beverly Hills, California.

Addresses(s):

| Benjamin B. Wagner<br>United States Attorney<br>Victoria Boesch<br>Assistant US Attorney<br>Chi Soo Kim<br>Assistant US Attorney<br>United States Attorney's Office<br>501 I Street, Suite 10-100<br>Sacramento, California 95814 | Attorneys for Defendant, United States<br>Telephone No. (916) 554-2743<br>Telephone No. (916) 554-2700<br>Facsimile No. (916) 554-2900<br>email Victoria.Boesch@usdoj.gov<br>email chi.soo.kim@usdoj.gov |

_____
Angela Scharer