BENJAMIN B. WAGNER
United States Attorney
VICTORIA L. BOESCH
CHI SOO KIM
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA  95814
Telephone:  (916) 554-2700
Facsimile:   (916) 554-2900
victoria.boesch@usdoj.gov
chi.soo.kim@usdoj.gov

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I. P., A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM, FACUNDO PALACIO DIAZ; MICAELA PALACIO,<br><br>                     Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                     Defendant. | CASE NO.  2:13-CV-01012 JAM-CKD<br><br>**UNITED STATES'OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1 TO ADMIT EVIDENCE REGARDING ANNUITIES**<br><br>Judge:  Hon. John A. Mendez<br>Crtrm:  6, 14th floor<br><br><br>**Trial Date:  May 26, 2015** |
| I. P., A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM, FACUNDO PALACIO DIAZ; MICAELA PALACIO,<br><br>                     Plaintiffs,<br><br>vs.<br><br>BANNER HEALTH, AN ARIZONA CORPORATION, doing business as BANNER LASSEN MEDICAL CENTER; DOES 100-200,<br><br>                     Defendants. | |

## I. INTRODUCTION

Plaintiffs' Motion in Limine No. 1 asks the Court to admit evidence regarding the cost of an annuity to determine the present cash value of a potential future damages award. Dkt. 85. But, as explained in the United States' Motion in Limine No. 1 (Dkt. 80), Plaintiffs have disclosed no admissible evidence regarding annuities. Therefore, the question they raise regarding whether annuity pricing may be offered to determine present cash value is academic.

The only evidence Plaintiffs have offered to support their annuity pricing theory is an untimely and deficient expert report from their economist Peter Formuzis. That document was disclosed more than seven months after the initial expert disclosure deadline in the Court's scheduling order and more than two months after the close of all discovery. In his five-sentence "report," Formuzis nearly triples his original present value opinions of $10.5 million to $12.9 million and now claims, without explanation, that present value is $27.4 million to $36.4 million. He merely attaches an unsigned letter never produced during discovery by a witness who Plaintiffs never disclosed and the United States never had an opportunity to depose. As explained in the United States' motion, this late-disclosed and facially insufficient evidence must be excluded under Federal Rule of Civil Procedure 37.

Moreover, California law instructs that "[t]o find present cash value, [the trier of fact] must determine the amount of money that, if reasonably invested today, will provide [plaintiff] with the amount of [her] future damages." CACI 3904A (Judicial Council of California Civil Jury Instruction on Present Cash Value). That is why Formuzis used this prudent investment method — applying a net discount rate to projected costs to determine a present cash value — in all of his reports and deposition testimony while discovery was open in this case.

Because Plaintiffs have disclosed no admissible evidence related to annuity pricing as a measure of present cash value, and because that is not the appropriate method to determine present value here, the Court should deny Plaintiffs' Motion in Limine No. 1.

## II. BACKGROUND

In its Motion in Limine No. 1, the United States describes the timing and substance of present value opinions offered by Plaintiffs' economist Formuzis. Dkt. 80 at 2-4. As described in more detail there, during expert discovery Formuzis disclosed various present-value opinions regarding I.P.'s

potential future medical expenses. *See* Dkt 54-3 at 170-206; Dkt. 84-1 at 16, 22-34, 36-62. Those opinions incorporated different life expectancy assumptions. *Id.* All of Formuzis' opinions calculated present cash value by applying net discount rates to future costs projected by Plaintiffs' life care plan. *Id.*

Then, shortly before the pretrial conference, Plaintiffs disclosed a new February 25, 2015 report from Formuzis (the "New Report"). Dkt. 84-1 at 64-71. The New Report contains opinions that were not disclosed in Formuzis' earlier reports or in his deposition testimony. *Id.*; *see also* Dkt 54-3 at 170-206; Dkt. 84-1 at 16, 22-34, 36-62. Plaintiffs filed no motion showing good cause for the Court to modify its Pretrial Scheduling Order under Rule 16, nor did they seek leave of Court to serve the New Report.

