BENJAMIN B. WAGNER
United States Attorney
VICTORIA L. BOESCH
CHI SOO KIM
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA  95814
Telephone:  (916) 554-2700
Facsimile:   (916) 554-2900
victoria.boesch@usdoj.gov
chi.soo.kim@usdoj.gov

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I. P., A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM, FACUNDO PALACIO DIAZ; MICAELA PALACIO,<br><br>                    Plaintiffs,<br><br>      v.<br><br>UNITED STATES OF AMERICA,<br><br>                    Defendant. | CASE NO.   2:13-CV-01012 JAM-CKD<br><br>**UNITED STATES' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 2 TO EXCLUDE EVIDENCE REGARDING CERTAIN COLLATERAL SOURCES**<br><br>Judge:  Hon. John A. Mendez<br>Crtrm:  6, 14th floor<br><br><br>**Trial Date:  May 26, 2015** |
| I. P., A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM, FACUNDO PALACIO DIAZ; MICAELA PALACIO,<br><br>                    Plaintiffs,<br>vs.<br><br>BANNER HEALTH, AN ARIZONA CORPORATION, doing business as BANNER LASSEN MEDICAL CENTER; DOES 100-200,<br>                    Defendants. | |

## I. INTRODUCTION

California's Medical Injury Compensation Reform Act of 1975 ("MICRA") expressly authorizes defendants in medical malpractice cases to introduce evidence of insurance benefits. In other words, it allows "collateral source" evidence by abrogating the general rule barring evidence of collateral sources that compensate for plaintiffs' injuries. MICRA promotes fairness by ensuring that plaintiffs will recover what they spend themselves for medical expenses, but not recover what an insurance company pays on plaintiffs' behalf. MICRA also protects plaintiffs from having their damages recovery reduced through subrogation by the insurer. In short, MICRA allows an offset for insurance benefits, but then precludes the insurance company from coming after plaintiffs for the costs of those benefits.

Plaintiffs' Motion in Limine Number 2 seeks to exclude evidence regarding the Patient Protection and Affordable Care Act of 2010 (the "Affordable Care Act"), future insurance benefits under I.P.'s current private health insurance, and Medi-Cal benefits to I.P. *See also* Dkt. 83 (United States' Motion in Limine No. 4 seeking to admit evidence regarding insurance benefits). Evidence regarding the Affordable Care Act is both relevant and admissible here because the law enables and requires I.P. to maintain health insurance, whether through her current Blue Shield policy or otherwise. Evidence regarding I.P.'s future insurance benefits under her Blue Shield policy is admissible under MICRA. Evidence of Medi-Cal benefits is not admissible to offset damages because Medi-Cal retains its lien rights. California law does make amounts paid by Medi-Cal admissible, however, for purposes of determining the actual amount paid for medical expenses because that amount creates the ceiling for recovery for those expenses. *See Howell v. Hamilton Meats & Provisions, Inc.*, 52 Cal. 4th 541, 548-49, 555 (2011); *Corenbaum v. Lampkin*, 215 Cal. App. 4th 1308, 1330-32 (2013).

Plaintiff's motion also seeks to exclude evidence regarding California Children's Services, In Home Support Services, and Regional Center benefits. The United States does not intend to offer evidence regarding California Children's Services or In Home Support Services benefits. But because the Regional Center provides free public benefits available to I.P., the Regional Center is not a collateral source and evidence of Regional Center benefits is admissible.

## II. BACKGROUND

This is a medical malpractice case against the United States under the Federal Tort Claims Act

(the "FTCA").  Under the FTCA, the United States is generally liable for the negligent acts of its employees.  28 U.S.C. §§ 1346(b) & 2674.  Within limitations imposed by the FTCA, the United States is liable in tort as a private individual would be under like circumstances.  *Id.*  Thus, the law of the state where the negligence occurred generally governs the scope of the United States' liability.  *Id.*; *see also Cummings v. United States*, 704 F.2d 437, 440 (9th Cir. 1983) ("Under [the FTCA], the allowable damages are determined with reference to state law."); *Taylor v. United States*, 821 F.2d 1428, 1431-32 (9th Cir. 1987) (MICRA applies to medical malpractice cases brought under the FTCA).  Because I.P.'s birth occurred in California, California law controls.

