BENJAMIN B. WAGNER
United States Attorney
VICTORIA L. BOESCH
CHI SOO KIM
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA  95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900
victoria.boesch@usdoj.gov
chi.soo.kim@usdoj.gov

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I. P., A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM, FACUNDO PALACIO DIAZ; MICAELA PALACIO,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CASE NO. 2:13-CV-01012 JAM-CKD<br><br>**UNITED STATES' BRIEF ON THE APPLICATION OF CALIFORNIA'S PERIODIC-PAYMENT STATUTE**<br><br>**JUDGE:  HON. JOHN A. MENDEZ**<br>**CTRM.:   6, 14th Floor** |

## I. INTRODUCTION

The United States hereby submits this brief on the proper application of California's periodic-payment statute, Cal. Civ. Proc. Code § 667.7.

## II. BACKGROUND

Under the Federal Tort Claims Act ("FTCA"), the government is liable in tort actions "in the same manner and to the same extent as a private party under like circumstances." 28 U.S.C. § 2674. The government's liability is determined in accordance with the law of the state where the alleged negligence occurred, in this case California. *See* 28 U.S.C. §§ 1346(b), 2674.

The California law that applies here includes provisions of California's Medical Injury

Compensation Reform Act of 1975 ("MICRA").  *See* 28 U.S.C. § 2674; 28 U.S.C. § 1346(b); *Cummings v. United States*, 704 F.2d 437, 440 (9th Cir. 1983) ("Under [the FTCA], the allowable damages are determined with reference to state law."); *Taylor v. United States*, 821 F.2d 1428, 1431-32 (9th Cir. 1987) (MICRA applies to medical malpractice cases brought under the FTCA).  MICRA includes a variety of provisions enacted by the legislature to reduce the cost of malpractice insurance by limiting the amount and timing of recovery in cases of professional negligence. *Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital*, 8 Cal.4th 100, 111-12 (1994).  MICRA's provisions include California's periodic-payment statute.  Cal. Code Civ. Proc. § 667.7.

California's periodic-payment statute allows a party in a medical malpractice action to elect that future damages "be paid in whole or in part by periodic payments rather than by a lump-sum payment if the award equals or exceeds fifty thousand dollars."  Cal. Civ. Proc. Code § 667.7(a).  Periodic payments "shall only be subject to modification in the event of the [plaintiff's] death".  *See* Cal. Civ. Proc. Code § 667.7(b)(1).  The statute requires a court's judgment to specify a periodic-payment schedule with certainty.  *See* Cal. Civ. Proc. Code § 667.7(f).

The periodic-payment statute explicitly articulates its purpose – to provide adequate compensation to an injured plaintiff "while eliminating the potential windfall from a lump-sum recovery which was intended to provide for the care of an injured plaintiff over an extended period who then dies shortly after the judgment is paid, leaving the balance of the judgment award to persons and purposes for which it was not intended."  Cal. Civ. Proc. Code § 667.7(f).

Under the statute, a private defendant can elect to make periodic payments for future damages over time, with the obligation to pay ending upon the plaintiff's death.  This protects the private defendant from paying out large damage awards in a lump sum for future expenses that never come to pass.  The government, however, is barred by the FTCA from being saddled with continuing obligations like periodic payments.  *See Cibula v. United States*, 664 F.3d 428, 431 (4th Cir. 2012) ("[C]ourts cannot subject the United States to continuing obligations like periodic payments.").  Accordingly, courts frequently craft remedies that "approximate" state periodic-payment statutes by allowing the government to make a lump-sum, present-value payment that is to be paid out to the plaintiff over time, with the remainder reverting back to the United States upon the plaintiff's death.  *See Dutra v. United*