The New Report purports to amend Formuzis' original report with a two-page exhibit listing two cost figures for single-premium annuities. Dkt. 84-1 at 64-71. Now Formuzis opines for the first time that "the cost of a single premium annuity is one method of determining present value." *Id.* (Exh. E to Formuzis letter at 2). He offers no methodology or expert resources to support this opinion, instead merely citing a Ninth Circuit case. *Id.* The purported single-premium annuity costs offered as Formuzis' new present value opinions nearly triple the present value opinions in his December 2014 supplemental reports. *Compare* Dkt. 84-1 at 67 *with id.* at 37, 50. The New Report contains no explanation for this drastic change in Formuzis' opinion. Dkt. 84-1 at 64-71. Instead, Formuzis merely relies on an undisclosed document that appears to be an unsigned letter from a Kimberlee J. Smith, whom Plaintiffs have not disclosed as a witness. Dkt. 84 at 2; Dkt. 84-1 at 64-71.

### III.     ANALYSIS

#### A.     California damages law applies in this FTCA action.

Since I.P.'s birth occurred in Lassen County, California, California damages law applies. The FTCA generally renders the United States liable for negligence by its employees that occurs within the scope of federal employment. 28 U.S.C. §§ 1346(b) & 2674. Within limitations imposed by the FTCA, the United States is liable in tort as a private individual would be under like circumstances. *Id.* So the law of the state where the negligence occurred generally governs the scope of the United States' liability. *Id.*; *see also Cummings v. United States*, 704 F.2d 437, 440 (9th Cir. 1983) ("Under [the

FTCA], the allowable damages are determined with reference to state law.").

### B. California law instructs the trier of fact to calculate present value using the prudent investment method.

The Judicial Council of California's Civil Jury Instruction on Present Cash Value provides that "[t]o find present cash value, [the trier of fact] must determine the amount of money that, if reasonably invested today, will provide [plaintiff] with the amount of [her] future damages." This prudent investment method of calculating present value has been approved by numerous California courts. *See, e.g., Salgado v. County of Los Angeles,* 19 Cal. 4th 629, 640-41 (1998) (to provide a plaintiff the "value in current dollars" of a capped non-economic damages award, payments over time must provide "the amount that the capped award would have yielded if invested prudently at the time of judgment"); *Holt v. Regents of the Univ. of Cal.*, 73 Cal. App. 4th 871, 878 (1999) ("The present value of a gross award of future damages is that sum of money prudently invested at the time of judgment which will return, over the period the future damages are incurred, the gross amount of the award."); *Canavin v. Pacific Southwest Airlines*, 148 Cal. App. 3d 512, 521 (1983) ("Exact actuarial computation should result in a lump-sum, present-value award which if prudently invested will provide the beneficiaries with an investment return allowing them to regularly withdraw matching support money so that, by reinvesting the surplus earnings during the earlier years of the expected support period, they may maintain the anticipated future support level throughout the period and, upon the last withdrawal, have depleted both principal and interest."). California juries thus follow this prudent investment approach to discount future damages using projected investment returns to reach a present value figure. *Id.*; *see also* Boesch Decl. Ex. V at 2 (March 2013 article in Plaintiff magazine by Bruce Fagel, "Damages in medical-malpractice cases under MICRA") ("Determining the present cash value of future medical-care costs requires multiple experts, including … an economist who can calculate the present cash value of plaintiff's life-care plan based on the projected life expectancy.").[1]

Formuzis used this prudent investment method of calculating present value in all the present value opinions that he disclosed during discovery in this case. *See* Dkt 54-3 at 170-206; Dkt. 84-1 at 16,

---

[1] This article is available at http://www.fagellaw.com/documents/Fagel_Damages-in-medical-malpractice-cases-under-MICRA.pdf .

22-34, 36-62.  The Court should reject his last-minute change of opinion in the New Report.

### C. Annuities generally enter the picture post-judgment because California's MICRA statute allows either party to request that future damages be paid out over time.

California's Medical Injury Compensation Reform Act of 1975 ("MICRA") includes a variety of provisions enacted by the legislature to reduce the cost of malpractice insurance by limiting the amount and timing of recovery in cases of professional negligence.  *Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital*, 8 Cal. 4th 100, 111-12 (1994).