I.P. currently has private health insurance through Blue Shield.  Dkt. 84-1 at 89-98.  Some of her past medical expenses have also been covered by Medi-Cal, a state benefits program.  *Id.*; Dkt. 70 at 5.  Plaintiffs seek to exclude or limit the admissibility of this evidence under California's collateral source rule.  As set forth below, the evidence is admissible and Plaintiffs' motion should be denied.

### III.     ANALYSIS

California law seeks only to "compensate" plaintiffs for the harm they actually suffer, not to punish tortfeasors.  Cal. Civ. Code § 3333.  MICRA furthers this goal by preventing "double recovery" by plaintiffs whose insurance pays for benefits, while also protecting plaintiffs from insurers seeking to recoup the costs of benefits.  In other words, medical malpractice plaintiffs cannot recover medical expenses that they do not pay, and insurance companies cannot recover expenses from the plaintiff or through subrogation from the defendant.  A plaintiff is therefore made whole because she is compensated for expenses she actually incurs or is likely to incur in the future.  And, in accordance with MICRA's policy objectives, certain medical-expense damages are shifted from malpractice insurers to health insurers by extinguishing the health insurers' subrogation rights.  *See Barme v. Wood*, 37 Cal.3d 174, 181 (1984).

This rule does not apply to Medi-Cal, and evidence of past or future Medi-Cal benefits is not admissible to reduce a plaintiff's damages award.  *See Brown vs. Stewart*, 129 Cal.App.3d 331 (1982), *superseded by statute as stated in Garcia v. County of Sacramento*, 103 Cal.App.4th 67, 79-81 (2002) (holding that §3333.1 does not extinguish Medi-Cal's lien rights); *see also Hernandez v. California Hospital Medical Center*, 78 Cal. App. 4th 498, 506 (2000) (Section 3333.1 does not extinguish Medi-

Cal's lien rights). But Medi-Cal benefits are admissible to establish amounts that have been or will be paid for medical care because those amounts set a ceiling on recovery by defining the upper limit of the reasonable value for those services. *See Howell*, 52 Cal. 4th at 548-49 ("The collateral source rule precludes certain deductions against otherwise recoverable damages, but does not expand the scope of economic damages to include expenses the plaintiff never incurred."); *id.* at 555; *Corenbaum*, 215 Cal. App. 4th at 1330-32. In other words, Medi-Cal benefits do not offset the damages awarded to plaintiffs, but they do limit the amount available to plaintiffs.

      A.     **Under Civil Code § 3333.1, evidence of future insurance benefits is admissible.**

Both the text of and case law interpreting §3333.1 make clear that evidence regarding future insurance benefits is admissible.

Section 3333.1(a) allows medical malpractice defendants to introduce evidence of "any amount payable as a benefit to the plaintiff as a result of the personal injury" under "any health, sickness or income-disability insurance, accident insurance that provides health benefits or income-disability coverage, and any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the cost of medical, hospital, dental, or other health care services." California Civil Code § 3333.1(a). Subsection (b) provides that "[n]o source of collateral benefits introduced pursuant to subdivision (a) shall recover any amount against the plaintiff nor shall it be subrogated to the rights of the plaintiff against a defendant." California Civil Code § 3333.1(b); *see also Barme v. Wood*, 37 Cal.3d 174, 177 (1984); *but see Hernandez v. California Hospital Medical Center*, 78 Cal. App. 4th 498, 506 (2000) (Section 3333.1 does not extinguish Medi-Cal's lien rights).

Section 3333.1(a) attempts to eliminate a "double recovery" by plaintiffs whose medical expenses are paid by health insurance. *Barme*, 37 Cal.3d at 179, n.5. Recognizing that it would be unjust to have plaintiffs medical expenses paid both by its insurer and by the tortfeasor, it gives the trier of fact the opportunity to "set plaintiff's damages at a lower level because of its awareness of plaintiff's 'net' collateral source benefits." *Fein v. Permanente Medical Group*, 38 Cal.3d 137, 164-65 (1985). Although §3333.1(a) does not require a reduction in a plaintiff's damages based on collateral source benefits (*Fein*, 38 Cal.3d at 164-65 n.21; *Hernandez*, 78 Cal. App. 4th at 506) "the Legislature's assumption was that the trier of fact would take the plaintiff's receipt of such benefits into account by

reducing damages." *Barme*, 37 Cal.3d at 179.