*States*, 478 F.3d 1090, 1092 (9th Cir. 2007) ("The FTCA authorizes courts to craft remedies that approximate the results contemplated by state statutes, and nothing in the FTCA prevents district courts from ordering the United States to provide periodic-payments in the form of a reversionary trust."); *see also Askew v. United States*, 786 F.3d 1091 (8th Cir. 2015) ("The use of a reversionary trust would allow the court to hold the United States liable to the same extent as a private individual under 'like circumstances.'"); *Cibula*, 664 F.3d at 433 ("[T]he FTCA permits courts to craft remedies that 'approximate' state periodic-payment statutes, including reversionary trusts."); *Hill v. United States*, 81 F.3d 118, 121 (10th Cir. 1996) (holding that a district court can create a reversionary trust that "would approximate the result contemplated by" a state periodic-payment statute).  An FTCA remedy crafted to approximate a periodic-payment statute allows the United States to satisfy the judgment through a lump-sum payment while retaining a reversionary interest designed to protect it as the statute would from overpayment.

### III.   DISCUSSION

**A.   Overview**

The United States intends to pay the following damages in a lump sum:

> Plaintiff's past medical expenses of $87,521.
>
> Plaintiff's projected lost earnings of $967,796.
>
> Plaintiff's noneconomic damages of $250,000.
>
> Micaela Palacio's noneconomic damages of $250,000.

With respect to damages for future LVN care ($7,753,349) and for other future medical expenses ($544,139), the United States asks the Court to craft a remedy approximating California's periodic-payment statute.  These future medical-expense awards are present cash-value amounts based on Plaintiffs' economist's testimony.  Dkt. 155 at 23.

In general terms, the United States proposes that it use present-value future-expense amounts to purchase an annuity providing 20 years of gradually increasing payments (broken down into 12 monthly installments each year), with a reversionary interest to the United States in the annuity payments if I.P. dies earlier than her Court-determined life expectancy.  Because California law provides that neither party can be forced to accept an annuity, the United States proposes that, if the parties cannot agree on

an annuity, the present-value future-expense amounts be placed in a reversionary trust that makes set periodic payments to I.P., with remaining funds in the trust reverting to the United States upon I.P.'s death.

**B.    Plaintiffs' Attorney's Fees**

The United States recognizes California law's general preference for paying attorney fee awards up front in medical malpractice cases. *See Nguyen v. Los Angeles County Harbor/UCLA Medical Center*, 40 Cal.App.4th 1433 (1995) ("As a general rule, the preferable approach is to satisfy the attorney fees immediately out of the cash payment."). The United States' counsel has been informed by Plaintiffs' counsel that he has a contract with Plaintiffs to receive 25% of Plaintiffs' recovery. Boesch Decl. ¶ 2. The amount used to calculate that fee should not include the Medi-Cal lien, because Medi-Cal deducts 25% from its lien amount to pay for attorney fees. *See* Cal. Welf. & Inst. Code § 14124.72(d). The litigation costs advanced by the Plaintiffs' counsel (those that cannot be recovered pursuant to 28 U.S.C. § 1920, such as expert witness fees) must also be subtracted from the recovery before calculating the 25% attorney fee, because otherwise counsel would be charging Plaintiffs 25% of funds that were already going to the attorney. Here, assuming fees for Plaintiffs' fourteen disclosed expert witnesses came to approximately $175,000, that would leave $9,346,784 from which to calculate an attorney fee ($9,609,305 total - $87,521 Medi-Cal lien - $175,000 litigation costs = $9,346,784). Twenty-five percent of $9,346,784 results in a $2,336,696 fee for Plaintiffs counsel.

**C.    The Annuity Proposal**

Up-front payment of the noneconomic damages and lost-earnings awards (applying the Banner-settlement offset against the economic damages in the lost-earnings award) results in a $1,224,296 cash payment ($500,000 noneconomic damages + ($967,796 lost earnings - $243,500 Banner economic-damages offset) = $1,224,296). So, additional money from the future medical-expense damages would be needed to pay Plaintiffs' counsel's $2,336,696 fee up front.

In order to cover this fee and leave Plaintiffs with some up-front cash, part of the future medical-expense awards could be paid up front. The Court awarded a total present value of $8,297,488 for future medical expenses ($7,753,349 attendant care + $544,139 other future medical expenses). If $1,412,400 of this was paid up front, then Plaintiffs could pay their attorneys and have $300,000 in cash

left over ($1,224,296 noneconomic & lost earnings + $1,412,400 portion future medicals = $2,336,696 attorney fee + $300,000 cash to Plaintiffs = $2,636,696 total up-front cash payment).