MICRA included California Code of Civil Procedure section 667.7, which allows either party to request that a future damages award over $50,000 be paid in whole or in part by periodic payments rather than a lump-sum payment.[2]  Cal. Civ. Proc. Code § 667.7(a); *Salgado,* 19 Cal. 4th at 638.  The California Supreme Court has made clear that annuities may be used to fund periodic payments, but only with both parties' consent.  *Salgado,* 19 Cal. 4th at 643-44.  Thus neither party can be required to accept an annuity as a judgment funding vehicle.

The California cases that Plaintiffs rely on to argue that annuities should be used to measure present cash value, like *Salgado*, are distinguishable because they generally refer to annuities in a post-judgment context.  *See Salgado,* 19 Cal. 4th at 643-44, 649-50 (considering challenges to trial court's use of annuities in connection with the post-judgment application of the periodic payment statute); *Holt*, 73 Cal. App. 4th at 876-81 (addressing challenges to a trial court's periodic payment scheme); *Nguyen v. Los Angeles County Harbor/UCLA Medical Ctr.*, 40 Cal. App. 4th 1433, 1440, 1448-54 (1995) (analyzing the appropriate calculation of attorney fees on a judgment that included periodic payments); *Hrimnak v.Watkins*, 38 Cal. App. 4th 964, 979-81 (1995) (analyzing the appropriate calculation of attorney fees and prejudgment interest on a judgment including periodic payments); *Schneider v. Kaiser Foundation Hospitals*, 215 Cal. App. 3d 1311, 1314-19 (1989), *disapproved on other grounds in Moncarsh v. Heily & Blase,* 3 Cal. 4th 1 (1992), (analyzing appropriate calculation of attorney fees on

---

[2] As noted by the United States in the Joint Pretrial Statement (Dkt. 70 at 18), California's periodic payment statute applies to the United States within the strictures of the FTCA.  *See Cibula v. United States*, 664 F.3d 428 (4th Cir. 2012) (discussing application of California's periodic payment statute to the United States in an FTCA case).  The United States would address this issue in post-trial briefing should it become necessary.

periodic payment judgment).

The exception is a 1946 California Court of Appeal case that is inapplicable here because it significantly predates MICRA, the California Supreme Court's guidance on this issue, and the Judicial Council's Present Cash Value jury instruction (last revised in 2013). *Emery v. Southern Cal. Gas Co.*, 72 Cal. App. 2d 821 (1946). That case is also factually distinguishable because it involved evidence different from what Plaintiffs offer here (*e.g.* testimony by an actuary regarding annuity tables showing "the amount of money which if invested at various rates of interest, namely, 3 per cent, 4 per cent, and 5 per cent, would yield a monthly income of various amounts, namely, $200, $300, and $400 over a period of 20 years, and over a period of 25 years, and all be used up at the end of those particular periods.") *Id.* at 823. The Ninth Circuit case Plaintiffs cite, *Scott v. United States*, is distinguishable because it applied Alaska law (which created potential conflict with the FTCA and so required special damages calculations) and involved otherwise competent expert testimony. *Scott v. United States*, 884 F.2d 1280, 1284-88 (9th Cir. 1989).

Plaintiffs' counsel knows that annuity prices are not an appropriate measure of present cash value. In his own words: "Prior to 2008, the cost of [a post-judgment life] annuity would always be less than the medical evidence or jury finding on plaintiff's life expectancy, and thus the defense could always save money after any jury verdict involving a catastrophic, permanent injury to plaintiff. However, since 2008, the insurance companies that are in the annuity business are no longer willing to take the kind of financial risks that they did before 2008, and thus *the cost of one or more annuities that would fund any periodic payment judgment is more, and sometimes much more than the present cash value of such future payments*." Boesch Decl. Ex. V at 3 (emphasis added).

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion in Limine No. 1.

//

| | |
|---|---|
| Dated: April 2, 2015 | Respectfully submitted,<br><br>BENJAMIN B. WAGNER<br>United States Attorney<br><br>*/s/ Victoria L. Boesch*<br>VICTORIA L. BOESCH<br>Assistant United States Attorney<br><br>Attorneys for the United States of America |