### 1. Civil Code § 3333.1 applies to future benefits.

The California Supreme Court affirmed the constitutionality of §3333.1(b)'s preclusion of collateral-source reimbursement in a case where the collateral source sought reimbursement for both past and future, yet-to-be-incurred medical expenses. *Barme*, 37 Cal.3d at 177-78. In *Fein v. Permanente Medical Group*, it explicitly considered a plaintiff's objection "to any reduction of future damages on the basis of potential future collateral source benefits." 38 Cal.3d at 165 n.21. It rejected that argument, reasoning that "if anything, the trial court may have given plaintiff more than he was entitled to, since it did not reduce the jury's $63,000 award by the collateral source benefits plaintiff was likely to receive, but instead imposed a continuing liability on defendant to pay up to a total of $63,000 for any noncovered medical expenses that plaintiff may incur in the future as a result of the injury." *Id.* The California Supreme Court has thus confirmed §3333.1's application to future benefits.

Given the California Supreme Court's treatment of this issue, it is unsurprising that Plaintiffs cite no authority to support their novel interpretation of §3333.1's text as allowing only evidence of past benefits. *See* Dkt. 86 at 10-11 (arguing that MICRA's abrogation of the collateral source rule is restricted to "benefits received as of the time of trial" and so that future benefits are inadmissible).

### 2. MICRA's statutory language shows that future benefits are admissible.

Section 3333.1(a) explicitly allows the admission of "any amount *payable* as a benefit to the plaintiff." *Id.* (emphasis added). Payable means that which "may, can, or should be paid" or "is to be paid." *Jarrett v. Allstate Insurance Co.*, 209 Cal.App.2d 804, 812 (1962). The statutory language is thus clear that evidence of future benefits is admissible. Trying to evade this clear meaning, Plaintiffs point to § 3333.1(a)'s language allowing plaintiffs to produce evidence of "any amount which the plaintiff has paid or contributed to secure his right to any insurance benefits." But this language allows a plaintiff to submit evidence of amounts paid to secure *future* benefits. Because insurance premiums are virtually always paid before the insured receives benefits, the language naturally means that a plaintiff may recover future insurance premiums.

Plaintiffs' implication that they will somehow be prejudiced because the statute allows them to produce evidence of "any amount which the plaintiff has paid or contributed to secure his right to any

insurance benefits" is a red herring.  Cal. Civ. Code § 3333.1(a); Dkt. 86 at 11.  Plaintiffs have not offered any evidence of insurance premiums, though they were free to do so.  The United States has disclosed, and intends to offer, evidence of future insurance premiums to allow the Court, if necessary, to ensure that I.P. would have the money to acquire insurance should she somehow lose her current health insurance coverage.  *See* Boesch Decl. Exh. B.  There is thus no unfairness to Plaintiffs in permitting introduction of future insurance benefits.

### 3. Plaintiffs' unsupported legislative history argument fails.

Plaintiffs argue — without citing or providing any of the purported legislative history upon which they rely — that MICRA's "legislative history proves that the Legislature intended to restrict MICRA's collateral source abrogation to past collateral source benefits."  Dkt. 86 at 11.  This argument fails.

First, Plaintiffs do not even argue that § 3333.1 is ambiguous.  Absent statutory ambiguity, no resort to legislative history is appropriate.  Where, as here, statutory language is "clear and unambiguous there is no need for construction, and courts should not indulge in it."  *California Fed. Savings & Loan Assn. v. City of Los Angeles*, 11 Cal.4th 342, 349 (1995).

Second, Plaintiffs do not cite to or provide any *actual legislative history* for the Court to analyze.  It should go without saying that Plaintiffs must provide support for the arguments they make.  *See* EDCA L.R. 133(i)(3)(i)(requiring parties to provide copies of authority relied on if it is not available through Westlaw or Lexis); *Ventress v. Japan Airlines*, 747 F.3d 716, 723 n.8 (9th Cir. 2014)(declining to address argument unsupported by citations to authority).

Third, the purported legislative history they discuss is equivocal.  At most, it would show that the question of MICRA's application to future benefits was raised.  It does not shed light on how that question was resolved.  Regardless, the California Supreme Court has twice applied MICRA to evidence of future benefits.  The evidence is therefore admissible.