The United States proposes then purchasing an annuity to make periodic payments with the remainder of the present-value future-expense funds of $6,885,088 ($8,297,488 future medicals - $1,412,400 portion future medicals up front = $6,885,088).  Generally, neither party can be forced to accept an annuity as the method of making periodic payments.  *Salgado v. County of Los Angeles*, 19 Cal. 4th 629, 643-44 (1998).  But the United States' counsel understands from discussions with Plaintiffs' counsel that Plaintiffs are not opposed in principle to the use of an annuity here.

The remaining present-value future-expense funds of $6,885,088 could purchase an annuity securing a stream of payments increasing annually by 4%.  The United States procured an annuity quote for 20 years' payments in return for a $6,885,088 premium, with payments certain (i.e. payable regardless of survivorship).  The annual payment amounts would be broken down into 12 equal monthly installments paid to I.P. (reverting to the United States upon her death).  Each year, the annual amount would increase by 4% to account for cost-of-living increases.  The quoted annuity would provide for approximately $312,637 to be paid in the first year (in equal monthly installments), with the annual amount increasing to approximately $325,142 in the second year, and so on (with an annual amount of approximately $658,678 in year 20, and a total of approximately $9,309,717 in payments).  *See* Boesch Decl. ¶ 3, Ex. A (periodic payment illustration for annuity quote).  The annuity quote obtained remains in force for only five days, so a new quote would have to be obtained shortly before the annuity purchase.  *Id.*  The first annuity payment would occur in the month after the annuity was purchased.  *Id.*

Such an annuity, with a stream of payments during I.P.'s Court-determined life expectancy, would approximate the operation of California's periodic-payment statute by granting the United States a reversionary interest in the annuity payments while allowing it to satisfy its judgment obligation in a lump sum and so complying with the FTCA.

**D.     Reversionary Trust**

If, for some reason, the Plaintiffs or the Court found the annuity option unacceptable, the United States would ask this Court to create a reversionary trust.  This would require putting the remaining present value of the future medical expenses ($6,885,088) into a trust that would make periodic

payments to I.P. in accordance with a schedule set by the Court. Upon I.P.'s death, any remaining money in the trust would revert to the United States. Such a trust would require hiring a trustee and an investment manager to oversee the trust. The trustee would ensure proper payments to I.P., and the investment manager would be responsible for investing funds in the trust to generate returns (so the present-value funds grow to cover future expenses). Because the transaction costs of compensating a trustee and investment manager would reduce the investment returns, the United States believes that an annuity as described above is a better option here.

It is important to note that the United States did not waive the reversionary trust option in the parties' damages stipulation. To the contrary, the United States agreed <u>only</u> "not [to] request that the Court impose a reversionary trust **that pays medical expenses only as they are incurred** in structuring the damages payment." Dkt. 131 at 4 ¶ M (emphasis added). A reversionary trust that pays medical expenses **only as they are incurred** requires documentation of medical expenses, only reimbursing expenses so documented. The reversionary trust that would be used here (if the parties are unable to agree on an annuity) would make a stream of predetermined periodic payments in accordance with a schedule set by the Court. Remaining funds in the trust would revert to the United States upon I.P.'s death. This is the reversionary mechanism used by the district court in *Cibula*. *See* Boesch Decl. ¶ 4, Exh. B.

The United States' counsel intends to continue meet-and-confer discussions with Plaintiffs' counsel in an attempt to reach agreement on as many issues as possible relating to the judgment.

## IV.   CONCLUSION

For the foregoing reasons, the United States requests that the Court structure its judgment in accordance with its proposal, thus crafting a remedy approximating the effects of California's periodic-payment statute while complying with the FTCA.

Respectfully submitted,

BENJAMIN B. WAGNER
United States Attorney

Dated:  November 16, 2015         By:   */s/ Victoria L. Boesch*
VICTORIA L. BOESCH
Assistant United States Attorney

USA BRIEF RE PERIODIC-PAYMENT STATUTE