Finally, Plaintiffs' counsel understands that evidence regarding future insurance payments is admissible and often results in an offset reducing a future damages award.  Boesch Decl. Exh. V at 3.  In his March 2013 article from "Plaintiff Magazine," Mr. Fagel states that "future loss of earnings, payments from a disability policy or social security payments are usually considered as a reasonably

certain offset." He also writes that "with regard to future medical-care costs, even with a policy of private health insurance, it is far less certain that specific items that are part of plaintiff's life-care plan will be considered as covered expenses under a specific health-insurance plan, and plaintiff should insist on the defendant having the burden of proving that such items will in fact be paid for by any specific health-insurance policy.")[1] *See id*. In other words, Mr. Fagel recognizes that such evidence is admissible, though he contests what effect the evidence should have.

The Court should thus reject the argument that MICRA does not apply to future medical expenses.

### B. Evidence regarding the availability of insurance benefits under the Affordable Care Act is both relevant and admissible.

Evidence of I.P.'s past and future medical benefits is relevant to her duty to mitigate her damages under California law. *Pretzer v. California Transit Co.*, 211 Cal. 202, 208 (1930); *Green v. Smith*, 261 Cal. App. 2d 392, 396 (1968). The duty to mitigate means that a plaintiff cannot recover losses that could have been or could be avoided through reasonable efforts. *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1568 (1996); Rest.2d, Torts § 918.

#### 1. I.P. currently has private health insurance and will likely continue to have it.

I.P. currently has Blue Shield insurance that provides her with discounted medical care. Dkt. 84-1 at 89-98. Health insurance policies in California are renewable at the option of the insured regardless of the insured's medical condition. Cal. Health & Saf. Code § 1365(a); Cal. Ins. Code §§ 10273.4, 10273.6. Though there are limited exceptions to renewability (such as for the nonpayment of premiums, fraud, relocation out of the service area, or the insurer's withdrawal from the market), nonrenewal is not permitted based on the insured's medical condition. *See* Cal. Health & Saf. Code, § 1365 (a)(1)-(7); Cal. Ins. Code §§ 10273.4 (a)-(i), 10273.6 (a)-(f). Moreover, the Affordable Care allows I.P. to remain on her parents' health insurance plan up to age 26. *See* https://www.healthcare.gov/young-adults/children-under-26/. Thus, I.P. currently has medical insurance and is likely to continue to have that insurance for the rest of her life expectancy.

---

[1] This article is available at http://www.fagellaw.com/documents/Fagel_Damages-in-medical-malpractice-cases-under-MICRA.pdf .

### 2. Evidence regarding the Affordable Care Act rebuts Plaintiffs' arguments that I.P. will become uninsured in the future.

Notwithstanding I.P.'s current coverage, Plaintiffs suggest that I.P.'s continued health insurance coverage is in doubt. *See, e.g.,* Dkt. 86 at 13 ("Under the ACA, there is no guarantee, or even high likelihood, that Plaintiff will have insurance coverage at all.") The fact that the Affordable Care Act both requires I.P. to maintain health insurance (or pay a tax for failing to do so) and guarantees her the ability to purchase such insurance at capped prices is thus highly relevant.

The Affordable Care Act requires individuals to obtain and maintain health insurance. 26 U.S.C. § 5000A(a) ("An applicable individual shall for each month beginning after 2013 ensure that the individual, and any dependent of the individual who is an applicable individual, is covered under minimum essential coverage for such month."); *see also National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566, 2580 (2012) (citing 26 U.S.C. § 5000A and observing that its "individual mandate requires most Americans to maintain 'minimum essential' health insurance coverage"). Section 1302 of the Affordable Care Act requires that the following "Essential Health Care Requirements" be included in all health insurance plans:

(A) Ambulatory patient services.

(B) Emergency services.

(C) Hospitalization.

(D) Maternity and newborn care.

(E) Mental health and substance use disorder services, including behavioral health treatment.

(F) Prescription drugs.

(G) Rehabilitative and habilitative services and devices.

(H) Laboratory services.

(I) Preventive and wellness services and chronic disease management.

(J) Pediatric services, including oral and vision care.

PL 111-148, 2010 HR 3590 Title I, Subtitle D, Part 1, section 1302(b)(1)(A) to (J), at *163-64.

The Affordable Care Act also ensures that individuals can obtain such insurance notwithstanding preexisting health conditions. *See National Federation of Independent Business*, 132 S. Ct. at 2585 ("In

the Affordable Care Act, Congress addressed the problem of those who cannot obtain insurance coverage because of preexisting conditions or other health issues.  It did so through the Act's 'guaranteed issue' and 'community rating' provisions.  These provisions together prohibit insurance companies from denying coverage to those with such conditions or charging unhealthy individuals higher premiums than healthy individuals.").  The Act guarantees that individuals can obtain and renew that coverage regardless of health status, medical condition, claims experience, medical history, or disability.  PL 111-148, 2010 HR 3590 Title II, Subtitle I, section 2702(a), at *156;[2] *id.* at section 2703(a), at *156;[3] *id.* at section 2705(a), at *156.[4]

There are no annual limits on the dollar value of this coverage, and an individual's out-of-pocket cost is limited.  PL 111-148, 2010 HR 3590 Title I, Subtitle A, Part A, Sub-part 2, section 2711(a), at *131;[5] https://www.healthcare.gov/choose-a-plan/out-of-pocket-costs/.

### 3. Plaintiffs' unsupported arguments regarding the Affordable Care Act cannot change the admissibility of evidence relating to applicable law.

Without citation, Plaintiffs make numerous vague assertions about the Affordable Care Act. None of those assertions support the notion that this Court should ignore pertinent law regarding health insurance coverage in determining any future damages.

---

[2] "GUARANTEED ISSUANCE OF COVERAGE IN THE INDIVIDUAL AND GROUP MARKET.--Subject to subsections (b) through (e), each health insurance issuer that offers health insurance coverage in the individual or group market in a State must accept every employer and individual in the State that applies for such coverage."

[3] "IN GENERAL.--Except as provided in this section, if a health insurance issuer offers health insurance coverage in the individual or group market, the issuer must renew or continue in force such coverage at the option of the plan sponsor or the individual, as applicable."

[4] "IN GENERAL.--A group health plan and a health insurance issuer offering group or individual health insurance coverage may not establish rules for eligibility (including continued eligibility) of any individual to enroll under the terms of the plan or coverage based on any of the following health status-related factors in relation to the individual or a dependent of the individual: (1) Health status. (2) Medical condition (including both physical and mental illnesses). (3) Claims experience. (4) Receipt of health care. (5) Medical history. (6) Genetic information. (7) Evidence of insurability (including conditions arising out of acts of domestic violence). (8) Disability. (9) Any other health status-related factor determined appropriate by the Secretary."

[5] "IN GENERAL.--A group health plan and a health insurance issuer offering group or individual health insurance coverage may not establish--(1) lifetime limits on the dollar value of benefits for any participant or beneficiary; or (2) unreasonable annual limits (within the meaning of section 223 of the Internal Revenue Code of 1986) on the dollar value of benefits for any participant or beneficiary."

I.P. has private health insurance and the Affordable Care Act means that, should she lose that insurance, she could purchase a replacement policy.  The United States intends to offer evidence at trial regarding the future premium and out-of-pocket costs for such a policy, allowing the Court to include those costs in any damages award.  This would ensure that I.P. would be compensated for any future insurance premiums and that she would have the money to acquire replacement insurance should she lose her current coverage.  *See* Boesch Decl. Exh. B.  Plaintiffs' arguments regarding I.P.'s future health insurance likely being paid by Medi-Cal or some other government source that retains lien rights therefore do not apply here.  *See* Dkt. 86 at 6-7.  And any subrogation clause in a privately purchased health insurance plan would yield to §3333.1(b), which extinguishes such contractual subrogation rights.  *See* Cal. Civ. Code §3333.1(b) ("No source of collateral benefits introduced pursuant to subdivision (a) shall recover any amount against the plaintiff nor shall it be subrogated to the rights of the plaintiff against a defendant."); *see also Barme*, 37 Cal.3d at 177.

Plaintiffs' argument that evidence of future coverage available under the Affordable Care Act is "nothing more than speculation" proves too much.  Calculation of projected future damages inevitably involves speculation.  If evidence regarding the applicable law and likelihood of insurance coverage is too speculative, then so are all of Plaintiffs' future-care damages, which are based on projections regarding how long she is likely to live, what care she will need, and how much it will cost.

And notwithstanding Plaintiffs' lengthy but citation-free Affordable Care Act arguments, Plaintiffs' counsel clearly understands the significance of the Affordable Care Act for future damages.  *See* Boesch Decl. Exh. A at 3 (March 2013 article from Plaintiff magazine by Bruce Fagel, "Since the Affordable Care Act now removes lifetime caps and prevents health-insurance companies from denying coverage for a pre-existing injury, it will be easier for the defense to argue that much of plaintiff's life-care plan will be paid for by private health insurance").

I.P. thus has and will continue to have insurance coverage.  She already has health insurance, and the law requires her to keep or replace it.  Thus, both the prescriptive law and her duty to mitigate damages require her to take advantage of the discounted medical care that insurance provides.  Evidence relating to insurance benefits, including evidence regarding the Affordable Care Act, is therefore highly relevant to her future-damages claims and should be admitted at trial.

**C.    Evidence regarding free public benefits from the Regional Center should be admitted because the Regional Center is not a collateral source.**

I.P. is a client of the Regional Center. Regional Centers provide occupational and physical therapies, respite nursing care, and durable medical equipment among other services. Evidence regarding free public benefits I.P. receives and is eligible to receive through the Regional Center is admissible because Regional Center benefits are not a collateral source. Free public benefits do not constitute collateral sources because they do not invoke any of the policy justifications for the collateral source rule. Therefore Regional Center benefits are admissible despite not falling within §3333.1's abrogation of the collateral source rule in medical malpractice cases.

Through the Lanterman Developmental Disabilities Services Act, the "State of California accepts a responsibility for its developmentally disabled citizens and an obligation to them which it must discharge." *Association for Retarded Citizens v. Department of Developmental Services*, 38 Cal.3d 384, 389 (1985). The act therefore has "granted them certain statutory rights, including the right to treatment and habilitation services at state expense." *Id.* Under the Lanterman Act, nonprofit Regional Centers provide ongoing case management and advocacy, direct services, and services purchased from others to assist persons with a developmental disability that originated before age 18, is expected to continue indefinitely, and constitutes a substantial handicap. *Id.* at 388-90; *Clemente v. Amundson*, 60 Cal.App.4th 1094, 1097-98 (1998); *Williams v. Macomber*, 226 Cal.App.3d 225, 232 (1990). There is no payment obligation except for (a) out of home placement of a child (copayment for the cost for caring for a normal child at home) and (b) day care for a child (copayment for the cost for daycare for a child without disabilities, though this co-payment is not required under certain circumstances). *Clemente*, 60 Cal.App.4th at 1103.

The collateral source rule traditionally applies to medical insurance benefits, pension benefits, and disability benefits. *Helfend v. Southern Cal. Rapid Transit Dist.*, 2 Cal.3d 1 (1970); *Rotolo Chevrolet v. Superior Court*, 105 Cal.App.4th 242, 245 (2003); *McKinney v. California Portland Cement Co.*, 96 Cal.App.4th 1214, 1222 (2002). In these situations, the collateral source rule expresses a policy judgment in favor of citizens purchasing and maintaining insurance. *Helfend*, 2 Cal.3d at 9-10. But this policy judgment has no bearing at all on Regional Center benefits and applying the collateral

source rule to such benefits would not encourage citizens to purchase and maintain insurance. Similarly, the collateral source rule's "benefit of the bargain" rationale does not apply to Regional Center benefits. Plaintiff incurs no expense, no obligation, and no liability in obtaining such services because they are available to all who qualify.

The collateral source rule does apply to gratuitous benefits from a private source to promote public policy concerns favoring private charitable assistance. *Arambula v. Wells*, 72 Cal.App.4th 1006 (1999). But again, this policy judgment has no bearing at all on Regional Center benefits because the law requires that those benefits be provided to anyone with a qualifying disability.

Accordingly, Regional Center benefits are admissible here because they are not collateral source benefits.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion in limine No. 2.

Dated: April 2, 2015

Respectfully submitted,

BENJAMIN B. WAGNER
United States Attorney

*/s/ Victoria L. Boesch*
VICTORIA L. BOESCH
Assistant United States Attorney